## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **STEPHEN MELISE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 1:17-CV-00490-JJM-PAS** |
| | : | |
| **ASHBEL T. WALL, alias, individually and in his** | : | |
| **official capacity as director of the Rhode Island** | : | |
| **Department of Corrections, et al.,** | : | |
| **Defendants** | : | |

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Now comes the Plaintiff, Stephen Melise, in the above-cited matter, and hereby moves, pursuant to Federal Rules of Civil Procedure Rule 15(a)(1)(B), to Amend as a Matter of Course his Complaint.  As grounds therefore and in support thereof, Plaintiff relies on the language of Rule 15(a)(1)(B), which grants Plaintiff the ability to amend his pleading once as a matter of course, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  In this case, Plaintiff offers his First Amended Complaint both within 21 days of Defendants Wall, McCaughey, and State's Answer, filed on January 31, 2018, and within 21 days of Defendants Vohr and Clarke's Motions to Dismiss under Rule 12(b)(6).

For the foregoing reasons, Plaintiff hereby submits the attached First Amended Complaint.

Plaintiff
By his attorney,

**Date:  February 14 , 2018**      **/s/ Chloe A Davis**
                                                      **Chloe A. Davis, Esq., Bar No. 9334**
                                                      2374 Post Road, Suite 201
                                                      Warwick, RI 02886
                                                      Phone: (352) 215-3704
                                                      Email:  chloe.a.davis@gmail.com

## **CERTIFICATION**

Jeffrey G. Latham, Esquire, Bar No. 6264
Alexandra C. Curran, Esquire, Bar No. 8524
Tate & Lantham, LLC
321 South Main Street, Suite 402
Providence, RI 02903
Tel: (401) 421-7400
Fax: (401) 351-3239
jlatham@tatelawri.com
acurran@tatelawri.com

Susan E. Urso, Esquire, Bar No. 4688
Thomas A. Palombo, Esquire, Bar No. 4212
TPalombo@riag.ri.gov
Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
Fax: (401) 222-3016
surso@riag.ri.gov
tpalombo@riag.ri.gov

I hereby certify that on **February 14, 2018**, a true copy of the within was filed electronically via the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System.  Service on the counsel of record listed above has been effectuated by electronic means.

**/s/ Chloe Davis**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **STEPHEN MELISE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No.: 1:17-CV-00490-JJM-PAS** |
| | : | |
| **ASHBEL T. WALL, alias, individually and in his** | : | |
| **official capacity as director of the Rhode Island** | : | **Jury Trial Demanded** |
| **Department of Corrections, FRED VOHR, alias,** | : | |
| **individually and in his official capacity as** | : | |
| **medical director of the Rhode Island Department** | : | |
| **of Corrections, JENNIFER CLARKE, alias,** | : | |
| **individually and in her official capacity as** | : | |
| **medical director of the Rhode Island Department** | : | |
| **of Corrections, KERRI MCCAUGHEY, alias,** | : | |
| **individually and in her official capacity as a** | : | |
| **registered employee of the Rhode Island** | : | |
| **Department of Corrections, STATE OF** | : | |
| **RHODE ISLAND, DEPARTMENT OF** | : | |
| **CORRECTIONS, alias, and JOHN DOES 1** | : | |
| **THROUGH 10, alias,** | : | |
| **Defendants** | : | |

## FIRST AMENDED COMPLAINT

## I.     Introductory Statement

This action is brought by the Plaintiff seeking compensatory and punitive damages,

declaratory relief, counsel fees and costs, and any other just relief for acts and/or omissions of

Defendants amounting to negligence and also in violation of the Eighth and Fourteenth

Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, Article

1, § 8 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of*

*Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989), violation of the Americans with Disabilities Act,

42 U.S.C. § 12131, *et seq*., ("ADA"), violation of the Rehabilitation Act, 29 U.S.C. § 701, *et*

*seq.*, violation of the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-

112-1, *et seq.,* and violation of the Rhode Island Civil Rights of People With Disabilities Act ("RICRPD"), R.I. Gen. Laws § 42-87-1, *et seq.*

## II.    Parties

1.      Plaintiff Stephen Melise ("Melise" or "Plaintiff") at all relevant times pertinent hereto was a resident and citizen of the State of Rhode Island and of the United States, and was at all relevant times pertinent hereto incarcerated under the care and custody of the Defendant State of Rhode Island, Department of Corrections ("DOC").

