## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**STEPHEN MELISE**,
    *Plaintiff*

v.

**ASHBEL T. WALL, *et al.***,
    *Defendants*

**C.A. No. 1:17-cv-00490-MSM-PAS**

**JURY TRIAL DEMANDED**

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S ORAL MOTION TO COMPEL

**NOW COME** Defendants the State of Rhode Island, Department of Corrections (the "State" or "RIDOC"); Ashbel T. Wall, individually and in his official capacity as former-Director of RIDOC ("A.T. Wall");[1]  and Kerri McCaughey, individually and in her official capacity as Deputy Warden of RIDOC ("McCaughey") (collectively, "State Defendants") and hereby submits this Memorandum of Law in Opposition to Plaintiff Stephen Melise's Oral Motion to Compel, submitted to the Court during a Telephonic Conference held on January 29, 2020. Plaintiff seeks to compel documents responsive to Plaintiff's Second Request for Production to RIDOC; specifically Requests Six,[2] Seven,[3] and Eight.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Patricia Coyne-Fague, in her official capacity as Director of the Rhode Island Department of Corrections, is automatically substituted in place of former-Director Ashbel T. Wall in his official capacity, as Defendant A.T. Wall retired from RIDOC in January 2018.

[2] RIDOC Defendants supplemented Response No. 6 and produced responsive documents to Plaintiff on February 5, 2020, in compliance with the Court's January 30, 2020 Consent Text Order and as agreed to by counsel prior to the telephonic conference on January 29, 2020. Because these documents were produced, the discovery dispute has been resolved with respect to Response No. 6.

[3] While Request No. 7 was not discussed by counsel prior to the conference, nor addressed during

1

## DISCOVERY REQUESTS AT ISSUE

**Plaintiff's Second Request for Production of Documents, No. 8:** All approved, denied or altered orders and/or requests for bottom bunk accommodations between October 5, 2015 and November 11, 2016.

**RIDOC's Response to Plaintiff's Second Request for Production of Documents, No. 8:** Objection, as release of documents would disclose the identity of third-party inmate(s), not a party to this case. Further objection, as this request is vague, over broad, unduly burdensome, and not proportional to the needs of this case. Additional objection, as this request seeks information that is not relevant to the allegations and claims in this civil action. Additional objection, as this request seeks the disclosure of documents that may compromise the institutional safety and security of the facility. Further objection, as this request seeks protected health information of third-party inmate(s), not a party to this case, prohibited from disclosure under Rhode Island privacy laws and the Health Insurance Portability and Accountability Act (HIPAA).

---

the conference. Request No. Seven seeks "All documentation demonstrating when an order and/or request for a bottom bunk created a climate issue." RIDOC's Response No. Seven states**: "**Objection, as release of documents would disclose the identity of third-party inmate(s), not a party to this case. Further objection, as this request is vague, over broad, unduly burdensome, and not proportional to the needs of this case. Additional objection, as this request seeks information that is not relevant to the allegations and claims in this civil action. Additional objection, as this request seeks the disclosure of documents that may compromise the institutional safety and security of the facility. Additional objection, as this request is not limited in time or scope."

As asserted by RIDOC in its objection to Request No. 7, it remains unclear what documents Plaintiff is referencing. The request is simply vague and fails to provide any definition for "climate issue" and additionally is not limited to any particular facility or limited to any specific timeframe. Due to the vagueness and overbreadth of Request No. 7, and because it was not discussed during the January 29, 2020 conference, RIDOC Defendants are unable to substantively respond to Plaintiff's Motion to Compel, with respect to Request No. 7. However, RIDOC maintains all objections and reserves the right to substantively respond to Plaintiff's Oral Motion to Compel, with respect to Request No. 7, in accordance with the Federal Rules of Civil Procedure.

**ARGUMENT**

I.     **THE DOCUMENTS PLAINTIFF SEEKS TO COMPEL CONTAIN CONFIDENTIAL HEALTHCARE INFORMATION, PROTECTED FROM DISCLOSURE UNDER THE RHODE ISLAND CONFIDENTIALITY OF HEALTH CARE INFORMATION ACT, R.I. GEN. LAWS §§ 5-37.3-1, AND THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996**

The inmates' accommodation requests demanded by the Plaintiff are confidential health care information and protected against unauthorized disclosure by both state and federal law. Even if the Plaintiff were entitled to such information, state law requires that he serve subpoenas on the inmates whose records are requested, which he has not done. Furthermore, notifying every inmate whose records are requested that another inmate is accessing their confidential records is a substantial security concern.

