# Exhibit A

**In The Matter Of:**

*Melise vs*

*Wall, et al*

---

*Kerri McCaughey*

*July 12, 2019*

---




*Min-U-Script® with Word Index*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN MELISE,
Plaintiff,

VS. C.A. NO. 1:17-cv-00490-JJM-PAS

ASHBEL T. WALL, et al.
Defendants.

DEPOSITION of KERRI McCAUGHEY, a Defendant in the above-entitled cause, taken on behalf of the Plaintiff, before Lori Spremulli Confreda, Certified Court Reporter, R.P.R., Commissioner, in and for the State of Rhode Island, at Sinapi Law Associates, Ltd., 2374 Post Road, Suite 201, Warwick, Rhode Island 02886, on Friday, July 12th, 2019 scheduled at 10:00 A.M.

PRESENT,

FOR THE PLAINTIFF,
SINAPI LAW ASSOCIATES, Ltd.
BY: CHLOE A. DAVIS, ESQ.

FOR THE DEFENDANTS,
(RIDOC)
RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL
BY: JUSTIN J. SULLIVAN,
SPECIAL ASSISTANT ATTORNEY GENERAL
AND: LAUREN HILL,
SPECIAL ASSISTANT ATTORNEY GENERAL

- and -

(FRED VOHR AND JENNIFER CLARKE)
TATE & LATHAM
BY: CHRISTINE STOWELL, ESQ.

ALSO PRESENT: ANTHONY SINAPI, PARALEGAL,
SINAPI LAW ASSOCIATES, Ltd.

I N D E X

WITNESS PAGE

KERRI McCAUGHEY

EXAMINATION BY ATTORNEY DAVIS............................05

EXAMINATION BY ATTORNEY HILL............................171

EXAMINATION BY ATTORNEY SULLIVAN........................175

EXAMINATION BY ATTORNEY STOWELL.........................176

***** SO NOTED *****

PAGE 154.....LINE 01

E X H I B I T S


| PLAINTIFF'S NO. | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | (01PG) PHOTOCOPY OF 11/12/2014 9:13 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 82 |
| EXHIBIT 2 | (01PG) PHOTOCOPY OF 02/09/2013 10:24 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 86 |
| EXHIBIT 3 | (01PG) PHOTOCOPY OF 06/09/2015 11:17 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 88 |
| EXHIBIT 4 | (01PG) PHOTOCOPY OF 06/09/2015 11:17 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE W/ADDITIONAL NOTES | 92 |
| EXHIBIT 5 | (01PG) PHOTOCOPY MEDIUM MORAN SECURITY 11/12/2015 SPECIAL NEEDS/URGENT ORDERS | 102 |
| EXHIBIT 6 | (01PG) PHOTOCOPY MEDIUM MORAN SECURITY 11/20/2015 SPECIAL NEEDS/URGENT ORDERS | 103 |
| EXHIBIT 7 | (01PG) PHOTOCOPY MEDIUM MORAN SECURITY. 12/21/2015 SPECIAL NEEDS/URGENT ORDERS | 104 |
| EXHIBIT 8 | (01PG) PHOTOCOPY OF 12/21/2015 11:50 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 105 |
| EXHIBIT 9 | (01PG) PHOTOCOPY MEDIUM MORAN SECURITY 06/21/2016 SPECIAL NEEDS/URGENT ORDERS | 107 |
| EXHIBIT 10 | (01PG) PHOTOCOPY MEDIUM MORAN SECURITY 06/28/2016 SPECIAL NEEDS/URGENT ORDERS | 108 |
| EXHIBIT 11 | (01PG) PHOTOCOPY OF 09/08/2016 9:34 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 109 |
| EXHIBIT 12 | (03PP) STATE OF RHODE ISLAND DEPARTMENT OF CORRECTIONS INMATE EVENTS LOG FROM 08/01/2013 TO 12/30/2016 | 114 |

| PLAINTIFF'S NO. | DESCRIPTION | PAGE |
| --- | --- | --- |
| EXHIBIT 13 | (01PG) PHOTOCOPY OF 11/11/2016, 1:19:42 A.M RHODE ISLAND DEPARTMENT OF CORRECTIONS INCIDENT REPORT | 119 |
| EXHIBIT 14 | (03PP) PHOTOCOPY - LOG BOOK RHODE ISLAND DEPARTMENT OF CORRECTIONS ADULT SERVICES, FROM 11-3-16 THROUGH 1-28-17 | 126 |
| EXHIBIT 15 | (02PP) PHOTOCOPY -- LIFESPAN 11/11/2018 02:48 EMERGENCY DEPARTMENT RECORD | 133 |
| EXHIBIT 16 | (01PG) PHOTOCOPY OF 11/11/2016 1:08 P.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 135 |
| EXHIBIT 17 | (01PG) PHOTOCOPY OF 12/13/2016 2:27 P.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 138 |
| EXHIBIT 18 | (01PG) PHOTOCOPY OF 06/07/2017 8:52 A.M. DEPARTMENT OF CORRECTIONS ADMINISTRATIVE NOTE | 139 |
| EXHIBIT 19 | (17PP) PHOTOCOPY OF RHODE ISLAND DEPARTMENT OF CORRECTIONS POLICY AND PROCEDURE, POLICY NUMBER: 18.22 DOC, EFFECTIVE DATE 08/18/08 | 140 |
| EXHIBIT 20 | (16PP) PHOTOCOPY OF RIDOC DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES | 157 |

A. Correct.

Q. What are the grounds that you have for denying a reasonable accommodation request?

A. It depends on what it is.

Q. What would be some grounds for denying a request for a bottom bunk?

A. Again, bottom bunks, we only have so many. So, my role would be to make sure that those that have bunks have them for legitimate reasons that cannot be accommodated in any other way.

