**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN MELISE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No.: 1:17-cv-00490-MSM-PAS** |
| | : | |
| **COYNE-FAGUE, et al.** | : | |
| **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL AND**
**REQUEST FOR SANCTIONS**

I.    **Introduction**

Plaintiff in the above-entitled matter urges this Honorable Court to grant Plaintiff's Motion

to Compel pursuant to Fed. R. Civ. P. 37(a)(3) and request for sanctions pursuant to Rule 11, Rule

37(a)(5) and this Court's inherent authority.  As grounds therefor and in support thereof, Plaintiff

states that the requested documents are not protected by the Rhode Island Confidentiality of Health

Care Communications and Information Act ("R.I. Confidentiality Act") or the Health Insurance

Portability and Accountability Act ("HIPAA"), are highly relevant to Plaintiff's claims, and that

the legal arguments raised by Defendants in this discovery dispute are frivolous as contrary to

binding case law directly on-point and a prior order of this Court in this case on an essentially

identical argument.  As such Defendants' discovery conduct is in bad-faith and is sanctionable.

II.    **Relevant Facts**

Plaintiff filed the instant action against numerous Defendants including the State of Rhode

Island, Department of Corrections (the "State" or "RIDOC"), Ashbel T. Wall,[1] individually and in

his official capacity as former-Director of RIDOC ("A.T. Wall"), Kerri McCaughey, individually

and in her official capacity as Deputy Warden of RIDOC ("McCaughey") (collectively, "State

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Patricia Coyne-Fague, in her official capacity as Director of the Rhode Island Department of Corrections, is automatically substituted in place of former-Director Ashbel T. Wall in his official capacity, as Defendant A.T. Wall retired from RIDOC in January 2018.

Defendants" or "Defendants"), and Fred Vohr and Jennifer Clarke in their individual and official capacities as medical directors of the RIDOC.  Plaintiff seeks compensatory and punitive damages, counsel fees and costs for conduct amounting to negligence and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, Article 1, § 8 of the Rhode Island Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, ("ADA"), the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1, *et seq.*, and the Rhode Island Civil Rights of People With Disabilities Act ("RICRPD"), R.I. Gen. Laws § 42-87-1, *et seq.*

Briefly, Plaintiff alleges that while he was in the care and custody of Defendants, beginning as early as 2013, Plaintiff repeatedly complained to medical staff about, among other issues, back and neck pain that made it difficult for him to climb a ladder into top bunks and a history of falling from his bed during sleep that could result in significant injuries.  Complaint ("Compl.") (ECF No. 1) ¶¶12-17.  Because of those conditions, numerous medical staff ordered that Plaintiff be given a bottom bunk, using a "Special Needs/Urgent Orders" form that was used when an inmate needed an accommodation for medical purposes.  *Id.*  Medical orders for accommodations were sent to Deputy Warden McCaughey for security concerns-based review and approval and/or modification before correctional staff would implement such orders.  Despite numerous requests from medical staff, and an obligation under both RIDOC policy and the ADA to modify any requests that raised security concerns in consultation with medical staff rather than outright deny them, Defendant McCaughey frequently denied orders for Plaintiff to receive a bottom bunk without consulting medical staff prior to or even after the denial.  Compl. ¶¶18-21, 25-29, 35-49, 69-72.  During the time that those orders should have been implemented, Plaintiff suffered three falls from the top bunk, sustaining significant injuries during the second and third falls, including

head trauma, injuries to his back, neck, chest, and feet, involving a broken foot/ankle.  Compl. ¶¶22-23, 32-34, 50-54, 63, 64.

Plaintiff alleges that "Defendant McCaugh[e]y routinely denies inmates' medical orders for bottom bunk, even when the order is placed by the Medical Director" and that such conduct was part of a pattern and practice pursuant to "an official policy or custom of the Defendant State that was promulgated, created, acquiesced to, permitted, condoned, encouraged, and/or ratified by the chief policy-making official of the DOC, Defendant Wall."  Compl. ¶¶28, 85.  Plaintiff further alleges that such conduct was in violation of RIDOC policies, federal and state statutes requiring accommodations for disabilities, and deliberate indifference of Plaintiff's medical needs amounting to cruel and unusual punishment, among other violations.  Compl. ¶¶40, 92-98.

When Defendant McCaughey was asked during her deposition upon what grounds she may deny a reasonable accommodation request for a bottom bunk, she testified that she considers whether the order is for "legitimate reasons," whether there are "climate issues," whether she has sufficient documentation, and whether the inmate is in a therapeutic program.  Deposition of Kerri McCaughey ("McCaughey Dep.") 42:2-43:1, relevant portions attached hereto as **Exhibit A**.  She testified that she is always concerned about the number of available bottom bunks, and so she "granted orders on bottom bunks based on the legitimacy of the request," which she determined based on the medical condition identified in the order.  McCaughey Dep. 46:23-47:24.  However, Defendant McCaughey has never run out of bottom bunks.  McCaughey Dep. 46:8-16.  Defendant McCaughey's ordinary practice for determining the legitimacy of the medical request would be to review whether "the need is not documented medically.  [Medical] cannot provide me more information to make an educated decision based on medical, it's based on self-reporting. … If the request just says bottom bunk, I am going to request more information."  McCaughey Dep. 81:4-15.  However, that "practice" was routinely violated when Defendant McCaughey denied and/or

ignored orders submitted for Plaintiff without consulting medical staff, as alleged above. Defendant McCaughey also testified that the issue of bottom bunk orders was addressed with medical staff during "Triage Meetings" that she held to address medical issues, including review of the list of bottom bunk orders.  McCaughey Dep. 91:8-22; 170:3-13.

