**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STEPHEN MELISE,<br>    *Plaintiff*<br><br>v.<br><br>PATRICIA COYNE-FAGUE, in her official capacity as Director of the DEPARTMENT OF CORRECTIONS; et al.,<br>    *Defendants* | C.A. No. 1:17-cv-00490-MSM-PAS<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM OF LAW IN SUPPORT OF RIDOC'S MOTION FOR A PROTECTIVE ORDER

Defendants the State of Rhode Island, Department of Corrections ("RIDOC"); Ashbel T. Wall, individually and in his official capacity[1] as Director of RIDOC ("A.T. Wall"); and Kerri McCaughey, individually and in her official capacity as Deputy Warden of RIDOC ("McCaughey") (collectively, "RIDOC Defendants" or the "State") hereby submit this Memorandum of Law in Support of RIDOC's Motion for a Protective Order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

### RELEVANT FACTS AND TRAVEL

In the instant action, Plaintiff alleges that he was denied a bottom bunk when requested for ambiguous medical reasons. Plaintiff claims that while assigned to a top bunk, he inexplicably fell from his bed and sustained personal injuries. The Amended Complaint (ECF 26) alleges a violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 (Count One), a

---

[1] Defendant A.T. Wall retired from RIDOC in January 2018. Pursuant to Fed. R. Civ. P. 25(d), Patricia Coyne-Fague, in her official capacity as Director of the Rhode Island Department of Corrections, is automatically substituted in place of Director Wall in his official capacity.

1

violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, et seq. (Count Two); a violation of the Rehabilitation Act, 29 U.S.C. § 794 (Count Three); violation of the Rhode Island Civil Rights of Persons with Disabilities Act, R.I. Gen. Laws § 42-87-1, et seq. (Count Four); a violation of the Eighth Amendment, under 42 U.S.C. § 1983 (Count Five); violation of Article I, § 8 of the Rhode Island Constitution (Count Six); and, negligence (Count Seven). *See* Amended Compl., ECF 26, at ¶¶ 99-105.

## **DOCUMENTS SOUGHT TO BE PROTECTED**

Following the deposition of Deputy Warden McCaughey, the documents at issue—meeting minutes from confidential "Triage Meetings" at the Medium Security Facility of the Adult Corrections Institute ("ACI")—were targeted by Plaintiff's counsel as potentially relevant documents relating to a RIDOC safety policy that inmates with approved bottom bunk requests are to be housed on the first floor of the Medium Security Facility. Triage Meetings were conducted with Deputy Warden McCaughey, the Medical Program Director, Nursing Director and other medical personnel to discuss inmate health issues, both generally and specifically. During these meetings, participants discussed diagnoses and treatment of individual inmates, and the meeting minutes document those discussions. The Triage Meeting Minutes, therefore, contain personally identifying information and confidential health information of inmates who are not parties to this action.

RIDOC objected to producing the Triage Meeting Minutes in their entirety, as the documents contained protected health information of third-parties that was prohibited from disclosure under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Rhode Island Confidentiality of Health Care Communications and Information Act, R.I. Gen. Laws § 5-37.3-1, et seq. ("RICHI"). However, because the third party protected health information

2

contained in the Triage Meeting Minutes was capable of being segregated out without obscuring the information that Plaintiff's counsel sought, RIDOC redacted the information and produced the Triage Meeting Minutes to all Counsel on February 5, 2020. *See* Confidential Triage Meeting Minutes, attached hereto as *Exhibit A*.[2] Plaintiff now demands that the redactions must be removed from the Triage Meeting Minutes that were produced. RIDOC maintains that it is prohibited by HIPAA and RICHI from producing the Triage Meeting Minutes unredacted and therefore now seeks a protective order from this Honorable Court.

## ARGUMENT

**I. THE DOCUMENTS PRODUCED TO PLAINTIFF IN REDACTED FORM CONTAIN PROTECTED HEALTHCARE INFORMATION AND PERSONALLY IDENTIFIABLE INFORMATION, WHICH RIDOC IS PROHIBITED FROM DISCLOSING WITHOUT SIGNED WRITTEN CONSENT OR BY ORDER OF THE COURT, PURSUANT TO HIPAA.**

The Triage Meeting Minutes demanded by the Plaintiff in unredacted form contain the confidential health care information of numerous other patients—who are not parties to this case—and RIDOC is prohibited under HIPAA from making such an disclosure without the written informed consent of each patient, or in very limited circumstances, a court order. *See Ex. A*.

