**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STEPHEN MELISE, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | C.A. No.: 1:17-cv-00490-MSM-PAS |
| | : | |
| COYNE-FAGUE, et al. | : | |
|     Defendants | : | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS AND OBJECTION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

**I.     INTRODCUTION**

Plaintiff urges this Court to deny Defendants' Objection to Plaintiff's Motion to Compel (ECF No. 65) and Defendants' Motion for Protective Order (ECF No. 66) and instead to grant Plaintiff's Motion to Compel (ECF No. 64) and order Defendants to produce the Triage Meeting Minutes, subject only to limited redactions for personally identifiable information. Plaintiff submits that he is entitled to such relief because Defendants' arguments in both their objection and motion are identical, frivolous, and without substantial justification. Defendants fail to address Plaintiff's true request for *"de-identified"* records and ask this Court to adopt a baseless and novel privilege to justify their refusal to produce relevant and discoverable documents. As such, Plaintiff's Motion should be granted to compel production of the requested documents and sanction Defendants for making substantially unjustified objections.

**II.     ARGUMENT**

    **A. Defendants' Baseless Claim that Plaintiff is Requesting Unredacted Medical Records Contradicts Plaintiff's Clear Request for "De-Identified" Records and Their Refusal to Comply is Unjustified Under HIPAA.**

The primary response of Defendants to Plaintiff's Motion to Compel has been to make their own Motion for a Protective Order based on protections under HIPAA and a false assertion

that Plaintiff is requesting unredacted medical records in the form of Triage Meetings Minutes. This is a blatant strawman argument made in bad faith. Plaintiff has made explicit and clear repeatedly to Defendants, including in a conference with the Defendants and this Court, directly to Defendants in attempting to avoid this motion to compel, and in the memorandum accompanying that motion[1], that what he is seeking is production of the "de-identified" Triage Meeting Minutes through the redaction of personal identifying information in compliance with HIPAA. The Privacy Rule, as the regulations implementing HIPAA are called, expressly exempts from the application of the disclosure requirements any "de-identified" health information. 45 C.F.R. § 164.502 ("The requirements of this subpart do not apply to information that has been de-identified in accordance with the applicable requirements of § 164.514"). Plaintiff has been clear, consistent, and forceful in explaining that he wants the records in question supplied pursuant to this "de-identification" process, not *un*redacted records. Defendants however refuse to provide records limited to these redactions and instead ask this Court to enter an order protecting the records from any further disclosure based on the privacy concerns of individuals' confidential healthcare information.

Defendants attempt to misconstrue Plaintiff's request as asking for completely unredacted records is either shockingly incompetent or simply an outright and willful lie. Plaintiff can only assume that Defendants are attempting to obfuscate their bad-faith refusal to engage in the discovery process by invoking non-applicable healthcare confidentiality rules. In doing so they have made up a straw-man request to argue against rather than address Plaintiff's true and clearly valid request that must be complied with under the applicable statutes, regulations, and caselaw,

---

[1] For example, Plaintiff explicitly moved this Court in the conclusion to his memorandum of law accompanying his Motion to Compel to *"order Defendants to produce the Triage Meeting Minutes, subject only to limited redactions for personally identifiable information."* Plaintiff's Memorandum in Support of his Motion to Compel and Request for Sanctions (ECF No. 64-1) (emphasis added).

as outlined in great detail to Defendants in Plaintiff's Memorandum in Support of his Motion to Compel and Request for Sanctions (Plaintiff's Memo) (ECF No. 64-1). *See* Plaintiff's Memo at 13-15; *see e.g. Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 933 (7th Cir. 2004) ("In passing HIPPA, Congress recognized a privacy interest only in 'individually identifiable medical records' and not redacted medical records, and HIPPA preempts state law in this regard. The 'de-identification' (redaction) of all identifying information from the medical records and the extensive protective order in place also eliminates any privacy interest in the records."). Ignoring this clear law, the actual request made, and this Court's prior ruling on essentially the same issue, to prevent disclosure of the requested documents, Defendants have engaged in bad-faith and dilatory tactics and have wasted copious amounts of Plaintiff's time, Plaintiff's counsel's time, and this Court's time.

