# EXHIBIT X

**From:** Desousarosa, Sergio (DOC)
**Sent:** Thursday, June 05, 2014 9:25 AM
**To:** Warren, Marianne (DOC)
**Cc:** Diniz, Rui (DOC); McCaughey, Kerri (DOC); Vohr, Fred (DOC); Weeden, James (DOC)
**Subject:** RE:

Marianne,
This matter has been discussed various times in past and is now getting very old.  We follow the department policy in urinalysis collection.  The policy allows for inmates, who have "shy bladder", and other similar medical issues, to be given certain accommodations.  In discussions with Dr. Vohr, we have determined that inmate ███████ has been given those accommodations as outlined in department policy, and needs no additional special treatment.

As a result of all the previous discussions and final determination which has already been made, I consider this matter closed.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections
John J. Moran Medium Security
PO Box 8274
Cranston, RI 02920
E-mail: sergio.desousarosa@doc.ri.gov
Telephone: (401) 462-3700/3701
Fax: (401) 462-1408
"Certare Petere Reperire Neque Cedere"

---

**From:** Diniz, Rui (DOC)
**Sent:** Thursday, June 05, 2014 8:49 AM
**To:** Desousarosa, Sergio (DOC)
**Subject:** FW:

FYI

> Rui Diniz
> Deputy Warden
> J.J. Moran Medium Security
> R. I. Dept. of Corrections
> 1-401-462-2515
> rui.diniz@doc.ri.gov

"When you kill time, remember that it has no resurrection."
A.W. Tozer

---

**From:** Warren, Marianne (DOC)
**Sent:** Wednesday, June 04, 2014 11:20 AM
**To:** Diniz, Rui (DOC)
**Subject:**

RIDOCRFPA30002

Deputy Warden;

   Regarding ███████████ there is a documented diagnosis by Urologist of "benign prostastic hypertrophy" and "LUTS" (lower urinary tract symptoms). Both conditions require medication which he is taking to promote urination. He also has a documention of overactive bladder and anxiousness associated with voiding. The Urologist recommended an additional medication which Dr. Vohr is considering, and perhaps self-cathing which will not be possible at all. If he can have have special accomodations when he is asked to produce a urine it would be reasonable, and could eliminate the need for any extra medication or catheter. I do not know if there is such a policy here at Medium, but if there is this pt. is appropriate for it.

        Thank you, marianne

**From:** Desousarosa, Sergio (DOC)
**Sent:** Friday, June 20, 2014 12:58 PM
**To:** Warren, Marianne (DOC)
**Cc:** Diniz, Rui (DOC); McCaughey, Kerri (DOC)
**Subject:** RE: Dr. Melnick

Marianne,
The single cell request is not an option here because we have a very limited number of those cells, and I have to be able to house all the inmates equally.  As for the shy bladder, the staff will follow the policy when collecting urine samples. If he identifies that he has a "shy bladder" issue and cannot produce a urine sample in the standard process, then he will be secured in a committing room cell, given additional time and water to produce as the policy calls for.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections
John J. Moran Medium Security
PO Box 8274
Cranston, RI 02920
E-mail: sergio.desousarosa@doc.ri.gov
Telephone: (401) 462-3700/3701
Fax: (401) 462-1408
"Certare Petere Reperire Neque Cedere"

---

**From:** Warren, Marianne (DOC)
**Sent:** Friday, June 20, 2014 12:45 PM
**To:** Desousarosa, Sergio (DOC)
**Subject:** RE: Dr. Melnick

Deputy warden;
    In reference to the previous patient (███████) I am confronted with his c/o shy bladder. He tells me that his anxiety medications, which are necessary cause him to have a delay urinating. I did look everything up and yes it is possible that his vistaril can cause this symptom, rarely.  And so out of respect for the DOC Policy and the care of this patient I do endorse giving him more time and water to produce a urine sample. Thank you, marianne

---

**From:** Desousarosa, Sergio (DOC)
**Sent:** Monday, June 16, 2014 12:21 PM
**To:** Warren, Marianne (DOC)
**Cc:** Vohr, Fred (DOC); Diniz, Rui (DOC); McCaughey, Kerri (DOC)
**Subject:** RE: Dr. Melnick

Thank you Marianne.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections

RIDOCRFPA30004

John J. Moran Medium Security

PO Box 8274

Cranston, RI 02920

E-mail: sergio.desousarosa@doc.ri.gov

Telephone: (401) 462-3700/3701

Fax: (401) 462-1408

"Certare Petere Reperire Neque Cedere"

---

**From:** Warren, Marianne (DOC)
**Sent:** Monday, June 16, 2014 11:56 AM
**To:** Desousarosa, Sergio (DOC)
**Cc:** Vohr, Fred (DOC)
**Subject:** RE: Dr. Melnick

Hello;

    To be clear I have never refused to stop neurontin. The fact is that Dr. Rogers was concerned about this pt. abusing the drug. I went right to the nurses and they could not confirm that, so I did not stop the medication at that time. However last week I was informed that he was in fact abusing the medication so I stopped it.

                                                            Respectfully, marianne

---

**From:** Desousarosa, Sergio (DOC)
**Sent:** Monday, June 16, 2014 11:19 AM
**To:** Vohr, Fred (DOC); Warren, Marianne (DOC)
**Cc:** Melnick, Simon (DOC); Diniz, Rui (DOC); McCaughey, Kerri (DOC)
**Subject:** RE: Dr. Melnick

Dr. Vohr,

Is there another substitute pain medication that can be prescribed which provides the same medicinal purposes but is not a security concern?  If not, can the Gabapentin be crushed?  If neither option is possible,  I will have the inmate frisk-searched every time he is given his meds.

