**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STEPHEN MELISE, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No.: 1:17-cv-00490-MSM-PAS |
| | : | |
| COYNE-FAGUE, et al. | : | |
| Defendants | : | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE**
**PORTIONS OF STATE DEFENDANTS' STATEMENT OF DISPUTED FACTS**</u>

**I.    INTRODUCTION**

In the context of cross motions for summary judgment submitted by the parties, Plaintiff

has filed a Motion to Strike Portions of Defendants' Statement of Disputed Facts.    This

Memorandum of Law is filed simultaneously therewith in support of said Motion.    Plaintiff

additionally incorporates by reference Plaintiff's Statement of Undisputed Facts in Support of His

Motion for Partial Summary Judgment ("Plaintiffs' SUF") (ECF No. 108).    Plaintiff seeks to strike

certain statements contained in Defendants' Statement of Disputed Facts ("Defendants' SDF")

(ECF No. 124) based on three broad objections.

**First**, in response to many of Plaintiff's undisputed facts, Defendants claim that the fact is

disputed without pointing to anything in the record to support the dispute.    This renders the

supposed dispute meaningless because it is unsupported and is also not in conformity with Local

Rule of Civil Procedure ("LR Cv") 56.    **Second**, in numerous responses to Plaintiffs' SUF,

Defendants seek to create disputes where no material dispute exists, often by pointing to cited

material that in fact supports Plaintiff's undisputed fact, not Defendants' alleged dispute or has no

relevance to the undisputed fact and alleged dispute.    Similarly, Defendants frequently object

and/or claim ambiguity where they are not disputing a fact but merely disagreeing with Plaintiff's

phrasing.  **Third**, Defendants frequently invoke admissibility of evidence in disputing a proposed

undisputed fact where the underlying fact asserted is not actually disputed.  Further, admissibility

considerations are mostly irrelevant at the summary judgment stage, where the applicable standard

is whether the material cited in support may be put into admissible form if a trial were held.

Finally, the evidence Defendants object to is in fact admissible as explained bellowed.

## II.    STANDARD OF REVIEW

Local Rule of Civil Procedure ("LR Cv") 56(a)(3) requires,

> For purposes of a motion for summary judgment, any fact alleged in
> the movant's Statement of Undisputed Facts shall be deemed
> admitted unless expressly denied or otherwise controverted by a
> party objecting to the motion. An objecting party that is contesting
> the movant's Statement of Undisputed Facts shall file a Statement
> of Disputed Facts, which shall be numbered correspondingly to the
> Statement of Undisputed Facts, and which shall identify the
> evidence establishing the dispute, in accordance with the
> requirements of paragraph (a)(2).

Paragraph (a)(2) requires that "[e]ach 'fact' shall be set forth in a separate, numbered paragraph

and shall identify the evidence establishing that fact, including the page and line of any document

to which reference is made, unless opposing counsel has expressly acknowledged that the fact is

undisputed."  "The purpose of this rule is to ensure that parties direct the court to genuinely

controverted and material facts and to 'prevent them from 'unfairly shifting the burdens of

litigation to the court,' by, for example, leaving the 'court to grope unaided for factual needles in

a documentary haystack.'' "  _Aulisio v. Baystate Health Sys., Inc._, No. CIV.A. 11-30027-KPN,

2012 WL 3957985, at *1 (D. Mass. Sept. 7, 2012) (citation omitted).

Nominal disputes based on improper and unsubstantial "disputes" should be stricken and

the undisputed facts deemed admitted by this court.  _See e.g. Dennis A. Rockwell, et al. v. Air &_

_Liquid Sys. Corp., et al. Additional Party Names: ASCO, L.P., Dawn Rockwell,_ No. CV 21-3963-

GW-PLAX, 2022 WL 2784395, at *1 n 1(C.D. Cal. May 20, 2022) ("To the extent that a cited underlying "undisputed" fact had been nominally disputed by an opposing party, the Court finds that the stated dispute: (1) fails to actually controvert the proffered "undisputed" fact; (2) disputes the fact on grounds not germane to the actual statement made by the initial proffering party; (3) fails to cite sufficient evidence in support of the disputing party's position; and/or (4) consists of legal arguments that do not circumvent the underlying facts. As such, the Court treats the facts delineated herein as undisputed.").

## III.    ARGUMENT

### A. Defendants' Unsupported Disputes Should Be Stricken As Violative of the Federal Rules of Civil Procedure and This Court's Local Rules.