2.      Defendant Ashbel T. Wall ("Wall" or "Defendant Wall"), alias, is a citizen and resident of the State of Rhode Island and of the United States.  Wall is sued herein individually and in his official capacity and at all relevant times pertinent hereto was the Director of the DOC. Wall had actual or constructive knowledge of violations of the Plaintiff's constitutional and ADA rights and knew or had constructive notice of the practices that led to them.  He did not act to stop or curb them.   He created, maintained, and/or implemented policies or customs acquiescing to, allowing, encouraging, and/or ratifying these unlawful acts.

3.      Defendant Kerri McCaughey ("McCaughey" or "Defendant McCaughey") is sued individually and in her official capacity while acting as a Deputy Warden employed by DOC. She had actual or constructive knowledge of violations of the Plaintiff's constitutional rights and knew or had constructive notice of the practices that led to them.  She did not act to stop or curb them and in fact prevented Plaintiff from receiving treatment to which he was entitled.  She maintained and/or implemented policies or customs acquiescing to, allowing, encouraging, and/or ratifying these unlawful acts.

4.      Defendant Fred Vohr ("Vohr" or "Defendant Vohr"), alias, is sued individually and in his official capacity for his acts and/or omissions while acting as Medical Director of

DOC facilities.   He had actual or constructive knowledge of violations of the Plaintiff's constitutional rights and knew or had constructive notice of the practices that led to them.  He did not act to stop or curb them.  He created, maintained, and/or implemented policies or customs acquiescing to, allowing, encouraging, and/or ratifying these unlawful acts.

5.      Defendant Jennifer Clarke ("Clarke" or "Defendant Clarke"), alias, is sued individually and in her official capacity for her acts and/or omissions while acting as Medical Director of DOC facilities.   She had actual or constructive knowledge of violations of the Plaintiff's constitutional rights and knew or had constructive notice of the practices that led to them.  She did not act to stop or curb them.   She created, maintained, and/or implemented policies or customs acquiescing to, allowing, encouraging, and/or ratifying these unlawful acts.

6.      Defendant State of Rhode Island ("State" or "Defendant State") is sued on the basis of official acts and/or omissions committed by employees and agents of the DOC, a department established to provide for the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions pursuant to R.I. Gen. Laws § 42-56-1 *et. seq.*  At all relevant times hereto, the DOC employed the named individual defendants either as employees or contract agents.   Defendant State is subject to the jurisdiction of this Court in accordance with the State of Rhode Island's express waiver of sovereign immunity pursuant to R.I. Gen. Laws § 9-31-1 and other applicable law.  *Marrapese v. State*, 500 F.Supp. 1207, 1221-23 (D.R.I. 1980).

7.      Defendant John Does 1-10, alias, are the unknown employees, agents, representatives or contractors of the DOC whose acts and/or omissions were responsible for or caused or contributed to the harm and damages sustained by the Plaintiff as alleged herein.

8.      Unless otherwise specified, the term "Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action.

9.      Unless otherwise specified, the term "individual Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action except the Defendant State.

### III.     Jurisdiction

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202.

### IV.     Venue

11.     Venue is proper in this Court as, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.  Venue is also proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Rhode Island.

### V.     Material Facts

12.     In 2013, during an incarceration previous to the one at issue in this First Amended Complaint, DOC medical providers ordered that Plaintiff be given a bottom bunk due to severe neck pain, but the order went unfulfilled.

13.     During his current incarceration, Plaintiff fell from a bottom bunk at the Intake Service Center in 2014 but was not injured and did not report the incident.