      **A. Rhode Island Confidentiality Act prohibits releasing the inmates' confidential health care information without their consent.**

Rhode Island enacted the Confidentiality of Health Care Communications and Information Act ("Confidentiality Act") in 1996. R.I. Gen. Laws § 5–37.3–1, et seq. This Act prohibits releasing or transferring confidential health care information without written consent from the person or his/her authorized representative. R.I. Gen. Laws § 5–37.3–4(a)(1). Unlike HIPAA, the Rhode Island law applies to any entity holding confidential healthcare information. *Id.* Confidential healthcare information is also defined very broadly to mean "all information relating to a patient's healthcare history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has treated the patient." R.I. Gen. Laws § 5–37.3–3 (3)(ii).

Here, inmates' requests for accommodations are generated by health care professionals and are part of the inmates' health records. In addition to common identifying information, such as names and inmate numbers, these requests also contain the basis for requesting the

accommodation—information about an individual inmate's claimed disability. *See* Approved Accommodation Request of Steven Melise, attached hereto as *Exhibit A*. The accommodation requests are undoubtedly confidential healthcare information.

The Confidentiality Act acknowledges that such information may sometimes be needed in connection with a judicial proceeding and provides a process for accessing this information: *subpoena*. R.I. Gen. Laws § 5–37.3–6.1(a). The Plaintiff, however, has not served a subpoena to access the records but instead seeks to compel the holder to turn over these documents without going through the proper channels. However, "even though [confidential information] may be subpoenaed pursuant to valid legal process, [it] is presumptively private, confidential, and privileged." *DePina v. State*, 79 A.3d 1284, 1289-90 (R.I. 2013) (citations omitted).

If Plaintiff were to subpoena the records, each inmate whose records were involved would have to receive the subpoena and notice of the right to challenge the subpoena. R.I. Gen. Laws § 5-37.3-6.1(a)(1). Every inmate would then have the right to file a motion to quash. § 5–37.3–6.1(b). The burden then falls to the Plaintiff to "demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual." § 5-37.3-6.1(d). Substantively, the Plaintiff will be unable to demonstrate that the information is relevant as discussed in Section II. The protection of confidential healthcare records "does not evaporate merely because confidential health-care records can be or have been duly subpoenaed in connection with a court proceeding. On the contrary, the privilege continues to exist, and the documents that are privileged still cannot be disclosed (without the privilege holder's consent)." *Washburn v. Rite Aid Corp.*, 695 A.2d 495, 498 (R.I. 1997). Practically speaking, subpoenaing the records of potentially hundreds of inmates has the potential to create a flood of motions to quash.

Notifying every inmate whose records are being sought that a fellow inmate is seeking their accommodations requests creates a substantial security concern in the facility where Plaintiff is housed. Even if the records can be produced without a subpoena, the inmates would have to be notified that their confidential healthcare information was being produced. R. I. Gen. Laws § 5-37.3-4(d), (e). This would implicate the same security concerns as the subpoena process.

Plaintiff's counsel argued that these records could be produced in an unredacted form under the stipulation. The Confidentiality Act prohibits this, stating "Any agreement purporting to waive the provisions of this chapter is declared to be against public policy and void." R.I. Gen. Laws § 5-37.3-10. The waiver prohibition is not absolute, but none of the circumstances constituting a permissible waiver are present here. § 5-37.3-4(b)(1)–(24); *see also Lewis v. Roderick*, 617 A.2d 119, 121 (R.I. 1992). These inmates who are not parties to the action have not put their medical condition at issue nor have they brought a medical malpractice action that would waive the confidentiality. *Lewis*, 617 A.2d. at 121; *State v. Boss*, 490 A.2d 34, 36 (R.I. 1985) ("once the physical and mental condition of the claimant is placed in issue, the privilege as to confidentiality of medical records is waived."). Nor are their records subject to any of the exceptions that allow release or transfer without consent. § 5–37.3–4(b)(1)–(24). Thus, the inmates cannot agree to waive their rights under the Confidentiality Act, and it is not within the Defendants' authority to agree to produce unredacted records as they cannot agree to waive the inmates' rights, either.