Q. Are there any other reasons why you might deny a reasonable request?

A. Any reasonable request?

Q. Yes. What are the reasons why you would deny a reasonable accommodation request other than --

MS. DAVIS: Let me rephrase.

Q. You just said that you would, you might deny a bottom bunk if you determine that it was not legitimate; are there other reasons why you might deny a bottom bunk request?

A. Not enough information, no documentation to justify the request.

Q. Are there any security reasons why you might deny it?

A. Well, in general, climate issues. I don't have a large, huge number of bottom bunks. So, again, I am

making sure that those that have them are legitimate.

Q. Who is responsible for assigning bunks?

A. Housing lieutenant.

Q. So is there more than one person in the medium security facility responsible for that?

A. There are more than one housing lieutenant, yes.

Q. How many housing lieutenants are there in medium?

A. Four.

Q. Are they responsible for a particular mod, or just do they work sort of together; how does that work?

A. They are responsible for a particular area in the facility.

Q. Do you know how they make decisions for assigning bunks?

A. Any number of reasons.

Q. How many beds are in medium security?

A. Well, I am not going to give you an exact number, but I can tell you there are six housing units with 906 bunks on the housing unit, each side has a left and a right. So there's 12 housing areas with 96 bunks on each side.

Q. So there are 12 housing areas each with 96 beds, and that's the total for medium security, or did you say housing units on each side?

A. Each side.

A. I don't have that number.

Q. But earlier you testified that there are only so many bottom bunks, and you are concerned about providing them. So does that mean that there are enough orders for people to have bottom bunks to reach the total number of bottom bunks available; does that make sense?

MS. DAVIS: Let me rephrase.

Q. Were there so many bottom bunk orders that you might run out of the bottom bunks?

A. That's always a consideration.

Q. Are you aware that it had happened at any point?

A. No.

Q. So at no point while you were the programmatic deputy warden did you actually discover that you had run out of bottom bunks to provide to inmates?

A. I never officially ran out of bottom bunks, no.

Q. What made you be concerned that you were going to run out of bottom bunks?

A. Availability.

Q. Was there some point at which you were informed that you might run out of bottom bunks?

A. Yes.

Q. So, you understand that at some point there was a concern that medium security was not going to have enough bottom bunks available?

A. That's always a concern.
Q. Have you ever denied a bottom bunk because you had run out of available bottom bunks?
A. No.
Q. But you were concerned that you might, and therefore, you did not grant all orders for bottom bunks; is that what you are saying?
A. I granted orders on bottom bunks based on the legitimacy of the request.
Q. How frequently would you return a request for a bottom bunk to medical requesting more information?
A. I don't know.
Q. Can you give an approximation, like 50 percent of the requests, or 75 percent, 25 percent, anything?
A. I can't.
Q. Were there requests that you approved right away, without asking for further information?
A. Yes.
Q. Why?
A. Because the order was legitimate. They sent me the information I received.
Q. What information that you received would indicate to you that it was legitimate?
A. The medical condition.
Q. The medical condition?

bottom bunk.

Q. And that would include for any necessary reasonable accommodation, is that what you are saying? Medical would decide if somebody could be moved to a different facility or should be moved to a different facility if they have the necessary reasonable accommodation that could not be accommodated in, for instance, medium security?

MR. SULLIVAN: Objection to form.

MS. DAVIS: You can stoll go ahead and answer.

MR. SULLIVAN: You can answer.

A. Oh, I am not sure exactly what you are asking me. I am sorry.

Q. If an inmate had an approved necessary reasonable accommodation that could not be accommodated in medium, could they be moved to a different facility?

A. What medical accommodation are you referring to?

Q. Any type of reasonable accommodation.

A. That would be up to medical.

Q. So it would also be up to medical whether an inmate with a necessary reasonable accommodation that could not be accommodated in medium needed to be moved?

A. Yes. That would go to medical.

Q. And medical decides where to send them?

A. Medical would decide if it was a legitimate request to send them. It is based on medical, it is going to come from medical.

Q. Whose decision is it ultimately to move inmates between facilities?

A. That depends.

Q. What does it depend on?

A. It depends on what the incident is. It depends on what the medical issue is. It depends on what the lack of reasonable accommodation exists or does not exist. All cases are going to be very individual.

Q. But you are saying that the correctional staff could be involved in the decision to move an inmate for reasonable accommodation purposes?

A. The administration would be involved in a decision, the warden.

Q. Have you ever denied an order for a bottom bunk for inmates, other than the plaintiff in this case?

A. I don't recall.

Q. You do not recall ever denying an order for a bottom bunk?

A. Yes. I am sure I have. I just don't recall anyone in particular.

Q. Do you know how many approximately?

A. I don't.

Q. What do you consider to be illegitimate medical conditions to be granted a bottom bunk?

A. Illegitimate medical conditions?

Q. You testified that you review whether or not bottom, whether reasonable accommodation are requested for legitimate reasons; what do consider to be illegitimate reasons?

A. It would be a request for a bottom bunk where the need is not documented medically. They cannot provide me more information to make an educated decision based on medical, it's based on self-reporting.

Q. Can you determine just from looking at the request that is sent to you whether or not an order is illegitimate?

A. If the request says just bottom bunk, I am going to request more information.

Q. Would you ever deny one without requesting more information?

A. I would request more information before I denied it.

Q. When you request more information, how do you receive more information? Is it on the order itself? Is it over the phone? Is it an E-mail?

A. It is typically on the form itself, either written on the form itself, or in some cases, a sticky note.

Q. Did you ever receive more information, other than