On July 29, 2019, Plaintiff served on State Defendants Plaintiff's Second Request for Production of Documents ("Plaintiff's Second RFPD") attached hereto as **Exhibit B**, wherein Plaintiff included the following request relevant to Plaintiff's Motion to Compel: "9. Documentation from meetings between correctional staff and medical staff wherein medical staff expressed disagreement with the requirement that all inmates with bottom bunk orders be on the first tier."  Plaintiff did not receive responses to those requests from State Defendants until February 5, 2020.  Defendants' response included the following objections:

> **REQUEST NO. 9**: Objection, as this request is vague, over broad, unduly burdensome, and not proportional to the needs of this case. Additional objection, as this request seeks information that is not relevant to the allegations and claims in this civil action. … **SUPPLEMENTAL RESPONSE TO REQUEST NO. 9**: Without waiving any objections, please see Medium Security Duty Rosters, Daily Blotter and Nurse and Physician Schedules for November 10, 2016 and November 11, 2016 with inmate names and identifying information redacted, included herein as **Supplemental Response No. 9**, bates numbered RIDOCSUPP000049 - RIDOCSUPP000072, and designated as *Confidential* in accordance with the Stipulation and Protective Order, ECF No. 55.

*See* Defendants' Supplemental Response to Plaintiff's RFPD attached hereto as **Exhibit C**. Defendants' Supplemental Response No. 9 contained the Triage Meeting Minutes referenced by Defendant McCaughey, which responses were submitted to this Court via electronic mail on May 5, 2020.[2]  The responsive documents contained extensive block redactions for healthcare information related to non-party inmates.  As these documents were not received until after

---

[2] The responsive documents at issue in this motion are marked Confidential, pursuant to a Protective Order entered by this Court, which prevents public disclosure of the documents.

Plaintiff made a separate Oral Motion to Compel documents related to bottom bunk orders, they

were not included in Plaintiff's Oral Motion to Compel.  However, on February 6, 2020, Plaintiff

attempted to confer with Defendants, pursuant to Rule 37, and stated the following objection:

> We strenuously object to each instance where the "Inmates to be
> discussed" section is redacted in full.  As discussed with Judge
> McElroy, the only information that should be redacted is personal
> identifying information, i.e. names and inmate numbers.  The
> discussion of medical issues should not be redacted, particularly
> where there are any discussions of legitimate security issues,
> medical orders and/or bottom bunk issues.  We insist that the
> redactions in these documents be removed.

*See* Email correspondence attached as **Exhibit D** at 2.  Defendants responded by letter dated

February 13, 2020 with the following reassertion of their objection to production:

> RIDOC acknowledges that you "strenuously object" to the
> redactions contained in Response No. 9. The redactions in Response
> No. 9 contain confidential healthcare information of other third-
> party inmates not a party to this litigation, which is prohibited from
> disclosure under Rhode Island law as well as the Health Insurance
> Portability and Accountability Act (HIPPA), as well as security
> information that is not relevant to the allegations contained in the
> Amended Complaint.

*See* Defendants' Letter dated February 13, 2020 attached as **Exhibit E**.  Following this Court's

text-order granting Plaintiff's Oral Motion to Compel, which rejected the same arguments being

pressed by Defendants, Plaintiff again requested that Defendants produce the documents

containing redactions of only personally identifiable information.  Defendants responded as

follows: "With respect to your email concerning the Triage Meeting Minutes: RIDOC produced

these documents with confidential healthcare information and personally identifiable information

redacted, as required by state and federal law, and consistent with the local federal rules.  RIDOC

will respond accordingly should you move to compel the production of this information."  *See*

**Exhibit D** at 5.  Following receipt of this email, Plaintiff's counsel called Defendants' counsel in

an attempt to have a reasonable discussion about the disputed records.  However, due to the current

Covid-19 epidemic, Plaintiff understands that many attorneys are working from home and a voicemail left for Defendants' counsel including the home phone number of Plaintiff's counsel's was not returned.

In response to Plaintiff's request for a judicial conference to assist in resolving this dispute, Defendant DOC again invoked the RI Confidentiality Act at length, arguing that R.I. Gen. Laws § 5-37.3-6.1 requires a judicial order for Defendants to produce the records as requested by Plaintiff. Indeed, that letter to this Court did not even reference HIPPA. *See* Letter dated May 8, 2020 attached as **Exhibit F**.