In enacting HIPAA, Congress's objective was to address concerns about the confidentiality of patients' individually identifiable health information." *Olsen v. Hamilton*, 330 F. Supp. 3d 545, 554 (D. Me. 2018) (quoting *OPIS Mgmt. Res., LLC v. Sec'y, Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1294 (11th Cir. 2013)). To that end, the United States Department of Health and Human Services ("DHHS") was tasked with promulgating privacy regulations. *Id*. In fulling that

---

[2] RIDOC will provide the Court with the unredacted documents for in camera review, in accordance with the Court's orders and recommendations made during the previous telephonic discovery conference on May 6, 2020.

obligation, DHHS promulgated the *Standards for Privacy of Individually Identifiable Health Information* (the "Privacy Rule") which regulates how and under what circumstances covered entities may use or disclose "protected health information" about an individual. *See* 45 C.F.R. §§ 160.102(a)(3), 160.103, 164.500, 164.502(a), 164.508(a)(1); *see also Olsen*, 330 F.Supp. 3d at 554. Under the Privacy Rule, protected health information "includes all individually identifiable health information maintained or transmitted in any form, as well as any oral statement made about medical treatment or conditions." *Cora-Reyes v. Puerto Rico Aqueduct & Sewer Auth.*, No. CIV. 08-1239 (CVR), 2010 WL 2670872, at *5 (D.P.R. July 1, 2010) (citing 45 CFR § 160.103).

Generally speaking, "HIPAA prohibits the use and disclosure of an individual's protected health information unless the individual has authorized its use and disclosure" except in certain limited circumstances, such as in the course of a judicial proceeding. *Id.* (citing 45 CFR § 164.512). With respect to judicial proceedings, the Privacy Rule provides two circumstances where a disclosure is permitted; either in response to a court order compelling disclosure or in response to a subpoena or discovery request, but only if the litigant makes certain specific assurances. *See* 45 C.F.R. § 164.512(e). The Privacy Rule states that:

(1) Permitted disclosures: A covered entity[3] may disclose protected health information in the course of any judicial or administrative proceeding:

    (i)    In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

    (ii)    In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

---

[3] Under HIPAA, a "covered entity" includes, *inter alia*, any "health care provider who transmits any health information in electronic form in connection with a transaction covered by [HIPAA]" including but not limited to claims, benefit eligibility, and referral authorizations. *See* 45 C.F.R. § 160.103.

4

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information[4] that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i)–(ii). Accordingly, the Privacy Rule further provides that:

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

45 C.F.R. § 164.512(e)(1)(iv). If the foregoing requirements are not satisfied, the covered entity is prohibited[5] from disclosing the protected health information. *See* 45 CFR §§ 162.100, 164.512.

It is axiomatic that RIDOC is a "covered entity". RIDOC provides healthcare services, maintains health information, maintains an electronic medical record ("EMR") system, and

---

[4] The Privacy Rule also permits the covered entity, in lieu of the requesting party, to satisfy these requirements, by making reasonable efforts to ensure the individual is notified and obtaining a qualifying protective order. *See* 45 C.F.R. § 164.512(e)(1)(vi).

[5] Wrongful disclosures invite hefty consequences, which range from significant civil fines to misdemeanor or felony charges, depending on the nature of the disclosure. *See* 42 U.S.C.A. § 1320d-6. Penalties may be applied to the person making the wrongful disclosure and the person receiving the protected health information—including counsel. *See* 42 U.S.C.A. § 1320d-6(a)(2)–(3).

electronically transmits qualifying health care information. As covered entity subject to the HIPAA, RIDOC "must comply with the applicable requirements" and general provisions of HIPAA, including the Privacy Rule, by taking steps to prevent the unauthorized disclosure of protected health information. *See* 45 C.F.R. § 162.100.

The documents at issue, the Triage Meeting Minutes, were already produced to Plaintiff's counsel in January 2020, marked as "confidential" and redacted to the extent that the documents contained third-party protected health information and personally identifiable information.[6] *See Ex. A*. As further discussed, *infra* in Section II, the redacted information does not relate to Plaintiff's own health or treatment or Plaintiff's federal and state claims, but rather concerns discussions between ACI medical providers and security personnel at the Medium Security Facility about specific third-party patients' unique medical needs, treatment status, and other health, safety, and security concerns with respect to specific inmates. *See also* 45 C.F.R. § 164.512 (permitting disclosure to correctional institution officials to the extent necessary to address health and safety concerns within the institution). Not only is RIDOC prohibited under HIPAA from disclosing the redacted information to Plaintiff without a qualifying protective order, the information is simply not relevant to Plaintiff's federal and state law claims or RIDOC's defenses. *See Ex. A*.