Defendants' failure to make a relevant and meritorious argument is further evidenced by the fact that Defendants have apparently entirely abandoned the argument made to this Court during our telephone conference on May 11, 2020, when Defendants claimed that they could not produce the "de-identified" records because two of the inmates referenced in the redacted portions of the records had "unique" medical conditions that could allow Plaintiff to identify the individuals. No mention is now made about whether the records could or could not be "de-identified." Instead, Defendants simply claim that they cannot release the records at all because they contain confidential healthcare information. Plaintiff can only assume that, by abandoning that claim made to this Court, Defendants realized that the claim had no basis in fact, thus proving that Defendants never had a legitimate reason for refusing to produce the "de-identified" records without the need for Court intervention.

**B. Defendants Again Cite to The Rhode Island Confidentiality Act, Which is Still, as this Court, the Rhode Island Supreme Court, and Plaintiff Have All Made Clear, Inapplicable.**

Defendants continue to attempt to invoke state law that is inapplicable under black-letter federal law, this Court's own ruling in this case on Plaintiff's last motion to compel, and has, in the interpretation Defendants pressed, been ruled unconstitutional by the Rhode Island Supreme Court repeatedly. As Defendants know, it is blackletter law and a basic tenant of Federal court practice that "[f]ederal common law governs claims of privilege in United States courts where jurisdiction is based on a federal question." *Marcum v. Scioto Cty., Ohio*, No. 1:10-CV-790, 2012 WL 2018523, at *4 (S.D. Ohio June 5, 2012) (citing Fed.R.Evid. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372–73 (6th Cir. 1992)). "Federal courts are not permitted to apply state privilege law, regardless of the importance of implicated policy concerns; rather, they are obligated to apply federal privilege law." *Id.*

Defendants clearly do acknowledge this legal reality because they have attempted to make a baseless request for this Court to make an exception to the rule and adopt a nonexistent privilege, which, as explained below, should be rejected.

**C. This Court Should Reject Defendants' Request that this Court to Fashion a Novel Privilege for Security Staff to Shield Conversations Wherein They Reject Medical Orders From Medical Staff, Generally an Illegal Action, From Scrutiny Based On A Chilling Perversion of the Peer-Review Privilege, which Defendants Have Already Waived.**

Beyond the simple misapplication of the R.I. Confidentiality Act, Defendants are additionally asking this Court to adopt "as a matter of comity" an entirely novel privilege that has no basis in law or fact, which this Court should reject. Initially, Defendants appear to frame their request as merely an application of the privilege created by the Rhode Island Confidentiality Act. However, a closer reading of Defendants' argument reveals that the

privileged communication Defendants are seeking to enforce is that between medical providers and correctional officers, not between medical professionals and patients or even medical professionals and other medical professionals. No such privilege exists and if it did, then Defendants have already waived such privilege by releasing even the redacted Triage Meeting Minutes.

Defendants cite to this Court's decision in *Wadensten v. S. Cty. Hosp.*, wherein the peer-review privilege was adopted in a case where "[t]wenty out of the twenty-two counts arise under Rhode Island common law alleging tort claims such as negligence and lack of informed consent" and two counts under the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). No. CV 04-326S, 2005 WL 8174560, at *1 (D.R.I. June 30, 2005) (Almond, MJ). In applying the test laid out in *In re Hampers*, 651 F.2d 19, 22-23 (1st Cir. 1981), this Court rightly held that the case was "dominated by Rhode Island common law tort claims" and applied the Rhode Island recognized peer-review privilege. *Waldensten*, 2005 WL 8174560 at *2. That case is inapplicable and Defendants' argument unavailing and disingenuous here for three distinct and compelling reasons. First, this case is quite simply and obviously not dominated by state law tort claims. While there is a state law tort claim at issue, Federal questions around constitutional rights, § 1983, and the ADA are dominant in this case.