Sergio DeSousarosa

Deputy Assistant Director / Warden

Rhode Island Department of Corrections

John J. Moran Medium Security

PO Box 8274

Cranston, RI 02920

E-mail: sergio.desousarosa@doc.ri.gov

Telephone: (401) 462-3700/3701

Fax: (401) 462-1408

"Certare Petere Reperire Neque Cedere"

---

**From:** Vohr, Fred (DOC)
**Sent:** Monday, June 16, 2014 11:12 AM
**To:** Warren, Marianne (DOC)
**Cc:** Desousarosa, Sergio (DOC)
**Subject:** RE: Dr. Melnick

RIDOCRFPA30005

Please arrange to have IM ▮ observed for each dose

Fred Vohr MD
Medical Program Director
Rhode Island Department of Corrections
401 462 1115
FAX  401 462 2000

---

**From:** Paquette, Maggie (DOC)
**Sent:** Friday, June 13, 2014 10:38 AM
**To:** Vohr, Fred (DOC)
**Subject:** Dr. Melnick

Dr. Melnick called as he was asked by Medium to stop the Gabapentin order on ▮▮▮. ▮ was transferred to ISC for chest pain. He was also found hoarding and selling Gabapentin 7 times. Dr. Melnick did not feel comfortable and called Marianne who is prescribing it, Marianne refuses to stop his pain medication. Maybe they should be crushed. Dr. Melnick is not getting involved as he does not want a lawsuit as ▮ is not his patient.

Maggie

*Have a wonderful day! : )*

*Maggie Paquette, Administrative Officer*
*Office of the Medical Program Director*
*Rhode Island Department of Corrections*
*39 Howard Avenue*
*Cranston, RI 02920*
*phone: 401.462.2678*
*fax: 401.462.2000*
*e-mail: maggie.paquette@doc.ri.gov*

WARDEN S.D.                NP WARREN

[REDACTED]

K.O.P. - BOOKED 1 YR AGO; TAKEN OFF K.O.P.

MONDAY - MEDICATION NEEDED TO PRESCRIBE TO HIM.

→ TALKED TO GORDON (MADE IT SEEM RECENT).

→ GORDON → NEVER TALKED TO MARIANNE ABOUT MEDICATIONS.
    └ CAN'T GO BACK ON K.O.P.'S
        - DIRECT ORDER BY DR. VOEUR; NO CONTACT W/ [REDACTED]

└ SHE CALLED INMATE [REDACTED] IN VIOLATION OF DR. VOEUR'S

ORDER.

RIDOCRFPA30007

**From:** Desousarosa, Sergio (DOC)
**Sent:** Monday, July 07, 2014 10:16 AM
**To:** Warren, Marianne (DOC)
**Cc:** Diniz, Rui (DOC); McCaughey, Kerri (DOC); Vohr, Fred (DOC); Marocco, Joseph (DOC); Kettle, Matthew (DOC); Weeden, James (DOC)
**Subject:** RE: Inmate ██████████████

Marianne,

I have to ensure that everyone in the facility is safe; both the inmates and staff. I have security enforcing established rules and procedures with regards to medical and dietary needs, but I am getting conflicting issues within the medical staff. Dr. Vohr has stated that kosher meals cannot be used for dietary purposes; yet, staff within medical are putting in dietary requests for these kosher meals. Medical staff need to get on the same sheet of music. Security staff are the ones who have to deal with the brunt of inmate unease when they see that certain inmates are given special treatment over them.

Specifically with regards to inmate ██████, I cannot comprehend how you gave him another dietary request that was rescinded by me without first speaking with me. You may not know this, but all Special Needs Requests and Dietary Meal Requests get processed through my office for final approval before they are implemented. Additionally, if you did not make the remark that inmate ███████ says you did, then I apologize and I will have ████████ "booked" for lying.

I have dealt with three different medical issues with two different inmates over the last week, where the established process for them getting appropriate care was mishandled, and at least two of the issues come from your handling of their cases. I do not like overturning medical decisions and I weigh heavily on the medical information to finalize all the requests. I also take into account the inmates history, and I consult with medical staff when I think the inmate is being manipulative. I understand my decision can weigh heavily on the inmate's medical care, but I also have to look at the long-term effects and the associated impact.

In my opinion, there needs to be better communication amongst the medical staff and between medical and this office. There are monthly triage meeting at this facility. This forum is a good means for discussing inmates who are medically needy. There also needs to be more consistency with medical protocols with regards to ordering special needs requests. If the Medical Director has determined that a specific process is to be implemented, I can't understand why staff under his direction, ignore his decisions.