Defendants object to numerous undisputed facts without citing or providing any support from the record and simply make claims such as Plaintiff's undisputed fact is "argumentative and not supported by the evidence."  Such alleged disputes cannot be considered disputes under Local Rule of Civil Procedure ("LR Cv") 56, which requires, "[a]n objecting party that is contesting the movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts, which shall be numbered correspondingly to the Statement of Undisputed Facts, and which shall identify the evidence establishing the dispute."  Further, merely stating a general objection to the tone and content of an undisputed fact supported by cited evidence from the record is simply not a dispute for the purposes of summary judgment.  *See, e.g., Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 450-51 (1st Cir. 2014) (The non-movant must "identify[ ] competent evidence in the record sufficient to create a jury question.").  This objection applies to Defendant SDF's ¶¶30, 54, 56, 62, 71, 93,[1]

---

[1] Although State Defendants do not dispute this statement with any citations or supporting evidence, Defendants Vohr and Clarke, in their Statement of Disputed Facts (ECF No. 120) are correct in pointing out that Plaintiff's SUF ¶93 is improperly worded in that Dr. Clarke did not access "the audit report," rather the audit report demonstrates that Dr. Clarke accessed Plaintiff's electronic medical records and viewed the September 8, 2016 encounter with Dr. Salas and the special needs bottom bunk order entered the same day.

101, 106-08, 117, 125, 134, 140-41, 148-49, 154, 166-70, 172-73, 176-81, 184-86, 188, 191-95, 197-98, 203-05, 211, 214-15, 219, 223, 227-32, 236-37, 241-46, 248-49.

Plaintiff will not belabor the point by explaining each example of such a dispute, of which there are many, but merely provides a few examples to highlight and illustrate the issue. For example, Plaintiff's SUF ¶56 states,

> That same day, December 29, 2015, more than a week after the order was submitted to security, Defendant McCaughey denied the special needs order for a bottom bunk without requesting additional information or giving any security-based reason for the denial. Am. Compl. ¶26; DOC Answ. ¶26; DOC Answers to RFAs No. 26; McCaughey Dep. 105:1-06:5; Special Needs Orders, M-230; Warren Dep. 120:2-4.

Despite the fact the Defendants have already admitted this fact twice in formal court filings, that it is established by their own records and was admitted to by Defendant McCaughey herself under oath, Defendants response states, "**DISPUTED.** Plaintiff's assertion is argumentative and not supported by the evidence." Defendants provide no explanation for what aspect of the statement is "argumentative" or "not supported by the evidence," and provide no citation to any contradictory evidence. Such a baseless, unsupported, and, frankly, bad faith assertion of a dispute should be stricken by this Court so as to narrow the field to actual disputes.

Similarly, Plaintiff's SUF ¶232 asserts,

> Defendants Wall, Coyne-Fague, Clarke, Vohr, and McCaughey were aware that other inmates with medical bottom bunk orders had fallen from top bunks before each of Plaintiff Melise's falls from the top bunk; at least three to five other inmates had fallen and injured themselves after being confined to top bunks against medical orders by September 22, 2015. Inmate John Doe 6 Special Needs Orders and Medical Records (**App. Ex. HH**) (On August 8, 2014, inmate with multiple bottom bunk orders from Nurse Warren fell while climbing ladder to top bunk and was injured and taken to Rhode Island Hospital); Warren Dep. 74:1-86:7 (Discussing Inmate John Doe 6: "Q. Well, at least as of August 8th, the inmate reported to you that he had fallen from the ladder, climbing to the top bunk, correct? A. Yes Q. So, at this point in time, August 8th, [2014] he

had been assigned to the top bunk? A. Yes. Q. Despite the fact that you had submitted orders for the bottom bunk? A. That's correct."); Physician/Provider Meeting Minutes, RIDOCRFP50371 (March 11, 2015 meeting with Defendants Vohr and Clarke and Nurse Warren in attendance: discussing another inmate who DOC Medical staff had ordered a medical bottom bunk for but which was never supplied and later fell from the top bunk, broke his arm, and sued Defendant DOC); Executive Staff Meeting Minutes, September 22, 2015 (**App. Ex. II**) (Defendants Wall and Coyne-Fague and AD Weeden present: "Legal received a letter from the woman who represents [redacted]. He had been given a medical slip for the bottom bunk. The review process takes a couple weeks. In the meantime, he fell off the top bunk and broke his foot. We are being sued. Can we shorten the review process? Mike Grant said this has happened to us a couple of other times.").