14.     Plaintiff was later moved to the DOC's Medium Security Facility in the Fall of 2014.

15.     Throughout this time, he has suffered from chronic neck pain, anxiety, depression, and sleep disorders, including sleep apnea.

16.     Plaintiff has fallen from his bed on the top bunk on three separate occasions during his current incarceration at the DOC while at the Medium Security Facility.

17.     While Plaintiff was an inmate at the Medium Security Facility, on November 12, 2014, Nurse Practitioner Marianne Warren ordered that Plaintiff be given a bottom bunk due to chronic neck pain.

18.     Defendant McCaughey, improperly held Nurse Practitioner Warren's order for a week with the notice "need more info," before approving it.

19.     Nurse Practitioner Warren's original order was set to terminate on February 12, 2015, but she renewed the order on February 9, 2015, prior to its termination.

20.     Following Nurse Practitioner Warren's renewal on February 9, 2015, Defendant McCaughey again improperly held that order on the basis that she needed more information.

21.     This time, however, Defendant McCaughey held the order indefinitely, thus denying the Plaintiff his bottom bunk as ordered by Nurse Practitioner Warren.

22.     On November 30, 2015, while Plaintiff was unnecessarily and unreasonably assigned to the top bunk in disregard for his medical needs and the orders of DOC medical staff, he suffered another fall from the top bunk.

23.     On that occasion, Plaintiff rolled off the bed while sleeping, hitting his head on the floor and injuring his lower back, right foot, and the upper left side of his chest.

24.     As a result of Plaintiff's injuries, although he was able to get up after his fall, he was taken to see Nurse Practitioner Warren in a wheelchair.

25.     Nurse Practitioner Warren again submitted an order, dated December 21, 2015, that Plaintiff be given a bottom bunk, both due to his history of falling from his bed and because of his other medical conditions.

26.     However, Defendant McCaughey denied that order on December 29, 2015, with no reason given for the denial.

27.     This denial was in clear violation of DOC Policies 18.01-3 and 18.22, as Wardens and Deputy Wardens are not allowed to reject medical orders.

28.     Defendant McCaughy routinely denies inmates' medical orders for bottom bunk, even when the order is placed by the Medical Director.

29.     Plaintiff remained confined to a top bunk and continued to report, *inter alia*, worsening anxiety, problems with sleeping, and neck pain.

30.     On May, 31, 2016, DOC medical staff referred the Plaintiff for a sleep study.

31.     However, it was not until three months later that the sleep study was actually conducted on September 2, 2016.

32.     On June 21, 2016, while waiting for the sleep study to be conducted and while still assigned to the top bunk despite medical needs and orders, Plaintiff again fell from the top bunk while sleeping.

33.     As a result of the fall on June 21, 2016, Plaintiff sustained injuries to his fingers, neck, lower back, and left shoulder.

34.     According to various medical orders, Plaintiff should have been assigned to a bottom bunk at the time of this fall.

35.     Indeed, in medical notes following this fall, Nurse Practitioner Warren noted that Plaintiff "is on bottom bunk in this sy[s]tem for his neck pain. [I] placed him again on the bottom bunk, even though he has already been ordered bottom bunk, for his second reported fall from the top bunk."

36.     On June 21, 2016, Nurse Practitioner Warren submitted yet another order that Plaintiff be given a bottom bunk.

37.     Defendant McCaughey, as apparently was her practice, again ignored Nurse Practitioner Warren's June 21, 2016 medical order without basis.

38.     On June 28, 2016, Plaintiff was again seen by DOC medical staff for a follow up with Christopher Salas, M.D., at which time Dr. Salas also ordered that Plaintiff be given a bottom bunk.

39.     Defendant McCaughey ignored Dr. Salas's order as well.

40.     This denial was again in clear violation DOC Policies 18.01-3 and 18.22.

41.     On September 2, 2016, three months after it was ordered, Plaintiff was finally permitted to undergo a sleep study.