Finally, producing these records permits every impacted inmate to bring suit against RIDOC for violating the Confidentiality Act, which could result in hundreds of independent causes of actions. These suits would profoundly impact the Department of Corrections and the state as the Act provides for damages, attorney's fees and potential criminal liability. R.I. Gen. Laws § 5-37.3-9.

**B.  HIPAA and the Privacy Rule prohibit RIDOC from releasing inmates' requests for accommodations to the Plaintiff.**

In addition to the state Confidentiality Act, the federal regulation *Standards for Privacy of Individually Identifiable Health Information* ("Privacy Rule") authorized by the Health Information Portability and Accessibility Act ("HIPAA") protects "protected health information" held or transmitted by a covered entity. 45 C.F.R. § 160.102(a)(3); 160.103; 164.500. A covered entity is one which electronically transmits health information in connection with transactions such as claims, benefit eligibility and referral authorizations. 45 C.F.R. § 162, *et seq.* RIDOC maintains an electronic medical record system and electronically transmits qualifying health care information and is, therefore, a covered entity subject to the HIPAA Privacy Rule.

The Rule defines protected health information as "individually identifiable health information" which includes information relating to past, present or future physical or mental health conditions; provision of health care; past, present or future payments for care. 45 C.F.R. § 103. The information also identifies the patient, or the covered entity has a reasonable basis to believe the information can be used to identify the individual. *Id.* A covered entity *must* disclose protected health information *only* when requested by the individual patient or Health and Human Services for investigations, reviews or enforcement actions. 45 C.F.R. § 164.502(a)(2). The Rule does permit—but not compel—a covered entity to disclose or use the protected health information for enumerated purposes, none of which apply in this case. *See* § 164.502[4].

The Privacy Rule acknowledges that there may be additional concerns in a correctional setting and permits some disclosure for health and safety concerns in the institution. 45 C.F.R. §

---

[4] These permitted uses and disclosures include disclosing protected health information to the individual, for the purpose of treatment, payment or care, or for purposes of research or public health. *See* 45 C.F.R. § 164.502.

512(k)(5)(i), (ii). It does not, however, expand use beyond law enforcement and correctional institutions. *Id.* Any uses or disclosures other than the aforementioned ones require written authorization from the individual whose records are requested. 45 C.F.R. § 164.508.

Here, inmates' requests for accommodations are generated by health care professionals and are part of the inmates' health records. In addition to common identifying information, such as names and inmate numbers, these requests also contain the basis for requesting the accommodation—information about an individual inmate's claimed disability. *See Ex. A*. RIDOC is not required to releasing inmates' protected health information to a third party for discovery in a lawsuit unrelated to those inmates per the Privacy Rule, and there is no provision permitting voluntary disclosure of protected health information for inmates not involved in this case to the Plaintiff or his counsel.[5] Thus, RIDOC is not permitted to release these records without written authorization from all impacted inmates.

While health information can be used or disclosed if it is de-identified or redacted, the process to de-identify the information is burdensome. The data can either be reviewed by an expert, such as a statistician, and formally determined to pose no risk or the covered entity can redact *eighteen* separate categories of information from the record *and* the covered entity must have no actual knowledge that the information provided could be used to identify the individual. 45 C.F.R. §§ 164.502(d)(2), 164.514 (a), (b).

Retaining an expert to review the records would cause needless delay and is not likely

---

[5]In fact, regulations provide that an inmate can be denied access to *his own protected health information* under certain circumstances: "A covered entity that is a correctional institution or a covered health care provider acting under the direction of the correctional institution may deny, in whole or in part, an inmate's request to obtain a copy of protected health information, if obtaining such copy would jeopardize the health, safety, security, custody, or rehabilitation of the individual or of other inmates, or the safety of any officer, employee, or other person at the correctional institution or responsible for the transporting of the inmate." 45 C.F.R. § 164.524(a)(2)(ii).

necessary considering the type of information at issue. However, in order to redact the records, every request would have to be reviewed and redacted by hand. Bottom bunk orders are not perpetual, so this involves multiple requests per inmate over the course of several years. Additionally, in this case, because of the Plaintiff's situation as a current inmate and the volume of other records produced, RIDOC cannot confidently state that it has no actual knowledge that the information in the accommodation requests cannot be used to identify the inmates. These accommodation requests the Plaintiff demands can be cross-referenced with other information provided to the Plaintiff and the Plaintiff's own knowledge of the medium-security facility and inmates to positively identify the inmates requesting the accommodations. Furthermore, some requests contain claimed disabilities so unique that the individual could be identified by the Plaintiff on the basis of the disability alone; thus, ACI would have actual knowledge that the provided information could be used to identify the individual inmate.