## III.   Argument

Submission of this dispute for Court intervention is unnecessary, a waste of time, and is only occurring due to Defendant's failure and/or refusal to engage in good-faith negotiations with Plaintiff.   Defendant's repeated insistence that it is following the requirements of the R.I. Confidentiality Act ignores well established case law that Plaintiff previously articulated to Defendants and this Court in its Reply to Defendant's Objection to Plaintiff's Oral Motion to Compel (ECF No. 62).  Defendant cannot even make a good-faith argument pursuant to HIPPA, because the statute and case law clearly establish that any de-identified healthcare information is not protected from disclosure.  As explained in further detail below, Defendants should be ordered to produce the requested documents with limited redactions for personally identifying information and ordered to pay Plaintiff's attorneys fees for its time in obtaining a judicial conference and filing a second motion to compel as a sanction for Defendants' bad-faith discovery conduct.

### A. The Documents Requested by Plaintiff are Discoverable without Judicial Intervention.

#### i.   Rhode Island Confidentiality Act

Defendants have consistently invoked the Rhode Island Confidentiality Act in objecting to producing the requested information with limited redactions, in correspondence with both Plaintiff

and this Court.  This argument is beyond spurious and ignores binding law on this Court from both the Federal and State courts that counsel for State Defendants was required to disclose.

First, it is blackletter law and a basic tenant of Federal court practice that "[f]ederal common law governs claims of privilege in United States courts where jurisdiction is based on a federal question." *Marcum v. Scioto Cty., Ohio*, No. 1:10-CV-790, 2012 WL 2018523, at *4 (S.D. Ohio June 5, 2012) (citing Fed.R.Evid. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372–73 (6th Cir. 1992)).  "Federal courts are not permitted to apply state privilege law, regardless of the importance of implicated policy concerns; rather, they are obligated to apply federal privilege law." *Id.*  Fed.R.Evid. 501 says exactly this, "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."

Indeed, the primacy of Federal law over State law on issues of privilege in Federal Court has been well settled since at least 1876 when the U.S. Supreme Court held unambiguously, in the context of attorney client privilege, that the admissibility of a privilege is not dependent upon the statutes of the state in which the Federal Court sits but on Federal law. *See Connecticut Mut. Life Ins. Co. v. Schaefer*, 94 U.S. 457, 458, 24 L. Ed. 251 (1876) ("The laws of the State are only to be regarded as rules of decision in the courts of the United States where the Constitution, treaties, or statutes of the United States have not otherwise provided. When the latter speak, they are controlling; that is to say, on all subjects on which it is competent for them to speak").  As recently as 2016 the U.S. Supreme Court again heartily endorsed the continued validity of this position when it denied cert in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016) *cert. denied Hannstar Display Corp. v. Sony Elecs., Inc.*, 138 S. Ct. 378, 199 L. Ed. 2d 277 (2017) (holding, in a Federal case involving both state and federal claims and a later dispute of a

settlement and the admissibility of an email exchange in a federal court retaining jurisdiction after federal claims had been dismissed, that "the eventual dismal of federal claims does not govern whether the evidence related to federal law.  Because, here, at the time the parties engaged in mediation, their negotiations concerned (and the mediated settlement settled) both federal and state law claims, the federal law of privilege applies.").

Numerous courts, including at least one circuit court, have also addressed this issue in the precise context of state healthcare confidentiality statutes that are more restrictive than HIPPA and found them to be inapplicable.  In *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), the Seventh Circuit specifically rejected an argument that Illinois law prevented the disclosure of medical records, reasoning as follows:

> [U]nder Illinois law, even redacted medical records are not to be disclosed in judicial proceedings, with immaterial exceptions. … [W]e agree with the government that the HIPAA regulations do not impose state evidentiary privileges on suits to enforce federal law. Illinois is free to enforce its more stringent medical-records privilege (there is no comparable federal privilege) in suits in state court to enforce state law and, by virtue of an express provision in Fed.R.Evid. 501, in suits in federal court (mainly diversity suits) as well in which state law supplies the rule of decision. But the Illinois privilege does not govern in federal-question suits, such as the suit in the Southern District of New York. The enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege regarding medical records were applicable to all federal cases. … [W]e think it improbable that HHS intended to open such a can of worms when it set forth a procedure for disclosure of medical records in litigation—intended, that is, to be regulating, actually or potentially (depending on other statutory provisions regulating subpoenas), the litigation of federal employment discrimination cases, social security disability cases, ERISA cases, Medicare and Medicaid fraud cases, Food and Drug Administration cases, and the numerous other classes of federal case **in which medical records whether of the parties or of nonparties would not be privileged under federal evidence law.**

(Emphasis added.).[3]

The Rhode Island Supreme Court repeatedly stated that the R.I. Confidentiality Act created a privilege. *See Pastore v. Samson*, 900 A.2d 1067, 1085–86 (R.I. 2006) ("[F]urther explanation by the motion justice is needed concerning whether the *privilege* created by the Confidentiality of Health Care Information Act insulates any of the 750 pages of documents"; "this Court could not 'allow the Legislature to create such a sweeping *privilege* with regard to health-care information as to cripple the ability of the Judiciary to try and determine a wide range of civil and criminal cases.' " (emphasis added)).   Additionally, "[t]he federal courts do not recognize a physician-patient privilege nor 'has Congress codified the concept in a federal statute.'" *Flat Panel*, 835 F.3d at 1158 (quoting *G.M.C. v. Director of the Nat'l Institute for Occupational Safety & Health*, 636 F.2d 163, 165 (6th Cir. 1980)).   Here, as nearly all of Plaintiff's claims are for federal statutory or constitutional violations, this Court's jurisdiction is plainly based on federal questions.   Thus, any argument that Rhode Island privileges bar Plaintiff from obtaining the requested documents is unfounded.