Moreover, the redacted information also implicates safety and security issues, that are not the subject of the Plaintiff's federal or state claims. Specifically, the Triage Meeting Minutes

---

[6] In addition to third-party healthcare information, the redactions also include other confidential information not relevant to Plaintiff's claims, such as third-parties' names, third-parties' dates of birth, and third-parties' assigned inmate identification numbers, as well as confidential information relating to prison security. This information was redacted in compliance with Fed. R. Civ. P. 5.2, the Judicial Conference Policy on Privacy and Public Access to the Electronic Case Files, and DRI LR 202.

produced to Plaintiff's counsel contain confidential discussions regarding safety and security concerns expressed by physicians and correction officials, with respect to the treatments and health status of specific third-party inmates.[7] In addition to the third-party privacy rights implicated, the unique health and safety issues presented in a correctional setting further advises against disclosure. *Cf* 45 C.F.R. § 164.524(a)(1)(ii) (Granting correctional institutions deference to "deny, in whole or in part, an inmate's request to obtain a copy of protected health information, if obtaining such copy would jeopardize the health, safety, security, custody, or rehabilitation of the individual or of other inmates, or the safety of any officer, employee, or other person at the correctional institution or responsible for the transporting of the inmate.").

Even assuming *arguendo*, that the redacted information is tangentially relevant, which it is not, disclosure to Plaintiff, who is incarcerated, would infringe on the privacy rights of numerous other inmates who are not parties to these proceedings. Those individual inmates would have no opportunity to object to the disclosure and would be left without a remedy under HIPAA. *See Administracion De Seguros De Salud De Puerto Rico v. Triple-S Salud, Inc.*, 212 F. Supp. 3d 283, 286 (D.P.R. 2015) ("Federal law does not create the cause of action in this instance, for there is no private right of action under [ ] HIPAA….") (quoting *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)); *but cf also Washburn v. Rite Aid Corp.*, 695 A.2d 495, 499 (R.I. 1997) (recognizing a right-to-privacy claim under R.I. Gen. Laws § 9-1-28.1(a) for disclosing confidential heath records to an unauthorized person representing an adverse party in a pending litigation).

---

[7] The redacted information also contains additional confidential information, including but not limited to third-parties' names, third-parties' dates of birth, and third-parties' assigned inmate identification numbers. This information was redacted to protect the privacy rights of non-party inmates, in accordance with Fed. R. Civ. P. 5.2, the Judicial Conference Policy on Privacy and Public Access to the Electronic Case Files, and DRI LR 202. This information, likewise, is confidential in nature and not relevant to Plaintiff's federal and state law claims.

Given the significant third-party privacy rights implicated in the redacted protected health information, coupled with the unique health, safety, and security issues presented in a correctional setting, when as well as the irrelevancy to Plaintiff's federal and state law claims, the redacted information must be protected from disclosure. Therefore, RIDOC respectfully requests this Court enter an order protecting the redacted information from disclosure.

II. **THE DOCUMENTS PRODUCED TO PLAINTIFF IN REDACTED FORM CONTAIN CONFIDENTIAL HEALTHCARE INFORMATION AND PERSONALLY IDENTIFIABLE INFORMATION, WHICH RIDOC IS PROHIBITED FROM DISCLOSING WITHOUT SIGNED WRITTEN CONSENT OR BY ORDER OF THE COURT, PURSUANT TO R.I. GEN. LAWS § 5-37.3-6.1**

As a State healthcare provider and custodian of healthcare information, RIDOC is prohibited by RICHI from disclosing a patient's confidential healthcare information without express written authorization or a court order after a formal challenge. *See* R.I. Gen. Laws § 5-37.3-6.1(a) ("a healthcare provider or custodian of healthcare information may disclose confidential healthcare information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that: … disclosure is ordered by a court after challenge"). Notably, RICHI expressly prohibits RIDOC and other healthcare providers from agreeing to waive this or any requirement under the Act. *See* R.I. Gen. Laws § 5-37.3-10 ("Any agreement purporting to waive the provisions of this chapter is declared to be against public policy and void."). Because of the significant privacy interests at stake, RICHI imposes significant criminal and civil penalties for unauthorized disclosures. *See* R.I. Gen. Laws § 5-37.3-9 (providing for actual and exemplary damages, attorney's fees, criminal fines, and up to six months in prison); *see also Washburn v. Rite Aid Corp.*, 695 A.2d 495, 499–500 (R.I. 1997) (recognizing that an unauthorized disclosure of confidential healthcare information is a violation the patient's right to privacy and actionable

under R.I. Gen. Laws §9-1-28.1).