Second, this novel privilege does not exist in Rhode Island State Law, would be rejected by Rhode Island Courts if asserted there, and has no business in a Federal Court. As an initial matter, Defendants appear to conflate confidentiality with privilege, arguing that information made confidential by statute is tantamount to a privilege that protects information from disclosure even in the judicial discovery process. *See e.g. Branzburg v. Hayes*, 408 U.S. 665, 682, (1972) ("'In general, then, the mere fact that a communication was made in express

confidence, or in the implied confidence of a confidential relation, does not create a privilege.' '. . . No pledge of privacy nor oath of secrecy can avail against demand for the truth in a court of justice.' 8 J. Wigmore, Evidence s 2286 (McNaughton rev. 1961)."). Indeed, the distinction between attorney-client privilege, and the attorney's duty of confidentiality are basic legal tenants that every lawyer is expected to recognize. Although the Rhode Island Supreme Court recognized that the R.I. General Assembly attempted to create a privilege in enacting the R.I. Confidentiality Act, it clearly and repeatedly held that no such privilege would be recognized in R.I. State Courts when records were relevant to the proceedings, particularly where those records were de-identified.

The Rhode Island Supreme Court declared, "The Confidentiality of Health Care Information Act is not a shield behind which a medical provider may hide to avoid liability for medical negligence or for any other purpose." *Pastore v. Samson*, 900 A.2d 1067, 1078 (R.I. 2006) (citing *In re Grand Jury Investigation*, 441 A.2d 525, 528 (R.I.1982)). "This Court has declared that privileges do not aid the quest for truth, the core function of the adversary process, … and, therefore, privileges should narrowly be construed." *Id.* (citing *State v. Almonte*, 644 A.2d 295 (R.I.1994) and *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 189 (1990) ("We are especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.")). Thus, under Rhode Island law, there is no privilege to de-identified confidential healthcare information in judicial proceedings, the information is required to go through the same relevancy analysis as any other documentary discovery, which can

include marking documents as confidential to limit their use and exposure throughout litigation proceedings.[2]

Yet Defendants go a step further in asking this Court to adopt an amalgamated perversion of the peer-review privilege and an unconstitutional reading of an inapplicable confidentially statute to create a new state-law privilege—for communications between medical personnel and correctional officers—which does not exist, in the name of comity. A warden or other security officer, speaking with medical providers is well outside of the Rhode Island peer-review privilege, which is, as noted repeatedly by Plaintiff, "to be strictly construed." *Pastore*, 900 A.2d at 1078 (citing *Moretti v. Lowe*, 592 A.2d 855, 857 (R.I. 1991). The Rhode Island Supreme Court went on to explain that "[n]ot only are the statutes at issue in this case [creating the peer-review privilege] in derogation of the common law, but also they create a limitation on discovery that often is viewed skeptically in the law. Privileges, by their nature, 'shut out the light' on 'the ascertainment of the truth.'" *Id.* (quoting *Almonte*, 644 A.2d at 298).

Indeed, even on the face of the statute the reach by Defendants is absurd, the peer-review privilege only applies in the case where a peer-review board, as defined by statute, is involved. R.I. Gen. Laws. § 5–37–1(11)(i) defines the function of a peer-review board as follows:

> to evaluate and improve the *quality of health care* rendered by providers of health care service or to determine that health care services rendered were professionally indicated *or were performed in compliance with the applicable standard of care* or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area.

*Pastore*, 900 A.2d at 1079 (emphasis added by Court). In this case, Plaintiff has requested records involving conversations wherein medical providers are attempting to get security

---

[2] Defendants argument that the RICHI imposes a higher burden on Plaintiffs for obtaining the requested documents, that he must show that "the need for the information clearly outweighs the privacy interest of the individual," is blatantly wrong. As Plaintiff has repeatedly demonstrated, there is no privacy interest at issue where the records have been de-identified.

officials to agree to carry out medical decisions that have already been made rather than continuing to reject those medical orders on security grounds without working to modifying them.  The conduct of the security officials in this case is not only generally illegal under the 8th Amendment and the ADA, it is clearly not engaged in the process of evaluating and improving the quality of health care rendered or determining that care rendered was performed in compliance with the applicable standard of care.   The purpose of these triage meetings is at best to reconcile medical and security needs, something well outside the strictly construed language of the statue above.