In short, I will follow whatever protocols Dr. Vohr in place and current established protocols for inmates' special needs. There just has to be communication and consistency so that all inmates are afforded equal care.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections

RIDOCRFPA30008

John J. Moran Medium Security
PO Box 8274
Cranston, RI 02920
E-mail: sergio.desousarosa@doc.ri.gov
Telephone: (401) 462-3700/3701
Fax: (401) 462-1408
"Certare Petere Reperire Neque Cedere"

---

**From:** Warren, Marianne (DOC)
**Sent:** Monday, July 07, 2014 9:32 AM
**To:** Desousarosa, Sergio (DOC)
**Subject:** RE: Inmate ██████████

Sergio;
      I respect your decision to rescind the diet and I understand the reason. Pleas understand that the kosher diets were already in place when I started my position here 2 years ago so it is necessary that I look into such matters carefully. I do have a patient on a kosher tray, and that was the recommendation of the Cardiologist to manage his resistant high cholesterol and Coronary Artery Disease. I detect frustration in the context of your e-mails; I am doing my best to meet the health standards within the prison setting. Maybe it is best if we meet in person,  marianne

---

**From:** Desousarosa, Sergio (DOC)
**Sent:** Thursday, July 03, 2014 1:26 PM
**To:** Warren, Marianne (DOC)
**Cc:** Diniz, Rui (DOC); McCaughey, Kerri (DOC); Vohr, Fred (DOC)
**Subject:** Inmate ████████████

Marianne,
Inmate ████████'s diet request for a kosher meal was rescinded by me last week.  This was decided after a conversation with Dr. Vohr in which he stated that medical staff cannot order kosher meals as a diet request.  If there are specific allergies or diet concerns, then a specific diet request is appropiate (i.e. no salt, fish allergy, etc.)  Kosher meals are only for religious needs.

Today, I was informed that you submitted another diet request for inmate ████████ AND you told the inmate that I don't have the authority to rescind such an order.  If this is true, I have some serious concerns about your statement and actions discrediting my authority. You should have spoken to me first before just undermining my authority.

As a result I have AGAIN rescinded your diet request for a kosher meal for inmate ████████.  If you feel he has some **specific** dietary issues that are cause for a **specific** dietary requirement, then you can submit that diet request. Kosher meals do not meet dietary standards; they are for religious needs only.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections
John J. Moran Medium Security

RIDOCRFPA30009

PO Box 8274
Cranston, RI 02920
E-mail: sergio.desousarosa@doc.ri.gov
Telephone: (401) 462-3700/3701
Fax: (401) 462-1408
"Certare Petere Reperire Neque Cedere"

RIDOCRFPA30010



## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
## JOHN J. MORAN MEDIUM SECURITY

Memorandum to:  Warden Desousarosa

Department:  John J. Moran Medium Security

From:  Mary Lynch, Executive Assistant

Department:  John J. Moran Medium Security

Date:  July 29, 2014

Subject:  Witness to Phone Conversation

On Tuesday, July 29, 2014, I was in your office where I witnessed a phone call to Physician Assistant Marianne Warren. Deputy McCaughey had come in to discuss a special needs form from PA Warren requesting that the facility move a mirror and a shelf for an inmate.  You decided to contact PA Warren in Deputy McCaughey's presence to discuss this request.

You called PA Warren to explain how this request could not be done. The mirrors and shelves are bolted to the walls to ensure they cannot be removed by an inmate for security reasons.  During your conversation with Mrs. Warren she continuously was interrupting you. I know this due to the fact you could not get out a full sentence without stopping.  At no time were you disrespectful, rude, or used a threatening tone.  You were trying to explain to PA Warren security comes first and maybe this inmate and others are trying to manipulate her.  Our office has been inundated with special needs forms from PA Warren that are not conducive to this environment.  Deputy McCaughey discussed these special needs request regarding bottom bunks and single cells at length at the recent Triage Meeting that was held July 16, 2014.  (see Triage Meeting minutes dated 7-16-14)

During this conversation, in my opinion, you were very patient with PA Warren trying to educate her about this environment and you tried to provide her with information regarding protocols while working inside a facility.  You attempted to redirect her back to the subject of security being foremost, but she did not want to hear it.  I feel her interruptions during this conversation were very disrespectful towards you.

If I can be of any further assistance feel free to contact me.

RIDOCRFPA30011

**From:** Desousarosa, Sergio (DOC)
**Sent:** Tuesday, July 29, 2014 11:48 AM
**To:** Vohr, Fred (DOC)
**Cc:** Weeden, James (DOC); Weiner, Barry (DOC); Marocco, Joseph (DOC); McCaughey, Kerri (DOC); Diniz, Rui (DOC)
**Subject:** Request to Have N.P. Marianne Warren Transferred

**Importance:** High

Dr. Vohr,

Today I received a special needs form from Nurse Practitioner Marianne Warren for inmate ███ ██████ to have the mirror and shelf in his cell lowered.  I couldn't believe what I was reading!  I called her and asked why she would put in a special needs request such as this.  I told her that we just can't move these items in the cell.  Marianne replied that the inmate told her that they could move them.  I told her that the inmate is saying this for his own benefit.  He is being manipulative.  She asked how was she supposed to know, and I told her all she has to do is contact any superior, the shift commander, either deputy warden, or me.

Recently, Marianne has also submitted a special needs request for an inmate with a broken pinkie finger to have a bottom bunk and another inmate with a sore shoulder for a bottom bunk. This is not to mention the numerous requests for transitional lenses. I've had more of these in the last couple of months than my whole tenure here at Medium Security. With regards to transitional lenses, my opinion is that these inmates can buy sunglasses thru Keefe Commissary. Why are we spending our department budget funds for transitional lenses that are clearly not needed?

I am completely frustrated with her decision-making.  I know several people have spoken with Marianne about the unneeded amount of special needs requests she has submitted, but she has only increased the amount that she is submitting.  She is getting manipulated by a number of inmates, but what's worse is that this fact has been brought to her attention, and she continues to allow this to happen again and again.  Her incompetence is inundating me and my staff with reviewing special needs requests that are clearly not necessary, and interfering with our ability to maintain a calm and stable inmate climate.