Defendants' entire response states, "**DISPUTED.** Plaintiff's assertion is argumentative, speculative, and not supported by the evidence. Additionally, Plaintiff's assertion concerning anonymous non-party inmates, who are not Melise, is not relevant whether [sic] State Defendants had knowledge of Melise's alleged incidents."  Again, Defendants do not explain what aspect of Plaintiff's statement they consider "argumentative," "speculative," or "not supported by the evidence."  Plaintiff provided a simple recitation of admissible facts from documents produced by Defendants in this case of numerous meetings wherein previous incidents of inmates falling from top bunks after receiving medical orders for a bottom bunk.  This is sufficient to prove notice to Defendants Wall, Coyne-Fague, Clarke, Vohr, and McCaughey of such incidents.  Furthermore, this statement is clearly relevant to the prevalence of issues with inmates being hurt because DOC security staff were denying, delaying, or ignoring medical bottom bunk orders.  Defendants generate no dispute with their vague objection, and such claimed dispute should be stricken.

Since each of the above-cited statements in Defendants SDF fail to articulate any ambiguity, explanation for what Defendants consider argumentative or speculative, and, critically, fail to cite to contradictory evidence, each claimed dispute should be stricken, and each of

Plaintiff's statements should be deemed admitted.  *See* LR Cv 56(a)(3) ("For purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion."); *see also Statchen v. Palmer,* 623 F.3d 15, 18 (1st Cir.2010) ("[E]vidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment."); Aulisio v. Baystate Health Sys., Inc., No. CIV.A. 11-30027-KPN, 2012 WL 3957985, at *3 (D. Mass. Sept. 7, 2012) ("Defendants also seek to strike statements of disputed facts by Plaintiff that 'deny' facts asserted by Defendants but do so in a summary fashion without citing the record. Rule 56.1, of course, requires a party to support any fact or disputed fact with such citations. With that in mind, the court will allow Defendants' motion with regard to Plaintiff's responses to Defendants' SOF 33, 59, 77, 78, and 91.").

### B. Defendants Claimed Disputes That Do Not Create A Real Dispute of Fact Should Be Stricken.

Defendants object to numerous of Plaintiff's SUFs by attempting to create a dispute where none exists.  Plaintiff moves to strike these objections where it is painfully obvious that Defendants objections are inadequate to create an actual dispute of material fact.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (when the record contradicts a party's description of the facts, it does not create a genuine dispute); *accord Blaylock v. City of Philadelphia,* 504 F.3d 405, 413 (3d Cir. 2007); *see also Cuesta v. School Bd. of Miami-Dade County,* 285 F.3d 962, 970 (11th Cir. 2002) (Summary judgment proper "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible."(internal quotations omitted)).  This applies to Defendants' SDF ¶¶5, 10-13, 16-19, 20-21, 25-26, 31-32, 35, 37-38, 40, 43, 46, 51, 65-67, 69-70, 76-79. 81-82, 84-86, 94-96, 98, 100, 102-03, 118-19, 121-24, 132, 135, 137-39, 142-43, 146, 150-51, 153, 156, 162,

165, 167, 174-75, 182-83, 187, 190, 196, 199-202, 206-08, 210, 212-13, 216-18, 220-22, 224-25, 233-35, 238-39, 247.

For example, Plaintiff's SUF ¶5 simply asserts, based on copious medical records as well as Plaintiff's Melise's testimony, that "Throughout the time period at issue in this matter Plaintiff Melise has continued to suffer from both a sleep disorder and painful neck conditions." Defendants asserted dispute claims, "**DISPUTED.** State Defendants dispute the term 'sleep disorder' to the extent that it is ambiguous and fails to describe a medical diagnosis and/or the associated symptoms." Defendants, instead of admitting that their own medical records establish Plaintiff's ongoing conditions, dispute it, without citing any contrary evidence. Furthermore, Defendants do not provide any legal support for why a medical diagnosis would be required, which, as Plaintiff explains in his Reply filed simultaneously herewith, is not. This asserted dispute is merely argument, not a properly supported dispute of fact.