42.     On September 8, 2016, Plaintiff presented to Dr. Salas, who wrote that, although he had not received the results of the sleep study, he suspected that Plaintiff suffered from a sleep disorder.

43.     Dr. Salas referred Plaintiff for evaluation and treatment by physical therapy.

44.     Additionally, Dr. Salas submitted yet another order on September 8, 2016 that Plaintiff be given a bottom bunk to minimize his risk of injury due to his ongoing sleep disorder and history of falling.

45.     Remarkably, one of the many orders for a bottom bunk was approved by Defendant McCaughey on September 21, 2016 in spite of the blithe lack of concern she demonstrated toward inmates with disabilities in the facility of which she is the ADA coordinator.

46.     However, the order approved by Defendant McCaughey was actually a past order, which was set to begin on June 28, 2016 and set to expire on September 28, 2016, only one (1) week from the date she finally approved it and nearly three (3) months after it was submitted.

47.     DOC records disclose a request was made via furlough for, on information and belief, medical treatment for the Plaintiff's sleep issues.[1]

48.     All other outstanding orders were totally ignored by Defendant McCaughey preventing medical treatment.

49.     Thus, Defendant McCaughey intentionally, in spite of a stack of orders from multiple medical professionals for a bottom bunk and in contravention of DOC policy, only approved Plaintiff's assignment to a bottom bunk for a total of one (1) week.

50.     On November 11, 2016, Plaintiff suffered yet another injury when he fell from the top bunk while sleeping.

51.     Plaintiff should have been on the bottom bunk pursuant to a plethora of medical orders at this time.

52.     Plaintiff's injuries sustained as a result of his November 11, 2016 fall were even more substantial than those of his previous falls and required a trip to the Rhode Island Hospital ("RIH") Emergency Department.

53.     On information and belief, Plaintiff fell from his bed at approximately 12:30 a.m. on November 11, 2016.

54.     However, DOC records demonstrate that DOC medical staff were not notified of this fall until 1:51 a.m.

---

[1] Although medical records provided by the DOC refer to a furlough request, the actual request was not contained the in the documentation provided by the DOC upon the Plaintiff's request for his medical records.  This is consistent with a pattern and practice of the DOC failing to provide complete medical records upon inmate request.

55.     When a nurse finally appeared at Plaintiff's cell, she attempted to assist him into the wheelchair but was ordered not to help Plaintiff by a lieutenant, Defendant John Doe I, standing nearby.

56.     Plaintiff was unreasonably and cruelly forced to attempt to pull himself up without assistance via the bunk ladder to get into the wheelchair.

57.     When the nurse again began to assist Plaintiff into the wheelchair after he managed to pull himself upright, the nurse was berated by the watching Defendant John Doe I and ordered not to render any aid to Plaintiff.

58.     Initially, the doctor on call suggested that Plaintiff could wait until the morning to be taken to RIH, however, the DOC Shift Commander decided that they would be short staffed in the morning, so Plaintiff should be taken to the RIH Emergency Department that night.

59.     When Plaintiff was finally taken to a waiting van, DOC staff again treated him with unnecessary aggression, cruelty, and mockery.

60.     Rather than assist Plaintiff out of the wheelchair and into the van, he was forced to climb into the van himself, while handcuffed, suffering from severe pain due to a broken right ankle, and being openly mocked and laughed at by watching DOC staff.

61.     Plaintiff finally arrived at RIH at 2:48 a.m., on November 11, 2016, more than two hours after the fall occurred.

62.     Plaintiff presented to the RIH Emergency Department with right ankle pain, difficulty placing weight on his right foot, and pronounced pulsation in front of the ankle.

63.     Plaintiff reported to medical staff that he awoke while falling and managed to avoid hitting his head on the floor, but ended up hurting his right ankle in the process.