### C. Releasing the inmates' confidential healthcare information is an actionable invasion of privacy under Rhode Island law.

In addition to the causes of action authorized by the Confidentiality Act, the Rhode Island Supreme Court has previously decided that disclosing confidential health-care records to an unauthorized person violated the patient's right to privacy under R.I. Gen. Laws §9-1-28.1. *Washburn v. Rite Aid Corp.,* 695 A.2d 495, 499–500 (R.I. 1997). In the case, a third-party disclosed confidential health care information about a party to a case to an attorney representing an adverse party by improperly responding to a subpoena. *Id.* The Court held that this action sustained a claim for an invasion of privacy under R.I. Gen. Laws § 9-1-28.1(a)(1)—"the right to be secure from unreasonable intrusion"—and §9-1-28.1(a)(3)—"the right to be secure from unreasonable publicity given to one's private life." The Court further stated that the victim of the disclosure would have reasonably expected this information to be kept confidential and would have been

offensive to a reasonable person. § 9–1–28.1(a)(1)(A)(i), (ii). Furthermore, disclosing the information out of court to opposing counsel constituted a publication of a private fact which would have been offensive to a reasonable person. § 9–1–28.1(a)(3)(A)(i), (ii).

The case is even stronger here. The inmates here are not parties to this case, and Plaintiff has not served subpoenas to access these records. Plaintiff merely demands them through written discovery requests, without any notice to the affected inmates. In other words, Plaintiff seeks to invade privacy of other inmates by obtaining their confidential health information, without giving any person notice or an opportunity to object. For all these reasons, the Court should deny Plaintiff's Motion to Compel.

## II.     THE DOCUMENTS PLAINTIFF SEEKS TO COMPEL ARE NOT RELEVANT TO PLAINTIFF'S LEGAL CLAIMS OR THE STATE'S DEFENSES AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE

Not only is RIDOC prohibited by law from disclosing the private healthcare information of other inmates, as discussed *supra* in Section I, the documents sought by Plaintiff are not relevant to Plaintiff's legal claims. *See McCormick v. Dresdale*, No. CV 09-474-PJB-LM, 2011 WL 13364595, at *1 (D.R.I. June 3, 2011) (noting that the party seeking the information has the burden of showing its relevance). Even assuming *arguendo*, the private healthcare information of hundreds of other third-parties is tangentially related to Plaintiff's claims that he was wrongfully denied a bottom bunk bed, compelling RIDOC to produce the confidential documents of third parties, even in a redacted form, is not proportional to the needs of the case. Compelling production would force RIDOC to violate federal and state medical privacy laws, infringe on the rights of hundreds of other inmates, and impose a significant undue and costly burden on RIDOC.

Rule 26 sets forth the standard for discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Demonstrating the relevance of the information sought is the moving party's burden. *McCormick v. Dresdale*, No. CV 09-474-PJB-LM, 2011 WL 13364595, at *1 (D.R.I. June 3, 2011). In considering the needs of the case through the lens of Rule 26, if it is determined that any of the discovery sought is (i) "unreasonably cumulative or duplicative" or can be obtained from some other more convenient source, or (ii) that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[,]" or (iii) that the "the proposed discovery is outside the scope permitted by Rule 26(b)(1)[,]" the court "*must limit* the frequency or extent of discovery…." Fed. R. Civ. P. 26(b)(2)(c)(i)-(iii) (*emphasis added*). The Federal Rules of Civil Procedure further limit discovery concerning Electronically Stored Information (ESI). Rule Under Rule 26:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B) (*emphasis added*).

Here, Plaintiff seeks to compel "All approved, denied or altered orders and/or requests for bottom bunk accommodations between October 5, 2015 and November 11, 2016". First, RIDOC does not maintain lists of any accommodation requests with specific reference to "bottom bunks" and does not maintain a list of any accommodations that were denied. After a reasonable inquiry, RIDOC identified four email attachments containing bottom bunk approval lists for the Medium