Second, even if state law privileges could apply, the R.I. Confidentiality Act does not prohibit the disclosure of the documents requested by Plaintiff, particularly in light of the numerous Rhode Island Supreme Court decisions ruling the R.I. Confidentiality Act

---

[3] This case has been positively cited by district courts in the First Circuit.  *See United States ex rel. Health Outcomes Techs., Inc. v. Hallmark Health Sys., Inc.*, No. CV 01-11375-NMG, 2005 WL 8175864, at *1 (D. Mass. Dec. 8, 2005) ("Defendants contend that M.G.L. c. 111, § 70 is "more restrictive" than HIPAA and, therefore, controls when it conflicts with HIPAA's privacy provisions. This contention is incorrect because: 1) recent case law has held that, under HIPAA, state privacy law does not govern in federal-question suits, *see Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), and 2) HIPAA's regulations expressly state that the federal statute does not "supercede [sic] any contrary provision of State Law" unless the contrary state law "relates to the privacy of individually identifiable health information" and is "more stringent" than HIPAA's requirements."); *In re Grand Jury Proceedings*, 450 F. Supp. 2d 115, 118 (D. Me. 2006) ("Inasmuch as appears, most courts considering the matter have reached the same end point. *See, e.g.*, *Northwestern Mem.'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir.2004) (declining to apply Illinois privilege rules to adjudicate medical-records-access issue in context of suit challenging constitutionality of federal statute; observing, 'Although the issue is not free from doubt, we agree with the government that the HIPAA regulations do not impose state evidentiary privileges on suits to enforce federal law.')… There is no reason to believe that the First Circuit would do otherwise.").

unconstitutional, including explicitly rejecting the exact argument promoted by Defendants in their Letter to this Court describing their refusal to produce the requested documents. *See* **Exhibit F**. Although Defendants have changed their tactics slightly since their utterly frivolous Memorandum of Law in Opposition to Plaintiff's Oral Motion to Compel (ECF. No. 61-1) was rejected, they are still relying on a reading of the statute that was rejected by the R.I. Supreme Court.[4]

Defendants continue to argue that they are bound by § 5-37.3-6.1 of the Act, which requires that Plaintiff submit a subpoena to Defendant DOC and provide notice to all inmates whose confidential health information is contained in the requested documents, granting those individuals and the DOC the opportunity to make "a formal challenge." *See* **Exhibit F** at 3. However, in *Pastore*, 900 A.2d at 1085–86, the R.I. Supreme Court addressed this exact argument now pressed by State Defendants. There, plaintiffs filed a medical malpractice suit against individual doctors and the hospital and submitted requests for the production of documents to the hospital, much of which the hospital refused to produce, asserting protection under the peer-review privilege and the R.I. Confidentiality Act. *Id.* at 1071-72. On a motion to compel, plaintiffs requested an *in camera* review to determine whether the privileges applied. *Id.* at 1072. Following the motion judge's review and order that the hospital produce 750 pages of documents subject to redactions of all

---

[4] Defendants previously argued that the requested information could not be released without consent of every inmate whose records were contained in the requested documents. That argument was not only frivolous, but it likely violated the RI Rules of Professional Conduct for failing to disclose binding precedent to this Court. The Rhode Island Supreme Court held that a strict application of the previous version of the Act in all civil and criminal judicial proceedings would render the statute unconstitutional. *See Bartlett v. Danti*, 503 A.2d 515, 518 (R.I. 1986) ("§§ 5-37.3-4 and 6 subject the procurement and use of health-care information at all stages of litigation to the caprice of the patient. The trial justice is stripped of all authority to require production of medical information. … We conclude that § 5-37.3-6 is violative of article 1, section 5[, of the Rhode Island Constitution]. We find that § 5-37.3-6, absent the patient consent mandated by § 5-37.3-4(a), precludes litigants from obtaining and introducing material evidence, thereby preventing litigants from effectively presenting their claims before the trier of fact.").

The R.I. Supreme Court then declared a similar statute unconstitutional that "was enacted a few months subsequent to our decision in *Bartlett* in an obvious attempt to avoid our declaration of unconstitutionality" of §§ 5-37.3-4 and 6. *State v. Almonte*, 644 A.2d 295, 298 (R.I. 1994). In 1996, the General Assembly passed a third iteration of the statute, including § 5-37.3-6.1, in an attempt to provide a procedure for the disclosure of confidential healthcare information in judicial proceedings. *See* P.L.1996, ch. 248, § 3, and P.L.1996, ch. 266, § 3. However, the R.I. Supreme Court has also spoken directly on the current version of the statute and declared it to be unacceptable *if read in precisely the manner that State Defendants were previously pressing*. None of these cases were provided to this Court or to Plaintiff by Defendants in violation of RI R S CT ART V RPC Rule 3.3.

patient information, such as names and social security numbers, the hospital petitioned the

Supreme Court to review the motion judge's order.  *Id.* at 1072-73.  The entirety of the Court's

analysis on the privilege created by the R.I. Confidentiality Act is pertinent to this case.  After

explaining the history of the statute, the Court explained as follows:

> This Court noted that the Confidentiality of Health Care
> Information Act 'was intended 'to establish safeguards for
> maintaining the integrity of confidential health-care information that
> relates to an individual.'' We concluded that § 5–37.3–6.1 struck 'a
> permissible balance between a party's interest in maintaining the
> confidentiality of his or her personal health care records and the
> court's need to access relevant information." Thus, **at least with
> respect to known, personally identifiable health-care records, §
> 5–37.3–6.1 sets forth a procedure** by which the person whose
> records are sought is provided notice and an opportunity to contest
> their production or seek to limit their disclosure or use. *That is not
> the situation with which we currently are faced.*
>
> The plaintiff in this case has not sought health-care records
> personally identifiable to a particular patient. Rather, plaintiff
> requested information that was reviewed by the hospital in the
> course of its credentialing decisions.  Thus, because the individuals
> whose records defendants assert are privileged have not been
> identified to plaintiff, compliance with § 5–37.3–6.1 is impossible.
> *The plaintiff cannot be expected to serve a copy of a subpoena on
> an unknown putative patient or to obtain his or her acquiescence to
> access an as-yet-unidentified document*. Moreover, plaintiff is
> attempting to prove that the hospital negligently credentialed Dr.
> Samson, a claim that can be proved without the need to identify a
> particular individual.
>
> In response to the hospital's claim that some documents
> were protected by the Confidentiality of Health Care Information
> Act, plaintiff requested and was granted an *in camera* review of the
> records. The motion justice ordered the disclosure of all documents
> without identifying any confidential health-care records, although
> she ordered that some records be redacted.
>
> ***The Confidentiality of Health Care Information Act is not
> a shield behind which a medical provider may hide to avoid
> liability for medical negligence or for any other purpose.*** This
> Court has declared that privileges do not aid the quest for truth, the
> core function of the adversary process and, therefore, privileges
> should narrowly be construed.
>
> Accordingly, we are of the opinion that *in camera* review
> and redaction of personally identifying patient information is an
> appropriate procedure to decide whether the documents should be
> produced.  However, the trial justice failed to make a record finding

> about which documents, if any, met the definition of personally identifiable confidential health-care information as set forth in § 5–37.3–3(13), and, if so, whether the records could be produced after they were redacted. We remand this case for that determination.

*Id.* at 1085-86 (emphasis added) (internal citations omitted). Thus, even if state privileges were relevant to federal courts, which they are not, the R.I. Supreme Court's decision in *Pastore* would be directly controlling. The Court asserted that the procedure of obtaining a court order was only applicable to documents actually protected by the Act. Although the Court held that the *in camera* review of the documents in dispute was "appropriate," the Court did not hold that such a procedure is required in all instances. Once any personally identifiable information is redacted, then the records are no longer protected by the Act. This process would be identical to the procedure for dealing with such records under HIPPA, as discussed in more detail below, and does not require the involvement of the courts.

Here, Plaintiff requested documents containing information on individuals who have not been identified to Plaintiff, making compliance with § 5–37.3–6.1 impossible, impractical, and completely unnecessary. Specifically, Plaintiff has requested Triage Meeting Minutes that may contain specific and limited personally identifiable information that is currently unknown by Plaintiff, but names and inmate identification numbers can be easily redacted. There is no need for this Court to conduct an *in camera* review of the records. Defendants could have easily produced the requested records, redacting the "Personally identifiable confidential healthcare information" that "explicitly or by implication identifies a particular patient," in order to comply with the R.I. Supreme Court's directive for compliance with § 5–37.3–3(13).

Furthermore, this Court, in granting Plaintiff's previous Oral Motion to Compel, did not require an *in-camera* review of the documents at issue in that motion. Thus, this Court has already ruled on this exact issue and rejected Defendants' argument out of hand. Any further pressing of the argument is contrary to this Court's previous order and frivolous.

**ii. HIPAA Does Not Prohibit Disclosure of Plaintiff's Requested Documents**

Defendants' argument in regard to federal confidentiality requirements is similarly unavailing. First, "HIPAA did not give rise to a physician-patient or medical records privilege. It did, however, 'create a procedure for obtaining authority to use medical records in litigation." *United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007) (quoting *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004)). Second, HIPAA *only* applies to and, therefore, protects from disclosure "individually identifiable health information," which is defined as follows:

> The term "individually identifiable health information" means any information, including demographic information collected from an individual, that--
> (A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and--
> (i) identifies the individual; or
> (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C.A. § 1320d. The Privacy Rule, as the regulations implementing HIPAA are called, expressly exempts from the application of the disclosure requirements any "de-identified" health information. 45 C.F.R. § 164.502 ("The requirements of this subpart do not apply to information that has been de-identified in accordance with the applicable requirements of § 164.514"). Section 164.514 described exactly what would be required to de-identify the records at issue:

> (b) Implementation specifications: Requirements for de-identification of protected health information. A covered entity may determine that health information is not individually identifiable health information only if:
> …
> (2) (i) The following identifiers of the individual or of relatives, employers, or household members of the individual, are removed:
> (A) Names;

(B) All geographic subdivisions smaller than a State, including street address, city, county, precinct, zip code, and their equivalent geocodes, except for the initial three digits of a zip code …

…

(C) All elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, date of death; and all ages over 89 and all elements of dates (including year) indicative of such age, except that such ages and elements may be aggregated into a single category of age 90 or older;

(D) Telephone numbers;

(E) Fax numbers;

(F) Electronic mail addresses;

(G) Social security numbers;

(H) Medical record numbers;

…

(R) Any other unique identifying number, characteristic, or code, except as permitted by paragraph (c) of this section; and

(ii) The covered entity does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is a subject of the information.