### A. The Court should apply RICHI, as a matter of comity, and protect the information redacted in the Triage Meeting Minutes from disclosure.

The Rhode Island Supreme Court has recognized that R.I. Gen. Laws § 5-37.3-6.1 "generally protects a person's confidential health-care records from being disclosed to unauthorized third parties unless the disclosure falls within one of the statutory exceptions." *Washburn v. Rite Aid Corp.*, 695 A.2d 495, 498 (R.I. 1997). This Federal Court has previously recognized and applied an analogous state medical-related privilege—the peer review privilege, R.I. Gen. Laws § 23-17-25. *See Wadensten v. S. Cty. Hosp.*, No. CV 04-326S, 2005 WL 8174560, at *1 (D.R.I. June 30, 2005) (Almond, MJ). In *Wadensten v. South County Hospital*, this Court applied the Rhode Island peer review privilege to protect medical committee proceedings from disclosure, where the Plaintiff's claims consisted of federal claims, brought under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), in addition to state tort claims. *See id*. at *2 ("[T]he practical issue before this Court is whether or not the privilege should give way in this case because it also involves two federal EMTALA claims against the Hospital."). The Court held the state peer review privilege, applied to all of the plaintiff's claims, "including as a matter of comity," the plaintiff's federal claims. *Id.* at *4. In so holding, the Court looked to Rule 501 of the Federal Rules of Evidence, noting that cases involving federal question and pendent state law claims are "governed by federal common law." *Id.* (quoting *Smith v. Alice Peck Day Mem. Hosp.*, 148 F.R.D. 51, 53 (D.N.H. 1993). Notably, the Court recognized the difficulty in reconciling the existence of a state privilege with absence of a federal common law privilege:

> In such cases, courts have reasoned that "[i]f a communication were privileged under state law but not under federal law, or if a communication were privileged under federal law but not under state law, it would be meaningless to hold the

9

> communication privileged for one set of claims but not for the other. Once confidentiality is broken, the basic purpose of the privilege is defeated."

*Id.* In its analysis, the Court looked to *In re Hampers*, where the First Circuit adopted a two-part test to determine when to apply a state evidentiary privilege as a matter of federal common law. *See id.* at *2 (citing *In re Hampers*, 651 F.2d 19, 22-23 (1st Cir. 1981)).

Part one of the Hampers test "requires a determination as to whether Rhode Island's courts would recognize such a privilege." *Wadensten*, 2005 WL 8174560, at *2 (citing *In re Hampers*, 651 F.2d at 23). Part two of the Hampers test requires the court to determine "whether the privilege is 'intrinsically meritorious", which consists of four sub-factors. *Id.* at *2. The Court must consider: (1) "whether the communications originate in a confidence that they will not be disclosed"; (2) "whether this 'element' of confidentiality is 'essential to the full and satisfactory maintenance of the relations between the parties'", looking to the public policy behind the state privilege; (3) "whether the relationship 'is a vital one that ought to be sedulously fostered'"; and, (4) whether "the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation." Wadensten, 2005 WL 8174560, at *2-3 (citing *In re Hampers*, 651 F.2d at 23).

Here, the Court should apply the protections afforded by RICHI to the redacted information contained in the Triage Meeting Minutes. Just as this Court recognized in *Wadensten*, the first Hamper factor is inherently satisfied, because Rhode Island has by statute recognized a privilege with respect to an individual's confidential health information. *See* R.I. Gen. Laws § 5-37.3-6.1(a); *Wadensten*, 2005 WL 8174560, at *2; *see also Washburn v. Rite Aid Corp.*, 695 A.2d 495, 499–500 (R.I. 1997) (recognizing the constitutionality of the privilege provided by RICHI with respect to third-party confidential health-care records). Likewise, the privilege provided by R.I. Gen. Laws § 5-37.3-6.1(a) satisfies the second prong of the Hamper

test because it is intrinsically meritorious, as well. *See In re Hampers*, 651 F.2d 19, 22-23 (1st Cir. 1981).