The narrowness with which the Rhode Island Supreme Court construes that privilege is further guidance here.  In *Pastore* the Court rejected an assertion of the privilege in the context of a hospital review committee because:

> [t]he hospital fails to point us to the portion of the transcript that discusses Dr. Samson's possible deviation from an appropriate standard of medical care.  Instead, the hospital's argument related to the transcript is that if a committee meeting pertains in any way to whether a doctor should be credentialed, the meeting constitutes a proceeding before a peer-review board because it implicates health and safety, and thus the transcript of that meeting should be found to be privileged.  In light of our strict construction of the statutes creating the peer-review privilege, we are reluctant to employ such a broad reading of the definition of a peer-review board.

900 A.2d at 1080.  That this was outside the scope should make it abundantly clear that the Defendants attempted stretch of the privilege into a novel privilege involving security officials conferring with medical professionals about their orders is not only a bridge too far, it is not even on the horizon. Thus, this Court should reject the adoption of a novel privilege because the State of Rhode Island has not and would not adopt such a privilege so no comity concerns are at issue.

Third, basic public policy and justice concerns suggest that such a privilege would be abused to prevent the duty of this Court to seek justice on the merits for no articulated or

imaginable benefit. Defendants argue that "this Court has already recognized that RICHI also 'encourage[s] 'open discussions and candid self-analysis' in the medical community and necessarily implicates confidentiality as an element of the process[,]" and the Triage Meeting Minutes implicate the same expectation of confidentiality. Defendants' Memorandum of Law in Support of RIDOC's Motion for a Protective Order (quoting *Wadensten*, 2005 WL 8174560, at *2-3). However, this Court was clearly and exclusively referring to the peer-review privilege, which "ha[d] been in existence for over twenty years and is well known in the medical community." *Wadensten*, 2005 WL 8174560, at *2. No such privilege has ever been contemplated by medical providers advocating for their patients to security personnel and there could not possibly be any chilling effect on such conversations in a case that is intended to support those medical providers in their mission of obtaining better medical care in a security context. Furthermore, Defendants' claim that the disclosure of such records would have a chilling effect on the information provided *to* medical providers from inmates is particularly baffling where, as here, any personally identifiable information would be redacted, and no harm or breach of privacy would befall any individual inmate.

Finally, even if the Court were to adopt such a preposterous never-before-seen privilege, the asserted privilege has already been waived and is therefore moot. Defendants have waived the privilege by providing the documents at issue. The only issue at hand here is whether they are permitted to redact larger sections than allowed by the "de-identification" process required by HIPAA and the Rhode Island Confidentiality Act, which Plaintiff has demonstrated they cannot. This privilege argument is an audacious but baseless last-ditch attempt to further stymie legitimate discovery and this Court should reject it out of hand for the groundless and arrogant claim that it is.

### D. Sanctions Are Appropriate.

Defendants' arguments for objecting to Plaintiff's Motion to Compel and filing a separate Motion for Protective Order to prevent Plaintiff from obtaining relevant discovery documents are irrelevant, baseless, and clearly presented for the purpose of obstructing, delaying, and increasing the cost of litigation against Defendants. Defendants persisted in frivolously arguing that HIPPA and the RI Confidentiality Act prohibit disclosure of relevant documents after this Court already ruled on identical arguments. That Defendants have the gall to continue to press this argument, which is foreclosed by federal black letter law, this very Court's prior ruling, and the Rhode Island Supreme Court, is shocking and it makes a mockery of this proceeding, and their own obligations under both the Federal Rules of Civil Procedure and the Rules of Professional Conduct.