I am strongly requesting that she be transferred to another facility where she can be better monitored and minimize her impact on the inmate climate.
She is now becoming a hindrance to the established inmate climate, and clearly doing whatever she pleases without regard to the negative impact of her actions.


Sergio DeSousarosa
Deputy Assistant Director / Warden
Rhode Island Department of Corrections
John J. Moran Medium Security
PO Box 8274
Cranston, RI 02920

RIDOCRFPA30012

E-mail: sergio.desousarosa@doc.ri.gov

Telephone: (401) 462-3700/3701

Fax: (401) 462-1408

"Certare Petere Reperire Neque Cedere"

RIDOCRFPA30013

**From:** Vohr, Fred (DOC)
**Sent:** Tuesday, July 29, 2014 1:04 PM
**To:** Desousarosa, Sergio (DOC)
**Subject:** RNP Warren

Hi . So after a long talk with Marianne  and having been apprised that I can't move her and have to other place for her, we have an agreement.

!: She needs a tour of the facility.

2: she will not submit any further requests for special needs unless they have been reviewed by myself or J R.

I hope that works' thanks for your patience and help ,. Stay tuned

Fred Vohr MD
Medical Program Director
Rhode Island Department of Corrections
401 462 1115
FAX  401 462 2000

RIDOCRFPA30014

**From:** Warren, Marianne (DOC)
**Sent:** Wednesday, July 30, 2014 8:48 AM
**To:** Vohr, Fred (DOC)
**Cc:** Desousarosa, Sergio (DOC)
Dear Dr. Vohr;

   When my husband died suddenly 5 years ago I didn't realize how difficult my life would become. If he was here right now my husband Frank would

be telling me to fight and that is what I plan to do. I am 60 years old now, I have been a professional for many years, new to the DOC. I am a grandmother mother and human being and I deserve to be treated respectfully by the Warden. I was up all night thinking about what I did to deserve being threatened to be fired. What behaviors or actions did I demonstrate that rise to that level. What did I do to be pulled out of my work to be threatened like that? Was I insubordinate, disrespectful, do I abuse anyone in the work place, mistreat patients, or not do my work? The answer is No. I am not a perfect person and yes I need guidance from time to time from the Warden. I believe that as the Leader of Medium Security he should offer his guidance, and information when I reach out with respect, tolerance and patience. He is verbally abusive, and I will not tolerate the way he speaks to me ever again. It is absolutely normal for me to question the things that I question here after working here for only 2 ½ years. I do not have the benefit of all the years of experience he has. I carefully listed all of the things I am in trouble for

#1 I appropriately ordered transitional lenses for a patient who needs them. These were ordered by 2 MD's not me. But for some reason the Warden is "annoyed" by that

#2 I ordered a bottom bunk for a pt. for 1 month after he amputated his fingertip and had a delicate costly surgery to have it reattached. I would stand by that decision again.

#3 I reordered a Kosher diet that was ordered by another provider before I got here. I apologized to the Warden if he found that offensive and never received a response. The warden threatened to put the inmate in seg for that. I should not have been told anything about that.

#4 I ordered a special cell for a 75 year old who also had a major operation on his shoulder. I am not aware that there are no such cells. The Warden's response to that was to tell me I am "wasting his time", I am being manipulated by inmates, and he is basically sick of me. He also told me that I monopolized the triage meeting . Meanwhile he was not even there and it was Dr. Clarke who spoke about special needs.


   I have decided that I need protection from him. He wants me out of here and he wants me fired. I have sought the protection of all the resources available to me in the Department. I have repeatedly offered to discuss any concerns with the Warden. Instead of doing that he tells a twisted story to Dr. Vohr, and then I get reprimanded for doing what I am supposed to do anyway. When he does speak to me it is loaded with anger and impatience and intolerance, and I will not speak with again unless someone is with me. For some reason I am being punished for doing my job, and that is twisted and dangerous for me. I appreciate your support Dr.Vohr but I can see the position you are in. I have taken things in my own hands.


Respectfully, marianne

RIDOCRFPA30015



## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
## JOHN J. MORAN MEDIUM SECURITY

Memorandum to:  Warden Sergio DeSousarosa

Department:  John J. Moran Medium Security

From:  Deputy Kerri McCaughey

Department:  John J. Moran Medium Security

Date:  August 4, 2014

Subject:  Witness to Phone Conversation with NP Marianne Warren

On July 29, 2014, I received a special needs request order from Nurse Practitioner Marianne Warren. The order was requesting a mirror and a shelf be lowered in an inmate's cell. It should be noted that I receive several special needs request orders per week from Marianne Warren.  Most of them are unreasonable for security reasons and are denied.

I recently addressed this issue at the Triage meeting on July 16, 2014 in regards to single cells and bottom bunks.  Upon receipt of this recent request I brought the order to the attention of you, Warden Desousarosa.  In my presence and the presence of Mary Lynch; you contacted Marianne to address this issue.

You explained to her that for security reasons we cannot alter an inmate's cell. You further tried to educate her regarding facility protocol as it relates to special requests.  At several points during the conversation Marianne proceeded to talk over you.  You continued to try and re-direct her and point out examples where it appears Marianne may be being manipulated by inmates. At no point during the conversation were you rude, disrespectful or threatening.  You were direct on your position and informative regarding procedures and protocols. If you require anything further please do not hesitate to contact me.