Plaintiff's SUF ¶21 states, "Plaintiff Melise spoke with Defendant McCaughey about his issues getting his medical bottom bunk approved in early 2015 but nothing changed after he spoke to her. Melise Dep. 90:17-92:3." Defendants' SDF states:

> **DISPUTED.** State Defendants dispute that "about his issues getting his medical bottom bunk approved in early 2015 but nothing changed after he spoke to her" as it is not supported by evidence and mischaracterizes testimony. Melise testified:
>
>> **Examination By Attorney Latham**
>> **Q.** Do you have any reason to believe that Dr. Clark had any actual knowledge of the issues that were going on with you?
>> **A.** McCaughey had told me that Dr. Clark had to consult with her before she refused the medical order, and I asked why she does not sign the medical order, and she said she does not have to. She is just a consultant.
>> **Q.** Let me try to break that up a little bit, so this Deputy Warden McCaughey, she told you that Dr. Clark needed to –
>> **A.** She told me that she consults with Dr. Clark.

**Q.** And do you believe, or have reason to believe, that Deputy Warden McCaughey consulted Dr. Clark about the orders for your bottom bunk?

**A.** She told me she did. I asked her directly, why she -- when I seen her outside the chow hall, and she said her and Dr. Clark had come to that diagnosis, that I don't need a bottom bunk.

**\*\*\***

**Examination by Attorney Sullivan**

**Q.** And following that conversation, do you have any reason to believe that Deputy Warden McCaughey had denied your request for a bottom bunk in bad faith?

**A.** I don't know why she denied it, and I don't have a reason. I never thought -- I could never think of a reason why she wouldn't. I always wondered, but I didn't have any definitive answer for myself.

**Q.** And that didn't change following that conversation?

**A.** No.

State Defendants' Exhibit F (Melise Deposition), at 70:03-70:13, 91:20-92:03.

This "dispute" is emblematic of many of Defendnats' claimed disputes because it does not explain what aspect of or how Plaintiff's statement is contradicted. Instead, Defendants simply state there is a dispute and cite or quote some testimony that actually supports Plaintiff's statement. Here, there is simply nothing in the above quoted testimony that even hints at any contrary facts or circumstances to what Plaintiff states in his SUF ¶21, that he spoke with Defendant McCaughey directly about his issues with getting his medical bottom bunk approved and that nothing changed after that conversation took place. Indeed, it supports the statement.

Similarly, Plaintiff's SUF ¶67 asserts, "Plaintiff Melise also reiterated his request to be placed on a bottom bunk to Nurse Warren who said she had submitted a bottom order already and would do so again. At this point Plaintiff 'was getting worried [he] was going to end up seriously injured.' Melise Dep. 45:24-47:1." Defendants' SDF ¶67 asserts a dispute stating:

> **DISPUTED.**   With respect to the June 21, 2016 visit, Melise testified that:

> **Q.** Did you ask her [Nurse Warren] for another bottom bunk?
>
> **A.** I did, and I also asked her if she knew why – that's when I started to bring up that I had not been sleeping well to her, and if she could, if she had had any diagnosis about that.
>
> **Q.** So that's when you first told her about the waking up?
>
> **A.** Yes.
>
> **Q.** And what was her response to your complaints about trouble sleeping?
>
> **A.** She said, she had me put in the computer as wanting to be in the bottom bunk, and she would put in another request to get me in the bottom again.
>
> **Q.** When you reported to her that you were having trouble sleeping, did she recommend anything?
>
> **A.** She recommended that I be put on the bottom bunk, so that way if I fell again, I would not get hurt so much.
>
> 46:11-47:01. According to Nurse Warren, the issues Melise complained of—neck pain and weakness in his left arm—were unrelated to Melise's reports that he fell off a bunk bed while sleeping. Nurse Warren testified:
>
> > **Q.** After this second fall that he reported to you, was there any reason to believe that his falls were related to a medical condition?
> >
> > **A.** No.
>
> *See* State Defendants Exhibit B (Warren Deposition), at 121:19-122:04.