**Page 9 of 9**

64.     Inna Baran, M.D., after obtaining several X-rays of Plaintiff's right leg and consulting with an orthopedic surgeon, confirmed that Plaintiff had suffered a right displaced fibula fracture and he was fitted with a fracture boot shortly thereafter.

65.     In the discharge notes, treating RIH staff also indicated that Plaintiff presented with elevated blood pressure.

66.     Plaintiff was prescribed Vicodin and Ibuprofen to manage the pain and ordered to ice his ankle for twenty (20) minutes every hour and keep his foot elevated.[2]

67.     Plaintiff was also ordered to follow up with an orthopedic specialist in one week.

68.     Later that day, medical staff at the DOC were informed of Plaintiff's injury and Dr. Salas ordered that Plaintiff be moved to the bottom tier.

69.     On November 11, 2016, Dr. Salas again ordered that Plaintiff be provided a bottom bunk, indicating two reasons for the order: 1) "falls from sleep problem" with an expiration date of November 10, 2017; and, 2) "crutches for broken ankle" with an expiration date of March 10, 2017.

70.     This order from Dr. Salas was ignored by Defendant McCaughey for nearly a full week before it was approved, on November 17, 2016.

71.     The approval was accompanied by the condition imposed by Defendant McCaughey that "*when broken ankle healed – bottom bunk expires as well," despite: (a) the fact that the order identified Plaintiff's sleep problems and multiple falls as reasons for requiring a bottom bunk; (b) the plethora of other medical orders calling for Plaintiff to have a bottom bunk; and (c) DOC policy that prohibits this sort of behavior on the part of a Warden or Deputy Warden.

---

[2] Despite Plaintiff's request, the DOC did not provide the medication administration records that would indicate whether Plaintiff was ever supplied the prescribed treatment.

72.     Defendant McCaughey also changed the expiration date of Dr. Salas's November 11, 2016 bottom bunk order for "falls from sleep problems" from November 10, 2017 to March 10, 2017 thus shortening the order assigning Plaintiff a bottom bunk by some six (6) months without and against the medical basis for the order.

73.     On November 19, 2016, Plaintiff finally received a continuous positive airway pressure ("CPAP") machine, pursuant to a medical furlough ordered on or about September 14, 2016 to treat his sleep apnea.

74.     A CPAP machine "is a small machine that supplies a constant and steady air pressure, a hose, and a mask or nose piece" and "is a common treatment for obstructive sleep apnea."[3]

75.     Had it not been for the DOC's negligent disregard for medical orders, Plaintiff's November 11, 2016 injury could have been prevented entirely.

### *Medical Directors of the DOC*

76.     As Medical Director, Defendants Vohr and/or Clarke are responsible for the overall management, administration, and supervision of all medical care and treatment at the ACI.

77.     Defendants Vohr and/or Clarke had actual or constructive knowledge of the medical orders issued by the medical staff under their supervision.

78.     Defendants Vohr and/or Clarke had actual or constructive knowledge that the medical orders issued under their supervision were routinely being denied or not being properly implemented by Defendant McCaughey.

---

[3] Mayo Clinic Staff, Sleep Apnea, Mayo Clinic, (October 12, 2017), http://www.mayoclinic.org/diseases-conditions/sleep-apnea/in-depth/cpap/art-20044164.

79.     Defendants Vohr and/or Clarke took no additional steps or actions to ensure that the medical orders discussed in this First Amended Complaint were properly effectuated, despite having knowledge that the orders were not properly implemented by Defendant McCaughey.

80.     Had Defendants Vohr and/or Clarke properly implemented and enforced policies regarding reasonable accommodations and medical orders, Plaintiff's November 11, 2016 injury could have been prevented entirely.

81.     In failing to take any additional steps or actions to ensure that the medical orders discussed in this First Amended Complaint were properly effectuated, Defendants Vohr and/or Clarke improperly delegated their powers as the Medical Director to Defendant McCaughey.

82.     Had Defendants Vohr and/or Clarke not improperly delegated their powers as the Medical Director to Defendant McCaughey, Plaintiff's November 11, 2016 injury could have been prevented entirely.