Security Facility for the following dates: March 3, 2015; March 6, 2015; December 17, 2015; June 8, 2017.[6] A copy of the bottom bunk lists are attached hereto as *Exhibit B*. The bottom bunk lists themselves only contain the start date, cell assignment, inmate name and date of birth (which are redacted), bottom bunk assignment, and the expiration date of the assignment. *See Ex. B*. The approved accommodation forms are not maintained in an indexed form, but instead are be contained in the individual inmate's medical file, because they contain confidential healthcare information. Because accommodation requests are not indexed, RIDOC cannot accurately identify the specific number of accommodation request documents that may exist; however, in light of the fact that the lists contain over one thousand one hundred (1,100) third-party inmate names, it can be estimated that the documents to be produced would be well in the thousands of pages. Obtaining the confidential documents would be no small feat. To retrieve the documents, RIDOC would need to designate an individual to manually go through the confidential medical file of each of the one thousand one hundred (1,100) inmates named the lists, copy each approved accommodation request (which may include multiple requests per file), and manually redact any confidential health information and identifying information. This undertaking would impose an extraordinary burden and expence upon RIDOC and directly infringe upon the privacy rights of a significant portion of individuals not a party to this case—all for information that is not relevant to Plaintiffs legal claims.

Considering the importance of the issues at stake in the action—whether the denial of Plaintiff's request for a bottom bunk was based on an actual disability—the importance of the discovery in resolving the issues, the amount in controversy compared to RIDOC's already scarce resources and limited ability to access to the information, and that the burden and expense of

---

[6] The bottom bunk lists were produced to Plaintiff, with inmates' names and dates redacted on February 5, 2020.

manually retrieving and redacting thousands of pages of other inmates' confidential health records outweighs any potential benefit; these factors weigh heavily against compelling disclosure. *See* Fed. R. Civ. P. 26(b)(2)(B). This is especially true when considering that the accommodation requests forms of other inmates have any relevance to Plaintiff's claims or any rational relationship to Deputy Warden McCaughey's reasons for denying the Plaintiff's request for a bottom bunk. *McCormick v. Dresdale*, No. CV 09-474-PJB-LM, 2011 WL 13364595, at *1 (D.R.I. June 3, 2011) ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."); *see also TG Plastics Trading, Co. v. Toray Plastics*, No. C.A. 09-336S, 2010 WL 936221, at *1 (D.R.I. Mar. 12, 2010) (placing the burden on the party seeking discovery to demonstrate relevance).

Plaintiff has not asserted specifically how the accommodation requests of other inmates are relevant to any of Plaintiff's claims. Plaintiff's only purported contention was made during the January 29, 2020 telephonic conference, where Plaintiff asserted, without any explanation, that the approved accommodation forms of other non-party inmates could show why Deputy Warden McCaughey denied Plaintiff's request for a bottom bunk. Plaintiff's contention is simply wrong. Any information that could be gleaned from the confidential medical information of other inmates would be purely speculative and incapable of confirmation. The reasons why Deputy Warden McCaughey denied Plaintiff's request for a bottom bunk has already been dealt with through hours of deposition testimony. Compelling State Defendants to produce thousands of pages of confidential medical information of other inmates will do nothing but cloud the actual issues of this case, cause unnecessary delay, impose a significant burden and expense upon RIDOC, and compromise the personal privacy rights of potentially thousands of people.

## CONCLUSION

**WHEREFORE**, State Defendants respectfully request that this Honorable Court deny

Plaintiff's Motion to Compel in its entirety.

<div style="margin-left:50%">

Respectfully Submitted,

STATE Defendants,
By:

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Justin J. Sullivan*
Justin J. Sullivan, Esq. (#9770)
Lauren E. Hill, Esq. (#9830)
Special Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
150 South Main St. Providence, RI 02903
Tel: (401) 274-4400 | Fax (401) 222-2995
Ext. 2007 | jjsullivan@riag.ri.gov
Ext. 2038 | lhill@riag.ri.gov

</div>

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the within document has been electronically filed with the Court through the ECF system on Friday, February 07, 2020 and that it is available for viewing and downloading. I also caused a true and accurate copy of the within document to be served through the ECF system on the following parties and/or counsel of record:

| | |
|---|---|
| *Counsel for Plaintiff* | *Counsel for Defendants Fred Vohr and Jennifer Clarke* |
| Chloe A. Davis, Esq. | Jeffrey G. Latham, Esq. |
| cad@sinapilaw.com | Christine A. Stowell, Esq. |
| | jlatham@tatelawri.com |
| | cstowell@tatelawri.com |

<div style="margin-left:50%">

*/s/ Justin J. Sullivan*

</div>