Numerous courts have recognized that this procedure can be performed without involving the courts because HIPPA is simply no longer applicable when records have been de-identified. *See Nw. Mem'l Hosp.*, 362 F.3d at 933 ("In passing HIPPA, Congress recognized a privacy interest only in 'individually identifiable medical records' and not redacted medical records, and HIPPA preempts state law in this regard. The 'de-identification' (redaction) of all identifying information from the medical records and the extensive protective order in place also eliminates any privacy interest in the records."); *Roth v. Sunrise Senior Living Mgmt., Inc.*, No. 2:11-CV-4567, 2012 WL 748401, at *1–2 (E.D. Pa. Mar. 8, 2012) ("Once medical records have been appropriately redacted and de-identified, patient privacy concerns dissipate and HIPAA poses no obstacle to the production of the redacted records."); *Miller v. Allstate Fire & Cas. Ins. Co.*, Civil No. 07–260, 2009 WL 700142, at *4 (W.D.Pa. Mar.17, 2009) (noting that plaintiff's "willingness to accept redacted documents, which would cease to be individually identifiable" would "obviate any of the

patient privacy interests potentially at stake."); *Caines v. Addiction Research & Treatment Corp.*, No. 06Civ.3399, 2007 WL 895140, at *1 (S.D.N.Y. Mar. 20, 2007) (observing that "[i]t is a routine matter in litigation for courts to require production ... of records that reflect medical treatment of non-parties, sometimes with the identities of the patients redacted" and doing so "is fully consistent with the privacy provisions of HIPAA.").

Thus, HIPPA poses no obstacle to production of the de-identified documents requested by Plaintiff.

### iii. Releasing the Requested Documents Would Not Violate Privacy Protections.

Because "[f]ederal courts are not permitted to apply state privilege law, regardless of the importance of implicated policy concerns," the argument that State Defendants would be subject to lawsuits from each inmate whose records were disclosed is also unfounded. *Marcum*, 2012 WL 2018523, at *4. Additionally, since no personally identifiable information would be disclosed, any claim for violating confidentiality statutes would similarly fail. *See id.* at *5 ("Defendants' argument that an order compelling the production of the medical records will subject them to tort liability is equally unavailing.").

### B. The Documents Requested by Plaintiff are Relevant and Proportional to Plaintiff's Needs.

This Court, in granting Plaintiff's previous Oral Motion to Compel, has already declared that documents related to bottom bunk orders or other special needs accommodations containing healthcare information of non-party inmates are relevant to Plaintiff's claims. The Triage Meeting Minutes describe meetings between medical staff and security staff to address intersecting issues relating to medical needs and security concerns. All of this information is extremely relevant to Plaintiff's claims. The Triage Meeting Minutes additionally contain information related to bottom bunk issues, which are particularly relevant. Therefore, the redacted portions of the Minutes are

presumed to be relevant and discoverable. Defendants have made no attempt to explain to Plaintiff why the redacted information is not relevant to Plaintiff's claims. Defendants have additionally never provided a privilege log for the redacted portions from which Plaintiff might be able to discern if the information is not relevant. Thus, Plaintiff has no reason to believe that the redacted portions of the Triage Meeting Minutes, other than personally identifiable information, should not be produced.

> **C.  This Court Should Order Defendants to Pay Plaintiff's Attorneys' Fees and Costs Incurred Leading Up to and in Bringing the Within Motion as Sanctions for Acting in Bad Faith in Refusing Production of the Requested Documents.**

Plaintiff requests that this Court sanction Defendants pursuant to this Court's inherent authority and Fed.R.Civ.P. 11 and 37(a)(5). "Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has 'acted in bad faith, vexatiously, or for oppressive reasons.'" *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014). Additionally, Rule 37(a)(5) provides that counsel fees should be awarded if a party's motion to compel is granted, unless the opposing party's nondisclosure, response, or objection was substantially justified. A sanction under Rule 37(a)(5) does not require a violation of a court order. "Rather, a court must order a sanction under Rule 37(a)(5) if it is forced to grant a motion to compel discovery or the requested discovery is provided after such a motion was filed." *Mantell v. Chassman*, 512 F. App'x 21, 24 (2d Cir. 2013). "Substantial justification may be established by an explanation that demonstrates good faith compliance with discovery obligations, coupled with a lack of any suggestion of strategic sandbagging." *Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*, No. CV 17-549MSM, 2019 WL 5448680, at *4 (D.R.I. Oct. 24, 2019); *see also JJI Int'l, Inc. v. Bazar Grp., Inc.*, No. 11–206ML, 2013 WL 3071299, at *5 (D.R.I. Apr. 8, 2013)

(action is substantially justified if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action").