First, the redacted information in the Triage Meeting Minutes was created in a confidential setting between medical providers and correctional officials, for the purpose of discussing the unique medical conditions of specific third-party inmates in relation to institutional safety and security. Furthermore, the privilege has existed for decades, *see* R.I. Gen. Laws § 5-37.3-6.1(a), is well known throughout the medical community and has been the subject of review and comment by the Rhode Island Supreme Court. *See Washburn v. Rite Aid Corp.*, 695 A.2d 495, 499–500 (R.I. 1997). It is clear that the communications during the Triage Meetings, including the redacted information, were made with an expectation of confidentiality. *See Wadensten*, 2005 WL 8174560, at *2.

Second, this element of confidentiality is essential to the full and satisfactory maintenance of the relations between RIDOC medical providers, patients, and correctional officers. *See In re Hampers*, 651 F.2d at 22-23. In enacting RICHI, the Rhode Island General Assembly made it unequivocally clear that the purpose of the privilege "is to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual." R.I. Gen. Laws § 5-37.3-2. Moreover, this Court has already recognized that RICHI also "encourage[s] 'open discussions and candid self-analysis" in the medical community and necessarily implicates confidentiality as an element of the process. *See Wadensten*, 2005 WL 8174560, at *2-3. The redacted information in the Triage Meeting Minutes implicates the same expectation confidentiality as an essential element of R.I. Gen. Laws § 5-37.3-6.1(a). *See id.*

Third, the relationship between healthcare providers, correctional officers, and third-party inmates "is a vital one that ought to be sedulously fostered." *See In re Hampers*, 651 F.2d at 23.

(internal citation omitted). RICHI makes it clear that the purpose of the R.I. Gen. Laws § 5-37.3-6.1(a) is to maintain "the integrity of confidential health care information that relates to an individual"; a relationship fostering open and candid dialogue between medical professionals and correctional officers is vital to that purpose. *See Wadensten*, 2005 WL 8174560, at *3 (D.R.I. June 30, 2005).

Finally, the injury that would inure to the relationship by the disclosure of the redacted information would be much greater than the benefit thereby gained for the correct disposal of litigation. *See id.* In enacting RICHI, the Rhode Island General Assembly has balanced the competing interests—the interests served by the privilege versus disclosure—in favor of confidentiality and created a confidential privilege and uniform procedure for disclosure. *See* R.I. Gen. Laws § 5-37.3-6.1(a). The Rhode Island Supreme Court has likewise weighed "concluded that § 5–37.3–6.1 struck 'a permissible balance between a party's interest in maintaining the confidentiality of his or her personal health care records and the court's need to access relevant information.'" *Pastore v. Samson*, 900 A.2d 1067, 1085 (R.I. 2006). The interests served by the RICHI privilege and procedure are even more paramount in a correctional setting, such as here, where inmates already have little to no expectation of privacy—compelled disclosure of other individuals' confidential health information could diminish the trust between inmates and RIDOC medical providers and stifle candid dialogue between RIDOC medical providers and correctional officials that would otherwise improve the overall quality of healthcare and treatment at the ACI. This chilling effect would directly contradict Rhode Island's legislative purpose in enacting R.I. Gen. Laws § 5-37.3-6.1. The interests served in promoting trust between other inmates and medical providers and fostering candid discussions between medical providers and correctional officers to improve the quality of healthcare and safety at the ACI are much

stronger than the interests served by disclosure of third-party confidential health information for purposes of private litigation. As this Court has previously recognized, "if litigants could pierce the privilege in discovery simply by filing in this Court and pleading (subject to Fed. R. Civ. P. 11) an EMTALA or other federal claim, this Court is concerned that such a result would 'gut' the privilege." *Wadensten*, 2005 WL 8174560, at *3.

For these reasons, this Court should apply R.I. Gen. Laws § 5-37.3-6.1(a), as a matter of comity, and protect the information redacted in the Triage Meeting Minutes from disclosure.

### B. RICHI prohibits RIDOC from disclosing the redacted information

To the extent that RICHI applies, as discussed *supra*, RIDOC is prohibited by R.I. Gen. Laws § 5-37.3-6.1(a) from disclosing the information redacted in the Triage Meeting Minutes.