Furthermore, Defendants have additionally demonstrated an utter lack of merit to their objections by abandoning arguments made to this Court in our previously held telephone conference—that the documents referred to inmates with unique medical conditions—and failing to even address Plaintiff's actual request for *"de-identified"* documents. Their failure to address these issues in either Defendants' objection or their Motion for Protective Order can only be interpreted as an admission that their claim was made without merit and in bad-faith, and that their objections to disclosure were therefore groundless. Such tactics are clearly "dilatory and abusive" and should be deterred by this Court pursuant to Rule 11 or else they will most certainly be repeated by Defendants. *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

Additionally, in Defendants' objection to Plaintiff's request for sanctions, they fail to respond to Plaintiff's request under Rule 37, which goes specifically to Defendants conduct in refusing to produce discovery without substantial justification, as is the case here. Additionally, Defendant cannot rely on the fact that it filed a Motion for Protective Order because it only did

so after Plaintiff filed his Motion to Compel. *Mantell v. Chassman*, 512 F. App'x 21, 24 (2d Cir. 2013) ("a court must order a sanction under Rule 37(a)(5) if it is forced to grant a motion to compel discovery or the requested discovery is provided after such a motion was filed."). The fact of the matter is that Defendants have never engaged in a good-faith discussion about discovery disputes and instead invited Plaintiff to file a motion to compel before ever considering their own motion for protective order.

Plaintiff is cognizant that the courts do not enjoy engaging in unnecessary discovery disputes when there are numerous pending meritorious claims that need to be addressed. Plaintiff also dislikes having to repeatedly come before this Court to resolve meritless and petty discovery disputes. That is why Plaintiff is asking this Court, in order to prevent such abusive tactics and the persistent and time-consuming need to seek this Court's intervention, to reiterate that Defendants must follow well established discovery rules rather than constantly making baseless objections and sanction Defendants for repeatedly engaging in such bad-faith tactics.

For these reasons, Plaintiff requests that this Court order Defendant DOC to pay Plaintiff's counsel fees for the time required in pursuing judicial intervention in this dispute, including the telephonic conference, Plaintiff's motion to compel, and objection to Defendants' Motion for Protective Order, and issue a written decision that might aid in resolving future disputes without the necessity of judicial intervention.

### III. CONCLUSION

### I. Conclusion

WHEREFORE, Plaintiff moves that this Court grant his Motion to Compel, Deny Defendants' Motion for a Protective Order, and issue an Order granting the following relief:

1. Overrule Defendants' objections, deny Defendants' Motion for Protective Order, grant the previously filed Motion in the form and manner requested in the memorandum filed simultaneously therewith, and order Defendants to produce the Triage Meeting Minutes, subject only to limited redactions for personally identifiable information, within 7 days;

2. That, under the circumstances, Defendants be ordered to pay the counsel fees and costs of seeking a judicial conference, bringing the Motion to Compel at issue here, and responding both to Defendants' objection thereto and objecting to Defendants Motion for a Protective Order as a sanction for Defendants' willful and intentional refusal to comply with discovery requests and requiring Plaintiff to respond to numerous frivolous arguments;

3. Issue a written decision that will assist Plaintiff in resolving future discovery disputes with Defendants and other parties to reduce the unnecessary involvement of this Court; and,

4. Such other and further relief as this Court deems just and proper.

                                           Plaintiff,
                                           By his attorney,

**Dated: June 5, 2020**                  /s/ **Chloe A. Davis**_____
                                           **Chloe A. Davis, Esq**. Bar No. 9334
                                           Sinapi Law Associates, Ltd.
                                           2374 Post Road, Suite 201
                                           Warwick, RI 02886
                                           Phone: (401) 739-9690
                                           Email cad@sinapilaw.com

## **CERTIFICATION**

| | |
|---|---|
| Jeffrey G. Latham, Esquire | Justin J. Sullivan, Esquire |
| Christine A. Stowell, Esquire | Lauren E. Hill, Esquire |
| Tate & Latham | Department of the Attorney General |
| 40 Westminster Street, Suite 350 | 150 South Main Street |
| Providence, RI 02903 | Providence, RI 02903 |
| (401) 421-7400 | 401-274-4400 |
| jlatham@tatelawri.com | jjsullivan@riag.ri.gov |
| cstowell@tatelawri.com | lhill@riag.gov |

I hereby certify that on **June 5, 2020**, a true copy of the within was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System. Service on the counsel of record listed above has been effectuated by electronic means.

                                               /s/ **Chloe A. Davis**