Respectfully submitted,

Kerri McCaughey
Acting Deputy Warden

RIDOCRFPA30016

**Desousarosa, Sergio (DOC)**

| | |
|---|---|
| **From:** | Vohr, Fred (DOC) |
| **Sent:** | Monday, June 22, 2015 1:01 PM |
| **To:** | Desousarosa, Sergio (DOC) |
| **Subject:** | RE: |

I will start with A.D. Weeden and HR today , and I am removing ███ from Marianne

Fred Vohr, MD
Medical Programs Director
Rhode Island Department of Corrections
401.462.1115
Fax 401.462.2000

**From:** Desousarosa, Sergio (DOC)
**Sent:** Monday, June 22, 2015 11:59 AM
**To:** Vohr, Fred (DOC)
**Cc:** Weeden, James (DOC)
**Subject:** RE:

Dr. Vohr,
I understand the situation that you are in, but Marianne has been compromised.  As a result, inmate ███ is using her as his "soapbox" to voice his frivolous complaints.  Her actions are adding validity to ███'s antics.  I don't believe that there is any other option other than to transfer her to another facility, and due to the dire situation that she has now created, that is my expectation.

Sergio DeSousarosa
Deputy Assistant Director / Warden
John J. Moran Medium Security
P.O. Box 8274
Cranston, RI 02920
Email: Sergio.desousarosa@doc.ri.gov
Office: (401) 462-3700/3701
Fax: (401) 462-1408/1161
Pager: (401) 460-0474
*"Certare, Petere, Reperire, Neque Cedere"*



**From:** Vohr, Fred (DOC)
**Sent:** Monday, June 22, 2015 11:23 AM
**To:** Desousarosa, Sergio (DOC)
**Subject:** RE:

1

RIDOCRFPA30017

Thanks for your communication , and I will have another talk with Marianne . I fully realize that she is problematic , but transferring her out of Medium is as well. I will talk with her and get back to you.

Fred Vohr, MD
Medical Programs Director
Rhode Island Department of Corrections
401.462.1115
Fax 401.462.2000

**From:** Desousarosa, Sergio (DOC)
**Sent:** Monday, June 22, 2015 10:27 AM
**To:** Vohr, Fred (DOC); Weeden, James (DOC)
**Subject:** FW:

Dr. Vohr,

Please review the email below. I can tell you that I am n at happy at all with Marianne's email. I have real issues that need my attention in this facility, and her distractions, due to her being allowed to be manipulated by certain inmates in this facility, has become a determent to the operations and rehabilitative efficiencies of this facility. She is also misrepresenting what I said to her. I never snickered. Actually, I was very direct with her.

When these issues cropped up last year, I wanted her transferred out of this facility. We met with her, and agreed to work with her. Well, the same issues are again present, and become increasingly burdensome. I think Marianne would be better suited in a facility where inmates are not well-established and are more transient. That way it would minimize the possibility of her being manipulated by the inmate population.

In short, I am strongly recommending that Marianne be transferred out of Medium Security as soon as possible.


Sergio DeSousarosa
Deputy Assistant Director / Warden
John J. Moran Medium Security
P.O. Box 8274
Cranston, RI 02920
Email: Sergio.desousarosa@doc.ri.gov
Office: (401) 462-3700/3701
Fax: (401) 462-1408/1161
Pager: (401) 460-0474
*"Certare, Petere, Reperire, Neque Cedere"*

RIDOCRFPA30018



**From:** Bouchard, Gordon (DOC)
**Sent:** Monday, June 22, 2015 9:29 AM
**To:** Warren, Marianne (DOC); Vohr, Fred (DOC)
**Cc:** Desousarosa, Sergio (DOC)
**Subject:** RE:

The procedure for KOP Medication is an SOP and is not in policy. The KOP program is a privilege and not a right. The patient was found to be selling his KOP medications and is no longer eligible for this program. I have offered to meet with Ms. Warren and the patient to make this abundantly clear. The patient is knowledgeable of this since I did meet with him some time ago and explained it to him, but he is obviously seeking other routes to have his income flow returned.

It is documented by my note in the patient's medical record that I removed him from the KOP medication program.

Gordon R. Bouchard, RN, BSN, CCHP
Director of Nursing Services
Rhode Island Department of Corrections
(401) 462-3795
(401) 462-3222 (fax)
(401) 460-3331 (pager)

---

**From:** Warren, Marianne (DOC)
**Sent:** Monday, June 22, 2015 9:13 AM
**To:** Vohr, Fred (DOC)
**Cc:** Desousarosa, Sergio (DOC); Bouchard, Gordon (DOC)
**Subject:**

Hello;

Please read the following facts;and when you do please know that I am a person who has the utmost respect for authority and professionalism.

#1 I saw a certain patient with a urinary isses who lost his kop, but got one medication back. He tells me his side of the dry cell policy

#2 I get called to a meeting with Dr. Vohr and Joe Marocco to advise me to be careful that he is eeking legal means outside the prison. I appreciated that information. The warden was not present but he was invited.

#3 I called Dr. Vohr to ask about the kop, because this inmate wants all the rest of his kop's back, and Dr. Vohr directed t\me to the warden

#4 Because there was confusion about the kop, I called to ask the warden if he can have that reinstated because I have been advised that the warden has the ultimate say, and I want to respect his authority. He basically snickered said it was a medical issue. Apparently The warden called Dr. Vohr and Gorgon.

#5 I called Gordon on Friday to discuss the written Policy which states that he can have his kop reinstated after 3 months, so Because my name will be on the record tomorrow I asked Gordon to be present when he tells this inmate he will have no kop at all.