Nothing in the cited material generates any dispute here. The cited material indicates exactly what Plaintiff's SUF says, Plaintiff, following a fall, reiterated his bottom bunk request, Nurse Warren said she would put the order in again, and Plaintiff was worried about hurting himself if he fell again. Plaintiff's testimony—that Nurse Warren "recommended that [he] be put on the bottom bunk, so that way if [he] fell again, [he] would not get hurt so much"—is not contradicted by her testimony that she had not yet made the connection between a specific medical condition and his falls for two reasons. First, whether or not Nurse Warren thought the falls were connected to a medical condition has absolutely nothing to do with the statement in SUF ¶67 that simply relates to Plaintiff's testimony that he asked for a bottom bunk order and was worried about future injuries. Second, Nurse Warren's testimony is irrelevant here because she still thought a bottom bunk was

medically indicated for the previously submitted reasons and would protect him from harm if he did suffer future falls.  This is demonstrated on the same transcript page cited by Defendants: "Q. Is that something that you have seen before, a sleep disorder that might cause somebody to fall out of bed? A. No. … Q. You may not have connected those two -- A. No. Q. -- events? A. Because he just said he rolled off, so I don't know that could be true.  Q. But in any case, you still believed he needed a bottom bunk order because of his osteoarthritis condition? A. Right, and his neck and his left arm numbness." Warren Dep. 121: 4-16.  Again, this claimed dispute by citing to irrelevant testimony without any explanation about why or how the citation contradicts Plaintiff's statement is typical of many of Defendants' asserted disputes, is not sufficient to create a legitimate dispute, and should be stricken.

Defendants' purported dispute as to Plaintiff's SUF ¶206 is another illustrative example of citing material that in no way disputes Plaintiff's SUF.  Plaintiff's SUF ¶206 states "Defendant McCaughey did not ever follow up on orders that she had sent back for more information unless she actually received a special needs order form back with additional information.  McCaughey Dep. 40:22-41:7." Defendants SDF asserts:

> **DISPUTED**. Plaintiff's assertion is argumentative, not supported by the evidence, and misstates the witness's testimony. McCaughey testified:
>> **Q.** So once it goes back to medical, and you tell them you need more information, do you ever follow up on the orders that you have asked for more information on?
>> **A.** When they send them back to me.
>> **Q.** So you will ask for more information, put it in the mailbox, and just wait to see if medical responds?
>> **A.** I wait for it to come back, yes.
>> **Q.** So have you ever thought about an order that you asked for more information on and decided to go ask what was happening with it?
>> **A.** No.
> State Defendants' Exhibit D (McCaughey Deposition), at 40:22-41:07.

Defendants cite the exact testimony Plaintiff cites, which simply says exactly what Plaintiff asserts it says and nothing else.  Plaintiff cannot comprehend how Defendants dispute this fact given that it is established by Def. McCaughey's own testimony.

Plaintiff's SUF ¶210 receives the same treatment and is again illustrative of the larger pattern in Defendants' SDF.  Plaintiff's SUF ¶210 states "Ordering a bottom bunk through a special needs order was a 'professional judgment call' made by DOC medical staff. Warren Dep. 51:2-51:10."  Defendants SDF states:

> **DISPUTED.** Nurse Warren testified:
> **Q.** Do you ever recall discussing bottom bunk orders during those meetings?
> **A.** I can't remember specifically, but I am sure that we did discuss special needs.  You know, like I said, there is no boss that is going to tell you not to put a patient on a bottom bunk, if you think it is medically necessary.  They are not going to take that responsibility, nor should they, really.  It is like treating high blood pressure, so, okay, this is the recipe for high blood pressure.  There is no recipe for a bottom bunk.  There is no book to read about it; there is no class to take in school.  It is kind, like, a prison specific judgement that you make, except for the clear, clear cases of diabetes, seizure, obvious injuries, recent surgeries, stuff like that.
> **Q.** So it was a judgement call, correct, a professional judgement call?
> **A.** A professional judgement call.
> State Defendants' Exhibit B (Warren Deposition), at 50:17-51:10

Plaintiff presents SUF ¶234 and associated Defendant Response as a final example of this practice, which is endemic in Defendants' SDF.  It states, "Nurse Warren was worried she would be fired for testifying at her deposition in this case.  Warren Dep. 139:24-140:10, 161:9-17, 162:11-16." Defendants dispute is as follows:

> **DISPUTED.**  Nurse Warren testified:
> **Q.** You mentioned that you felt at the time when you were at Medium Security that it was possible that you would be retaliated against, could you explain what you meant by that?