### *Director of the DOC*

83.     As Director, Defendant Wall is statutorily responsible for the overall management, administration, and supervision of the Rhode Island prison system pursuant to R.I. Gen. Laws § 42-56-10, *et seq.*

84.     Pursuant to R.I. Gen. Laws § 42-56-1, *et seq.*, Defendant Wall, in his capacity as Director of the DOC, is the chief policy-making official of the DOC and he is responsible for promulgating and implementing DOC rules and regulations.

85.     Pursuant to R.I. Gen. Laws § 42-56-10, Defendant Wall, in his capacity as Director of the DOC, is responsible for, *inter alia*, the hiring, training, supervision, and discipline of all employees of the DOC, including the individual Defendants, as well as for the overall management of the DOC.

86.     On information and belief, Defendant Wall delegates, in whole or in part, his foregoing described responsibilities under R.I. Gen. Laws § 42-56-1, *et seq.* to other employees and agents of the DOC, including the individual Defendants.

### Official Policy and Conduct of Defendant Wall

87.     The management of the DOC facilities has been so lax that at times the federal government has had to step in and force the DOC to properly run its facilities.

88.     The DOC, under the supervision of Defendant Wall, has a long and disturbing record of ignoring the medical needs of inmates.

89.     Similarly, the DOC has a long and disturbing record of ignoring medical orders and prescriptions of medical professionals within and without the DOC.

90.     Defendant Wall has been on notice of the inadequate medical treatment provided by his subordinates.

91.     Even Defendant Wall is no stranger to violating the rights of inmates under his care.

92.     The customs, practices, and/or policies complained of herein constitute an official policy or custom of the Defendant State that was promulgated, created, acquiesced to, permitted, condoned, encouraged, and/or ratified by the chief policy-making official of the DOC, Defendant Wall.

93.     The Defendant failed to properly select, train, instruct, supervise and discipline employees and agents of the DOC, including the individual Defendants, relative to the proper provision and supervision of medical care and treatment.

**Page 13 of 13**

*Harm and Damages*

94.     The Defendants acts and/or omissions as aforesaid violated clearly established constitutional and/or statutory rights of Plaintiff, of which the Defendants knew or should have known.  Furthermore, at all relevant times, the Defendants knew or should have known that their conduct would cause or contribute to the deprivation of the Plaintiff's clearly established constitutional and/or statutory rights.

95.     At all relevant times, the Defendants acted intentionally, willfully, wantonly, maliciously, and/or with reckless or callous indifference or gross negligence amounting to deliberate indifference to the Plaintiff's constitutional and/or statutory protected rights.

96.     The harm suffered by the Plaintiff as a result of the acts and/or omissions of the Defendants, including but not limited to those described above, includes, on information and belief, physical injury including a painful broken fibula, bruising, and elevated blood pressure, as well as humiliation, shame, stress, and anxiety.

97.     As a result of the acts and/or omissions of the Defendants, including but not limited to those set forth above, the Plaintiff sustained personal injuries and has endured and will continue to endure great pain and suffering, incur expenses for medical care and treatment, incur lost wages and earning capacity, and suffer other great damage.

**VI.     Claims for Relief**

98.     Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 97 above.

**COUNT ONE**
*Violation of the ADA under 42 U.S.C. § 12132*

99.     Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have

discriminated against the Plaintiff and deprived him of his right to reasonable accommodations and other protections under the ADA, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the ADA, actionable pursuant to 42 U.S.C. § 12133.

## COUNT TWO
### *Violation of the RICRA under R.I. Gen. Laws § 42-112-1, et seq.*

100.    Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have discriminated against the Plaintiff and deprived him of his rights under the RICRA, including his rights to the full and equal benefit of all laws and proceedings for the security of persons and property, rights to reasonable accommodations, and other protections under the RICRA, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the RICRA, actionable pursuant to R.I. Gen. Laws § 42-112-2.