Defendants have acted in bad faith throughout this discovery process, but particularly in refusing to produce the documents at issue in this motion to compel.  First, Defendants' delay in producing the requested records was extensive.  Second, Defendants never reasonably conferred in good faith with Plaintiff's counsel over the Triage Meeting Minutes.  Indeed, Defendants could have raised, but failed to, purported concerns with  Plaintiff's counsel since Plaintiff first raised this ongoing redaction issue with Defendants in February, including a) whether the information was relevant, b) the issue of unique medical conditions, and c) obtaining a more specific protective order.  Third, Defendants are not substantially justified in refusing to produce the documents as requested because they continue to press frivolous legal arguments that are directly contrary to this Court's order on Plaintiff's oral motion to compel.  Such delays and non-responsiveness as exhibited by Defendants have been held to be sanctionable, as set forth in more detail below.

Plaintiff requested the Triage Meeting Minutes in July, following the deposition of Defendant McCaughey, wherein the Triage Meetings were specifically referenced.  Plaintiff was reasonably amenable to Defendants' delays in responding to Plaintiff's discovery request, but by October, Plaintiff informed Defendants that this Court would be contacted if responses were not received soon.  *See* email correspondence attached hereto as **Exhibit G**.  When responses still had not come by October 28, 2019, Plaintiff's counsel contacted Judge McElroy's clerk to schedule a conference to address Defendants' failure to respond.  Plaintiff's counsel was notified by Defendants' counsel on the day of the judicial conference that he had received requested documents from his client and would produce them within 10 days.  Therefore, the judicial conference did not go forward.  However, following review of the responsive documents, Plaintiff's counsel notified Defendants' counsel that Triage Meeting Minutes had not been

produced.  Again, these missing documents were the subject of a judicial conference that took place on January 29, 2020.  This Court ordered Defendants to produce the outstanding documents by February 5, 2020, via text order dated January 30, 2020.  Plaintiff received the Triage Meeting Minutes in accordance with this Court's order, but the documents contained substantial redactions that are at issue in this motion.  It has now been nearly 10 months since Plaintiff first requested these records.  Throughout that time, Defendants have engaged in extensive delay and obstruction tactics in response to Plaintiff's requests.  *See Shumpert v. City of Tupelo*, 905 F.3d 310, 325 (5th Cir. 2018), as revised (Sept. 25, 2018), *cert. denied sub nom. Shumpert v. City of Tupelo, Miss.*, 139 S. Ct. 1211, 203 L. Ed. 2d 206 (2019) (upholding sanctions of $3,086.00 for plaintiffs' failure to respond for two months, requiring defendants to file a motion to compel, and a second motion for insufficient responses, even where "Plaintiffs' counsel's only justification for his failure to respond to the discovery request was that he was busy with professional and personal obligations.").

Following receipt of the Triage Meeting Minutes, Plaintiff's counsel contacted Defendants' counsel on February 6, 2020 to dispute the extensive redactions.  At any point in the last three months, Defendants could have had a conversation with Plaintiff's counsel about whether the block redactions covered information entirely unrelated to special needs orders and/or bottom bunk issues.  However, Defendants never raised that issue with Plaintiff.  Indeed, when Judge McElroy asked Defendants during the telephonic conference on May 11th how many of the redactions related to bottom bunk orders, Defendants could not even provide a response to this Court.  The fact that Defendants had not even attempted to identify relevant information reinforces Plaintiff's claim that Defendants have not acted in good faith and have instead acted to obstruct Plaintiff's attempts to obtain relevant information pursuant to the discovery process.

Furthermore, Defendants never raised the issue of unique medical conditions with Plaintiff's counsel.  Defendants staunchly refused to produce the unredacted records, claiming that "The redactions in Response No. 9 contain confidential healthcare information of other third-party inmates not a party to this litigation, which is prohibited from disclosure under Rhode Island law as well as the Health Insurance Portability and Accountability Act (HIPPA)."  Defendants did not claim that the confidential healthcare information could not be disclosed because it could not be segregated from personally identifiable information.  Had Defendants made such an argument to Plaintiff's counsel, then the parties could have engaged in a reasonable conversation about whether the unique medical conditions could have remained redacted and still provided relevant information to Plaintiff.  Alternatively, the parties could have reasonably discussed whether a more specific protective order would have sufficed that included an attorneys' eyes-only provision.  Because Plaintiff's counsel has no knowledge of which inmates have unique medical conditions, this is not a legitimate basis to outright refuse disclosure.  However, Defendants never engaged in any good-faith negotiations.

Nonetheless, Plaintiff does not need to prove that Defendants acted in bad faith to be awarded sanctions under Rule 37(a)(5) where a party refused to produce discovery without substantial justification.  "[T]the source of the norms for determining whether the standard has been satisfied is the courts' [sic ] view about the range of behavior that a hypothetical reasonable lawyer would engage in if confronted with the circumstances presented in the particular case.... [A] prevailing party can secure an expense sanction award without proving that the losing party acted in bad faith, and proof by the losing party that it acted in subjective good faith is not sufficient to defeat a request for sanctions.'"  *S.E.C. v. Yorkville Advisors, LLC*, No. 12 CIV. 7728 GBD HBP, 2015 WL 855796, at *7 (S.D.N.Y. Feb. 27, 2015) (quoting *In re Omeprazole Patent Litig.*, MDL 1291, M–21–81 (BSJ), 2005 WL 818821 at *6 (S.D.N.Y. Feb. 18, 2005) (Special Master's

Ruling), *aff'd*, 227 F.R.D. 227 (S.D.N.Y. Feb. 25, 2005) (Jones, D.J.), quoting 7–37 *Moor's Federal Practice–Civil* § 37.23[2] (2004)).