The Rhode Island Supreme Court has recognized that R.I. Gen. Laws § 5-37.3-6.1 "generally protects a person's confidential health-care records from being disclosed to unauthorized third parties unless the disclosure falls within one of the statutory exceptions." *Washburn v. Rite Aid Corp.*, 695 A.2d 495, 498 (R.I. 1997). Absent express authorization from the patient, the party seeking the disclosure must show the confidential healthcare information meets either one of the statutory exceptions or that "there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information *clearly outweighs* the privacy interest of the individual." *See* R.I. Gen. Laws § 5-37.3-6.1(d) (*emphasis added*). In determining "whether the need for information clearly outweighs the privacy of the individual," RICHI provides that "the court shall consider:"

    (1) The particular purpose for which the information was collected;
    (2) The individual's reasonable expectation of privacy in the information;
    (3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;
    (4) The effect of the disclosure on the individual's future health care;

    (5) The importance of the information to the lawsuit or proceeding; and
    (6) Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure.

*See* R.I. Gen. Laws § 5-37.3-6.1(e). To aid in the court's determination, RICHI expressly authorizes the court to perform an *in camera* review of the records. *See* R.I. Gen. Laws § 5-37.3-6.1(c). Unless the court specifically finds that the information in the records is relevant and the need for the information and clearly outweighs the privacy of the individual, the court must the request and protect the records from disclosure. *See* R.I. Gen. Laws § 5-37.3-6.1(d).

    Here, Plaintiff's purported need for the redacted information does not "clearly outweigh[] the privacy of the individual[s]" discussed in the Triage Meeting Minutes. The redacted information was collected in the course of Triage Meetings between medical providers to discuss the unique medical conditions of specific third-party inmates to improve the overall quality of healthcare at the Medium Security Facility and address potential safety and security issues that may be implicated. Additionally, because the redacted information contains confidential discussions between medical providers and correctional officials concerning the specific health issues of certain inmates with unique medical conditions, there is a strong expectation of privacy in the redacted information. *See* R.I. Gen. Laws § 5-37.3-2 (establishing "safeguards for maintaining the integrity of confidential health care information that relates to an individual."). Disclosure of the confidential health information of other inmates and patients—who are not parties to this litigation—would certainly embarrass, injure, and invade the privacy of those individuals. As discussed, *supra*, such a disclosure would have a chilling effect on the relationships between other inmates and RIDOC medical providers, stifle candid discussions between medical providers and correctional officials to improve the quality of healthcare and safety at the ACI. Disclosing the confidential healthcare information of several other inmates to

Plaintiff, who is still incarcerated, or to Plaintiff's counsel, could have a potentially widespread effect throughout the ACI and reduce inmates' willingness to seek medical attention and openness with RIDOC medical providers. Finally, the redacted information does not relate to Plaintiff's own health or treatment or Plaintiff's federal and state claims. The redacted information contained in the Triage Meeting Minutes concerns discussions between ACI medical providers and security personnel at the Medium Security Facility about other inmates' unique medical conditions, their treatment statuses, and other health, safety, and security concerns with respect to those inmates.

For these reasons, the need for the redacted information does not "clearly outweighs the privacy of the individual[s]" who are not parties to this litigation. Thus, R.I. Gen. Laws § 5-37.3-6.1 prohibits disclosure of the redacted information contained in the Triage Meeting Minutes.

## CONCLUSION

**WHEREFORE**, RIDOC respectfully requests that this Honorable Court enter an order protecting the information redacted in the Triage Meeting Minutes from disclosure.

Respectfully Submitted,

RIDOC DEFENDANTS,
By:

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Justin J. Sullivan*
Justin J. Sullivan (#9770)
Lauren E. Hill (#9830)
Special Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
150 South Main St. Providence, RI 02903

Tel: (401) 274-4400 | Fax: (401) 222-2995
Ext. 2007 | jjsullivan@riag.ri.gov
Ext. 2038 | lhill@riag.ri.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the within document has been electronically filed with the Court through the ECF system on Friday, May 29, 2020 and that it is available for viewing and downloading. I also caused a true and accurate copy of the within document to be served through the ECF system on the following:

*Counsel for Plaintiff*
Chloe A. Davis, Esq.
chloe.a.davis@gmail.com

*Counsel for Defendants Fred Vohr and Jennifer Clarke*
Jeffrey G. Latham, Esq.
jlatham@tatelawri.com
Alexandra C. Curran, Esq.
acurran@tatelawri.com

 */s/Justin J. Sullivan*