For the record, I am trying to do my job. Therefore no one is going to suggest that I am crazy, that I am a problem, that I am being argumentative or that I am being manipulated by an inmate. I will never be called into a room with all male administrators to discuss this without representation, and No Warden will threaten me with being transferred or worse having to be at the mercy of warden weeden. I am a hard working respectful person. I have never in my life been in any trouble, I value my job, I don't know what crimes the inmates commit and I don't care. I am strong

RIDOCRFPA30019

enough to recognize manipulation, and I do not make my decisions based on my personal feelings. I will never practice that way. This particular inmate will be coming to see me tomorrow. I need a clear solution to the problem, and if he is denied kop then I will be writing that person's name in the record. I know that it is completely normal for me to reach out to my boss and the warden and Gordon without any difficulty. I will continue to do that for my safety and the safety of the patients and the ACI. I do not believe that email is the correct forum, but this is all I have that makes any sense. marianne

RIDOCRFPA30020

**Brown, Robert (DOC)**

| | |
|---|---|
| **From:** | Catlow, Robert (DOC) |
| **Sent:** | Wednesday, June 24, 2015 12:06 PM |
| **To:** | Brown, Robert (DOC) |
| **Subject:** | FW: ███████ |

**From:** Pangborn, Rebecca (DOC) **On Behalf Of** Wall, AT (DOC)
**Sent:** Wednesday, June 24, 2015 11:13 AM
**To:** Catlow, Robert (DOC)
**Subject:** FW: ███████

Forwarding to you per the Director's request.

**From:** Weiner, Barry (DOC)
**Sent:** Tuesday, June 23, 2015 8:18 PM
**To:** Wall, AT (DOC)
**Cc:** CoyneFague, Patricia; Hayes, Lois (DOC); Kelly, Kathleen (DOC); Vohr, Fred (DOC)
**Subject:** FW: ███████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████

**From:** Weiner, Barry (DOC)
**Sent:** Tuesday, June 23, 2015 3:57 PM
**To:** Kelly, Kathleen (DOC)
**Subject:** Fw: ███████

**From:** Desousarosa, Sergio (DOC)
**To:** Vohr, Fred (DOC)
**Cc:** Weeden, James (DOC); Weiner, Barry (DOC); Diniz, Rui (DOC); McCaughey, Kerri (DOC)
**Sent:** Tue Jun 23 15:40:36 2015
**Subject:** RE: ███████

Dr. Vohr,
After further consideration of this most recent incident whereas Marianne disregarded your order not to meet with inmate ███████ I am putting out a directive to my Reception Officer that she is not allowed to enter Medium Security until further notice.  When she reports for duty tomorrow, she will be directed to immediately report to your office.

Sergio DeSousarosa
Deputy Assistant Director / Warden

1

RIDOCRFPA30021

John J. Moran Medium Security
P.O. Box 8274
Cranston, RI 02920
Email: Sergio.desousarosa@doc.ri.gov
Office: (401) 462-3700/3701
Fax: (401) 462-1408/1161
Pager: (401) 460-0474
*"Certare, Petere, Reperire, Neque Cedere"*



**From:** Desousarosa, Sergio (DOC)
**Sent:** Tuesday, June 23, 2015 2:41 PM
**To:** Vohr, Fred (DOC)
**Cc:** Weeden, James (DOC); Weiner, Barry (DOC)
**Subject:** RE: █████████

Dr. Vohr,
In violation of your directive in the email below, Marianne Warren called down and met with inmate █████████ today from 12:25pm to 1:05pm.  As I stated before, she is increasingly becoming a severe hindrance to the safety and security of the facility, and this is clear blatant disregard of your directive. It also demonstrates that she is doing as she pleases, and appears that she has been compromised by this inmate.  I don't want an incident such as what happened New York State to occur at Medium Security.

I am again strongly requesting that she be transferred out of Medium Security to another facility where she would be less apt to be manipulated and compromised by the inmate population.


Sergio DeSousarosa
Deputy Assistant Director / Warden
John J. Moran Medium Security
P.O. Box 8274
Cranston, RI 02920
Email: Sergio.desousarosa@doc.ri.gov
Office: (401) 462-3700/3701
Fax: (401) 462-1408/1161
Pager: (401) 460-0474
*"Certare, Petere, Reperire, Neque Cedere"*



RIDOCRFPA30022

**From:** Vohr, Fred (DOC)
**Sent:** Monday, June 22, 2015 1:03 PM
**To:** Warren, Marianne (DOC)
**Cc:** Desousarosa, Sergio (DOC); Weeden, James (DOC)
**Subject:** ██████

Marianne , please do not see inmate ██████ for any reason .

Fred Vohr, MD
Medical Programs Director
Rhode Island Department of Corrections
401.462.1115
Fax 401.462.2000
I spoke to her.