> **A.** Do I have to?
> **Q.** Unfortunately.
> **THE WITNESS:** I do?
> **MS. STOWELL:** Yes.
> **A.** Oh, my God, then I am going to get fired now?
> **Q.** I am not suggesting that at all.
> **MS. STOWELL:** Off the record.
> **(BRIEF OFF-THE-RECORD DISCUSSION)**
> **A.** Well, I did get in a lot of trouble when I worked there. I actually got thrown out of the building for a week, so –

State Defendants' Exhibit B (Warren Deposition), at 161:09-161:23.

Plaintiff believes this testimony speaks sufficiently for itself.

The numerous other supposed disputes of this type, cited above, are similarly without merit. Nonetheless, Plaintiff need not explain every instance of Defendants' insufficient grounds for creating disputes of material fact as this Court is more than capable of reviewing the Defendants' cited material in support, or lack thereof. Plaintiff merely reiterates the above list of supposed disputes that he believes fall into this category and asks this Court strike those the Court determines do not cite to evidence in the record that actually generates a real and material dispute.

### C. Defendants' Claimed Disputes Asserting Admissibility Are Contrary to the Standard for Considering Evidence at Summary Judgment

Finally, Defendants raise the issue of inadmissible evidence in response to numerous of Plaintiffs' undisputed facts. Plaintiff points to Defendants' SDF ¶¶34, 42, 106-08, 117, 125, 134, 211, 227, 231 as situations where such disputes are proffered but are baseless, do not generate real disputes, and should be stricken.

Rule 56(c) provides that a trial court may properly "consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in ruling on a summary judgment motion. Fed. R. Civ. P. 56. "A genuine issue of material fact can be created only by materials of evidentiary quality." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011). The United States Supreme Court has made clear that the evidence itself does not have to be in a form

that would be admissible in court. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We

do not mean that the nonmoving party must produce evidence in a form that would be admissible

at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving

party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be

opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings

themselves, and it is from this list that one would normally expect the nonmoving party to make

the showing to which we have referred."); *see also Tavares v. Enter. Rent-A-Car Co. of Rhode*

*Island*, No. CV 13-521S, 2016 WL 7468130, at *9 (D.R.I. June 16, 2016), *report and*

*recommendation adopted sub nom., Tavares v. Enterprise Rent-a-car Co. of Rhode Island*, No.

CV 13-521 S, 2016 WL 6988812 (D.R.I. Nov. 29, 2016) ("The evidence [at summary judgment]

must be in a form that permits the court to conclude that it will be admissible at trial.") The

statements are competent for summary judgment "when they are given on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or deponent (as the case

may be) is competent to testify about the matter in question." *Hannon*, 645 F.3d at 49.

Here, the gravamen of Defendants' disputes as to admissibility seem to be that DOC

medical staff directly involved in Plaintiff's care cannot provide medical opinions because they

are fact witnesses, not expert witnesses. This is quite simply wrong. Courts in this Circuit have

addressed and dispatched with this concept, explaining succinctly:

> The 'fact opinions' of a treating physician's testimony include not
> only his or her simplistic observations—such as a person's gait, the
> presence of swelling or that a body part is warm to the touch—but
> also notions regarding causation, diagnosis, prognosis, and the
> extent of the disability or injury. Conversely, if the physician's
> opinion is based on information not learned during the course of
> treatment, then such testimony usually is beyond the 'fact opinion'
> classification and must comply with the rules regarding expert
> disclosures.

*Vosburgh v. Bourassa*, No. CIV.07-CV-101-SM, 2008 WL 3166387, at *3 (D.N.H. Aug. 5, 2008).

In short, treating medical providers can provide a wide range of both fact and expert testimony,

and their medical opinions about a patient are either fact or expert opinions depending on their

basis.  For the purposes of Defendants' purported disputes, it hardly matters, because they may

provide both sorts of testimony and both sorts are admissible, as long as that testimony is based

on their treatment of the patient.

Even more absurd Defendants seem to claim that a medical provider opining about what

sort of treatment would be helpful for their patient is inadmissible speculation.  Plaintiff is sure

that this Court is more than sufficiently aware that this is simply not that case.  Some helpful

illustrative examples of theses baseless alleged disputes are SUF ¶¶34, 106-07, and 125:

> 34. Nurse Warren believed that the order should have been approved
> by security when it was originally submitted on June 9, 2015, and
> that she should not have needed to submit the additional medical
> information in order for security to approve the order for a bottom
> bunk. Warren Dep. 108:20-09:21.
>
> **Response 34: DISPUTED.** Nurse Warren is a fact witness. *Id.* at
> 07:17-07:19 ("Ms. Stowell: Christine Stowell, on behalf of Dr.
> Clarke, Dr. Vohr, and representing the *fact witness*, Marianne
> Warren.") (emphasis added). Nurse Warren is not designated or
> qualified as a medical expert or expert in prison security standards
> and practices and cannot opine on whether Melise's condition or
> prison security standards and practices "necessitated an assignment
> to a bottom bunk." *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 702.
> Even as a fact witness, Nurse Warren cannot give a lay opinion on
> whether on prison medical and security standards and practices—
> including Melise's bunk assignment—because such testimony
> requires scientific, technical, and specialized nowledge [sic]. *See*
> Fed. R. Evid. 701; *see also* State Defendants' Exhibit B (Warren
> Deposition), at 103:15-104:14 ("So, I don't even have access to
> security. I don't even know why they [inmates] are incarcerated. I
> don't have any access to that. I am just pure medical.").

First, Defendants' argument that Nurse Warren cannot provide opinion testimony because she has

not been disclosed as an expert is false.  *See* Plaintiff's First Expert Disclosure, attached hereto as

**Exhibit A**.   Plaintiff disclosed Nurse Warren as a treating medical provider for purposes of providing her medical opinion based on her personal knowledge and treatment of Plaintiff. Second, Defendants' argument that Nurse Warren cannot provide opinion testimony on security matters is entirely irrelevant because this statement is not about security issues.  This statement states, as Nurse Warren expressly testified, that her objection to the denial of her special needs orders was related to the requirement from Defendant McCaughey that she "submit the additional medical information in order for security to approve the order for a bottom bunk."  This is expressly a medical issue, not a security issue, and Nurse Warren is more than qualified to testify that security personnel are not permitted to receive detailed medical information about an inmate.

> 106. If either of the other two bottom bunk orders on the special needs order that Defendant McCaughey received September 19, 2016 had been approved, then Plaintiff Melise would have been on a bottom bunk on the night of November 10, 2016. Special Needs Order Approved September 21, 2016; Warren Dep. 129:25-30:14, 142:25-43:2; Salas Dep. 82:6-83:9.
>
> **Response 106: DISPUTED.** Plaintiff's assertion is not supported by admissible evidence and calls for speculation. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").
>
> 107. Being on a bottom bunk would have significantly reduced his risk of injury from falling out of bed. Warren Dep. 166:6-67:16; Melise Dep. 46:24-47:1.
>
> **Response 107: DISPUTED.** Plaintiff's assertion is not supported by admissible evidence and calls for speculation. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

125. Plaintiff Melise did not receive adequate medical care from Defendant DOC because he was not placed on a bottom bunk as ordered by DOC medical providers, and he should have been on bottom bunk from, at least, 2014 until after his fourth fall on November 12, 2016 due to a number of medical needs. Warren Dep. 133:3-34:5.

**Response 125: DISPUTED.** Plaintiff's assertion is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). There is no medical affidavit or expert medical testimony submitted that establishes appropriate medical standards in a correctional setting. *See* Fed. R. Evid. 702, 703.

As these supposed disputes demonstrate, Defendants are essentially asking this Court to bar treating medical providers from expressing their medical opinions about their patient because somehow such testimony is inadmissible.  Of course, such testimony is part-and-parcel of all cases where medical treatment is at issue and admissible unless a highly unusual situation implicating some other rule of evidence is at issue.  Therefore, Defendants' objections to Plaintiffs' SUF ¶¶34, 42, 106-08, 117, 125, 134, 211, 227, 231 should be stricken.

## IV.    CONCLUSION

For all the foregoing reasons, the Plaintiff prays that this Court grant his motion to strike the above-described objections from State Defendants' Statement of Disputed Facts.

Plaintiff,
By his attorneys,

Date:  November 18, 2022

/s/ Chloe A. Davis
**Chloe A. Davis, Esq. (#9334)**
**Richard A. Sinapi, Esq.  (#2977)**
Sinapi Law Associates, Ltd.
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690; Fax (401) 739-9040
Email:  cad@sinapilaw.com; ras@sinapilaw.com

## **CERTIFICATION**

I hereby certify that on **November 18, 2022,** a true copy of the within was filed electronically via the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the court's cm/ecf system.  Service on the counsel of record has been effectuated by electronic means.


**/s/ Chloe A. Davis**