## COUNT THREE
### *Violation of the Rehabilitation Act under 29 U.S.C. § 794*

101.    Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have discriminated against the Plaintiff and deprived him of his right to be free from discrimination or denial of benefits by reason of disability and other protections under the Rehabilitation Act, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the Rehabilitation Act, actionable pursuant to 29 U.S.C. § 794.

## COUNT FOUR
### *Violation of the RICRPD under R.I. Gen. Laws § 42-87-1, et seq.*

102.    Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have discriminated against the Plaintiff and deprived

him of his rights under the RICRPD, including his rights to the full and equal benefit of all laws and proceedings for the security of persons and property, rights to reasonable accommodations, and other protections under the RICRPD, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the RICRPD, actionable pursuant to R.I. Gen. Laws § 42-87-1 *et. seq.*

### COUNT FIVE
### *Violation of the Right of Freedom from Cruel and Unusual Punishment under 42 U.S.C. § 1983*

103.   Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have deprived the Plaintiff of his right to be free from cruel and unusual punishment, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the Eighth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

### COUNT SIX
### *Violation of the Right of Freedom from Cruel and Unusual Punishment under Article 1, § 8 of the Rhode Island Constitution*

104.   Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have deprived the Plaintiff of his right to be free from cruel and unusual punishment, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under Article 1, § 8 of the Rhode Island Constitution.

## COUNT SEVEN
### *Negligence*

105.     Defendants, by their individual and/or collective acts and/or omissions, including but not limited to those alleged herein, breached their duty of care owed to the Plaintiff, thereby proximately causing the Plaintiff to sustain damages as alleged herein.

### VII.     Prayers for Relief

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.      A declaratory judgment declaring that the Defendants, in the manner described herein, discriminated against the Plaintiff and deprived him of his rights to reasonable accommodation of disabilities and freedom from discrimination and denial of benefits due to disabilities under the ADA, RICRA, the Rehabilitation Act, the RICRPD.

2.      A declaratory judgment declaring that the Defendants, in the manner described herein, subjected the Plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment to the United States Constitution and Article 1, § 8 of the Rhode Island Constitution;

3.      A declaratory judgment declaring that the Defendants, in the manner described herein, by their individual acts and/or omissions breached their duty of care owed to Plaintiff, and thereby proximately caused Plaintiff damages.

4.      An award of compensatory damages;

5.      An award of punitive damages;

6.      An award of any other damages or relief available under applicable law;

7.      An award of reasonable attorney's fees and costs of litigation to the Plaintiff pursuant to 42 U.S.C. § 1988; the ADA; the RICRA; the RICRPD; and/or other applicable law; and,

8.      Such other and further relief as this Court deems just and proper.

### VIII.   Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

Plaintiff,
By his Attorneys,

**Date:  February 14, 2018**          **/s/ Chloe A Davis**
                                      **Chloe A. Davis, Esq., Bar No. 9334**
                                      2374 Post Road, Suite 201
                                      Warwick, RI 02886
                                      Phone: (352) 215-3704
                                      Email:  chloe.a.davis@gmail.com

### CERTIFICATION

Jeffrey G. Latham, Esquire, Bar No. 6264
Alexandra C. Curran, Esquire, Bar No. 8524
Tate & Lantham, LLC
321 South Main Street, Suite 402
Providence, RI 02903
Tel: (401) 421-7400
Fax: (401) 351-3239
jlatham@tatelawri.com
acurran@tatelawri.com

Susan E. Urso, Esquire, Bar No. 4688
Thomas A. Palombo, Esquire, Bar No. 4212
TPalombo@riag.ri.gov
Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
Fax: (401) 222-3016
surso@riag.ri.gov
tpalombo@riag.ri.gov

I hereby certify that on **February 14, 2018**, a true copy of the within was filed electronically via the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System.  Service on the counsel of record listed above has been effectuated by electronic means.

<u>**/s/ Chloe Davis**</u>