Here, the lack of substantial justification is evidenced by Defendants having wasted Plaintiff's and this Court's time by engaging in frivolous arguments already rejected by this Court. Defendants position to this Court remains that they intended to move for a protective order pursuant to the R.I. Confidentiality Act, which is in direct contravention of well-established and binding case law, as Plaintiff explained at length above.  But more importantly, Defendants' position also disregards  the order of this Court made on April 15, 2020 that entirely dismissed Defendants' arguments on identical issues. ***Refusing to produce documents on grounds that have already been addressed by this Court in this case is sanctionable.*** *See Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 4809842, at *2 (E.D. Va. Sept. 25, 2014) (granting sanctions under Rule 37(a)(5) where "the Court found that, having already ruled in its April 10 Order that discovery regarding Flame's alter-ego theory was permissible, FBP's position in resisting such discovery was not substantially justified, and an award of expenses was not otherwise unjust.").  Thus, Defendants' conduct in delaying responses and then objecting to disclosure after redaction of personally identifiable information is without substantial justification and sanctionable.

Unfortunately, this is not the first time that Defendant RIDOC and its attorneys in the Attorney General's Office have engaged in bad-faith discovery conduct.  The undersigned firm, Sinapi Law Associates, currently maintains several lawsuits against Defendant RIDOC and is engaged in numerous discovery disputes.  Plaintiff's counsel and other members of this firm have voiced objections to Defendant RIDOC's various counsels regarding the scorched-earth, defend-at-all-cost tactics of Defendant RIDOC in this and other lawsuits, which are, on information and belief, in bad faith and intended to make litigation against the Defendant RIDOC as difficult and

expensive as possible, serving only to discourage litigation of otherwise meritorious cases and obstruct justice via the courts.  *See Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002) (upholding award of counsel fees where "the district court found that 'Pan American's failure to cooperate with PRPA's discovery requests was clearly without justification and served only to impede the discovery process and to make life as difficult as possible for PRPA.'").  Nevertheless, such tactics have continued, in part because Defendant RIDOC has not experienced any negative consequences for its bad-faith conduct and is perhaps emboldened by the same.  Until Defendant RIDOC is held accountable, Plaintiff's counsel fears that it will continue to dissuade injured parties and attorneys from bringing lawsuits against the RIDOC to vindicate their rights.  "Rule 37(a)(5) exists to discourage counsel from creating the expense of getting the court involved in resolving discovery disputes that, with a good faith effort, they could have resolved on their own."  *Saalfrank v. Town of Alton*, No. 08–cv–46, 2010 WL 839884, at *7 n. 10 (D.N.H. Mar. 5, 2010).

For these reasons, Plaintiff requests that this Court order Defendant DOC to pay Plaintiff's counsel fees for the time required in pursuing judicial intervention in this dispute, including the telephonic conference and this motion to compel, as a sanction for Defendant DOC's unprofessional and bad-faith conduct.  Plaintiff further requests that this Court issue a written decision that might aid in resolving future disputes without the necessity of judicial intervention.

## IV.    Conclusion

WHEREFORE, Plaintiff respectfully prays that this Court grant his Motion to Compel, including the following relief:

1.  Overrule Defendants' objections, grant the within Motion in the form and manner requested herein, and order Defendants to produce the Triage Meeting Minutes, subject only to limited redactions for personally identifiable information, within 7 days;

2. That, under the circumstances, Defendants be ordered to pay the counsel fees and costs of seeking a judicial conference and bringing this Motion to Compel as a sanction for Defendants' willful and intentional refusal to comply with discovery requests and requiring Plaintiff to respond to numerous frivolous arguments;

3. Issue a written decision that will assist Plaintiff in resolving future discovery disputes with Defendants and other parties to reduce the unnecessary involvement of this Court; and,

4. Such other and further relief as this Court deems just and proper.

Plaintiff,
By his attorney,

**Dated: May 15, 2020**                                /s/ **Chloe A. Davis_____ ___**
**Chloe A. Davis, Esq**. Bar No. 9334
Sinapi Law Associates, Ltd.
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690
Email cad@sinapilaw.com

## **CERTIFICATION**

Jeffrey G. Latham, Esquire                    Justin J. Sullivan, Esquire
Christine A. Stowell, Esquire                 Lauren E. Hill, Esquire
Tate & Latham                                 Department of the Attorney General
40 Westminster Street, Suite 350              150 South Main Street
Providence, RI 02903                          Providence, RI 02903
(401) 421-7400                                401-274-4400
jlatham@tatelawri.com                         jjsullivan@riag.ri.gov
cstowell@tatelawri.com                        lhill@riag.gov

I hereby certify that on **May 15, 2020**, a true copy of the within was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System. Service on the counsel of record listed above has been effectuated by electronic means.

/s/ **Chloe A. Davis_____**