Joseph Marocco, MPA,CCHP
Associate Director/ Health Care Services
RI Department of Corrections
Tel. 401-462-3792
Fax  401-462-3222
e-mail: joseph.marocco@doc.ri.gov

*"A negative mind will never give you a positive life"*


**From:** Weiner, Barry (DOC)
**Sent:** Monday, June 22, 2015 6:36 PM
**To:** Marocco, Joseph (DOC)
**Cc:** Kelly, Kathleen (DOC); Weiner, Barry (DOC)
**Subject:** FW:


████████████████████████████████████
██████████████████████████████████████████
████


**From:** Marocco, Joseph (DOC)
**Sent:** Monday, June 22, 2015 10:07 AM
**To:** Vohr, Fred (DOC)
**Cc:** Kelly, Kathleen (DOC)
**Subject:** FW:


████████████████████████████████████
██████████████████████████████████
████████████████████████████
███████████████████████


Joseph Marocco, MPA,CCHP
Associate Director/ Health Care Services
RI Department of Corrections
Tel. 401-462-3792
Fax  401-462-3222

RIDOCRFPA30023

e-mail: joseph.marocco@doc.ri.gov

*"A negative mind will never give you a positive life"*

**From:** Bouchard, Gordon (DOC)
**Sent:** Monday, June 22, 2015 9:59 AM
**To:** Marocco, Joseph (DOC)
**Subject:** FW:

See below

Gordon R. Bouchard, RN, BSN, CCHP
Director of Nursing Services
Rhode Island Department of Corrections
(401) 462-3795
(401) 462-3222 (fax)
(401) 460-3331 (pager)

**From:** Bouchard, Gordon (DOC)
**Sent:** Monday, June 22, 2015 9:29 AM
**To:** Warren, Marianne (DOC); Vohr, Fred (DOC)
**Cc:** Desousarosa, Sergio (DOC)
**Subject:** RE:

The procedure for KOP Medication is an SOP and is not in policy.  The KOP program is a privilege and not a right.  The patient was found to be selling his KOP medications and is no longer eligible for this program.  I have offered to meet with Ms. Warren and the patient to make this abundantly clear.  The patient is knowledgeable of this since I did meet with him some time ago and explained it to him, but he is obviously seeking other routes to have his income flow returned.

It is documented by my note in the patient's medical record that I removed him from the KOP medication program.

Gordon R. Bouchard, RN, BSN, CCHP
Director of Nursing Services
Rhode Island Department of Corrections
(401) 462-3795
(401) 462-3222 (fax)
(401) 460-3331 (pager)

**From:** Warren, Marianne (DOC)
**Sent:** Monday, June 22, 2015 9:13 AM
**To:** Vohr, Fred (DOC)
**Cc:** Desousarosa, Sergio (DOC); Bouchard, Gordon (DOC)
**Subject:**

Hello;

    Please read the following facts;and when you do please know that I am a person who has the utmost respect for authority and professionalism.

    #1 I saw a certain patient with a urinary isses who lost his kop, but got one medication back. He tells me his side of the dry cell policy

    #2 I get called to a meeting with Dr. Vohr and Joe Marocco to advise me to be careful that he is eeking legal means outside the prison. I appreciated that information. The warden was not present but he was invited.

RIDOCRFPA30024

#1 I welcome this opportunity no matter what the outcome may be to express my experiences

#2 General Orientation did not prepare me for what is to come as an employee here

#3 I have the utmost respect for The position of Warden and the primary issue of security and safety for all

#4 I was never told at orientation that a conversation with the Warden had to be lateral, not from my level, someone told me that much later.

#5 a couple of weeks back I received an email from my boss Dr. Voht with an attached letter from ███████ ███████. This tells me that I need to take action. In his letter the patient stated his concern that since his last visit with the Urologist he had not been seen by his provider, who is me, so I called him in for a visit. When my boss sends me an email about a pt. it is a nudge to take action.

#6 Soon after that I received an email from Dr. Voht inviting me, the Warden and Joe Marocco to discuss this pt.in his office. That told me the seriousness of the situation. The Warden did not attend, Dr. Voht told us that this pt. has engaged the Governor's Office with respect to his disability under the "Disability Act", and that I should be careful with him. Joe Marocco expressed his aggravation with the situation and said he should have to go to MAX, but there was no definite plan or any clear guidelines for me, just be careful, "he is a manipulator and trouble".

#7 During the visit with the pt. we discussed his documented Urological disability, and he told me that his special needs for dry cell were not being met by the security side. At that time I told him that there was nothing I could do, and he would have to address his concerns with security. I reviewed the recommendations of the Urologist with him and asked if he was taking his medications. He said he was taking his Flomax which was recommended, and that one of the nurses gave it to him to take to his cell. This became an issue because he lost his kop privileges last year when he went to seg, and it was my understanding that he still had no privilege. He then asked me for the rest of his meds to be kop. I told him that I did not have the information or authority to grant that, but I would make calls on his behalf and have him come back in 1 week.

#8 I first called Dr. Voht, and he said it was a Warden issue. I called the warden and he said it was "medical". I then asked Brenda the nursing supervisor for the building and she said she didn't know either. On Friday of last week I went back to Brenda and she showed me some written words saying that an inmate can have his kop privileges reinstated after 3 months, but not clear by who. I called Gordon Bouchard and sked him to clarify, and he said this guy is a manipulator, and "no" he is not getting his privileges back, basically because he said so. I asked him to please come to the next visit with me to tell him. Gordon said I was being argumentative (which is personal not professional), and that when this patient sees his 240 pounds walk in that will straighten him out. After that conversation I still had no clear answer.

Last year I asked the Warden about the dry cell accomodations and he told me over the phone that "you medical people should get your act together, he had better things to do and I was wasting his time".

RIDOCRFPA30025

Right after that I was summoned to Dr. Voht's office because the Warden wanted me out of his building and fired". He was upset about transitional glasses ordered by an Opthamologist that I put in the special needs form, and upset because I placed an inmate on the bottom bunk for 1 month after he amputated his finger and had it surgically reconstructed. I was so frightened, I did not contact my union rep, but I called HR, and wrote a letter to AT Wall and asked his to please help me, because I was being threatened with termination with no clear reason. After that letter I was summoned to Warden Weeden's Office. I thought things would be resolved. I walked into a room with 3 men in Authority, Dr. Voht, Warden Desousarosa, and Warden Weeden and no union rep. When I tried to speak about the glasses and the bottom bunk I was told I was being defensive. Dr. Voht said I am a problem, Warden Weeden said he supports whatever Warde Desousarosa does, and Warden Weeden said "if you ever do anything like this again you will have to deal with me directly, and it won't be pretty" After that I just tried to do my job, mind my own business, try to protect my license, provide standard of care to the patients, but never really trusting anyone again.

On Tuesday the patient returned, and I told him that I could not grant his full kop privilege, I reviewed DOC Policies regarding Dry cell Accomodations", and yes he meets the criteria for accomodations under "the Disability Act" and per "DOC" policy. So as his provider I respected the Policy, the pt. and my license. I created a special needs form for him.

I went to work on Wednesday and was not allowed in the building, and now I am suspended and accused of insubordination, and having an inappropriate relationship with this pt. In fact what I have is a difficult pt. who requires the input of the medical director, the Warden the legal team, and me, with no support, no plan. It is me that has to see this pt. The warden apparently sent me an email asking me not to see this pt, which I never read. He never called me, and never came to talk to me. Legally I am not even sure if I can refuse to see a pt. in this setting without legal recourse.

Whether or not the pt. is manipulative is not the issue. The issue is that he is a pt. I am his provider, and he has a documented medical issue. I have a legal duty to provide the standard of care to him, and I believe that in this very particular setting it is normal for me to seek the guidance of the Warden without fear, without false accusations. It is very difficult to work in a place and not know who is who and who I can trust. It is very difficult to work in a place where the communication system is very unclear, and very tricky for me.

RIDOCRFPA30026

#3 I called Dr. Vohr to ask about the kop, because this inmate wants all the rest of his kop's back, and Dr. Vohr directed t\me to the warden

#4 Because there was confusion about the kop, I called to ask the warden if he can have that reinstated because I have been advised that the warden has the ultimate say, and I want to respect his authority. He basically snickered said it was a medical issue. Apparently The warden called Dr. Vohr and Gorgon.

#5 I called Gordon on Friday to discuss the written Policy which states that he can have his kop reinstated after 3 months, so Because my name will be on the record tomorrow I asked Gordon to be present when he tells this inmate he will have no kop at all.

For the record, I am trying to do my job. Therefore no one is going to suggest that I am crazy, that I am a problem,  that I am  being argumentative or that I am being manipulated by an inmate. I will never be called into a room with all male administrators to discuss this without representation, and No Warden will threaten me with being transferred or worse having to be at the mercy of warden weeden. I am a hard working respectful person. I have never in my life been in any trouble, I value my job, I don't know what crimes the inmates commit and I don't care. I am strong enough to recognize manipulation, and I do not make my decisions based on my personal feelings. I will never practice that way. This particular inmate will be coming to see me tomorrow. I need a clear solution to the problem, and if he is denied kop then I will be writing that person's name in the record. I know that it is completely normal for me to reach out to my boss and the warden and Gordon without any difficulty. I will continue to do that for my safety and the safety of the patients and the ACI. I do not believe that email is the correct forum, but this is all I have that makes any sense. marianne

RIDOCRFPA30027

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
# Department of Corrections

Memorandum to:  Reception Staff

Department:  John J. Moran Medium Security

From:   Sergio DeSousarosa, Warden

Department:  John J. Moran Medium Security

Date:  23 JUN 2015

**Subject:  Nurse Practitioner Marianne Warren**

Until further notice, N.P. Marianne Warren is restricted from entering the JJM Medium Security.  If she attempts to enter the facility, immediately stop her, and direct her to report to the Medical Director's Office at Administration Building "B".

cc: Rui Diniz, Deputy Warden
    Kerri McCaughey, Deputy Warden (Acting)
    File

## STATE OF RHODE ISLAND * DEPARTMENT OF CORRECTIONS

### MEMORANDUM

**TO:**      Distribution

**FROM:**    Lois M. Hayes
             Deputy Personnel Administrator

**DATE:**    **June 24, 2015**

**SUBJECT:  ADMINISTRATIVE LEAVE WITH PAY**

---

Please be advised that the following employee has been placed on Administrative Leave with Pay, **effective Wednesday, June 24, 2015 at 10:00 am:**

### Marianne Warren, Physician's Extender

Please be further advised that this individual is not permitted on Corrections' grounds until further notice. This prohibition does not prevent employees on Administrative Leave from picking up paychecks in Administration 'B' Building, attending meetings with Inspectors, and attending meetings with elected Union Officials.

Thank you for your cooperation in this matter.


Distribution:
         A. Bucci, DOA
         RIBCO

RIDOCRFPA30029

## STATE OF RHODE ISLAND * DEPARTMENT OF CORRECTIONS

## MEMORANDUM

**TO:**     Distribution

**FROM:**   Lois M. Hayes
            Deputy Personnel Administrator

**DATE:**   **June 25, 2015**

**SUBJECT:** ** REMOVAL FROM ADMINISTRATIVE LEAVE **

---

Please be advised that **Marianne Warren, Physician's Extender,** has been removed from the list of individuals currently on Administrative Leave status effective **Thursday, June 25, 2015 at 2:00 pm** and is now allowed entry to facilities.

Thank you for your prompt attention to this matter.

LMH/mmm

Distribution:

   M. Marcaccio (DOA)
   RIBCO

RIDOCRFPA30030